**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| ASTELLAS PHARMA INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 20-1589 (JFB) (CFB) |
| SANDOZ INC., et al., | ) ) | (Consolidated) |
| Defendants. | ) ) ) | |

**DEFENDANTS' NOTICE OF DEPOSITION TO PLAINTIFFS ASTELLAS
PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure and the applicable Local Civil Rules of the United States District Court for the District

of Delaware, Defendants Sandoz Inc., Actavis Elizabeth LLC, Teva Pharmaceuticals USA, Inc.,

Apotex Inc., Apotex Corp., Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., Aurolife

Pharma LLC, Sawai Pharmaceutical Co., Ltd., Sawai USA, Inc., Prinston Pharmaceutical Inc.,

Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai US Inc., Solco Healthcare US, LLC, Zydus

Pharmaceuticals (USA) Inc., Cadila Healthcare Limited, Lupin Ltd., and Lupin Pharmaceuticals,

Inc. (collectively, "Defendants"), by and through their attorneys, will take the deposition upon

oral examination of Plaintiffs Astellas Pharma Inc., Astellas Ireland Co., Ltd., and Astellas

Pharma Global Development, Inc. (collectively, "Plaintiffs" or "Astellas") at a mutually agreed

upon date, time, and location by the parties and continuing from day to day thereafter until

completed.  The deposition will be recorded by stenographic means, videotaped, and transcribed

using real time interactive transcription such as LiveNote, and counsel for Defendants may elect

to participate telephonically.  The deposition will be taken for the purposes of discovery, for use at trial in these actions, and for any purposes permitted under the Federal Rules of Civil Procedure.  You are invited to attend and participate.

Pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs shall designate one or more knowledgeable persons to testify on its behalf with respect to the matters set forth in Schedule A attached hereto, and the person(s) so designated shall be required to testify as to those matters known or reasonably available to Plaintiffs.  Plaintiffs shall identify in writing each deponent who shall be designated to testify on its behalf at least seven (7) business days in advance of the deposition, including which portion(s) of this Notice each deponent is prepared to address.

Pursuant to Fed. R. Civ. P. 30(b)(2) and 34, Plaintiffs are hereby requested to produce, at least seven business days before the deposition, any and all documents and things in its possession, custody, or control that in any way refer to or concern any of the topics set forth in the attached Schedule A that have not previously been produced to Defendants in this action. Defendants reserve the right to continue the deposition should Plaintiffs fail to produce such documents and things at least seven business days before the deposition.

 Dated: January 20, 2022

ABRAMS & BAYLISS LLP

*/s/ John M. Seaman*
John M. Seaman (#3868)
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
Fax: (302) 573-3501
seaman@abramsbayliss.com

*Attorneys for Defendants Apotex Corp. and Apotex Inc.*

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*
Dominick T. Gattuso (#3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Tel.: (302) 472-7300
dgattuso@hegh.law

*Attorneys for Defendant Sandoz Inc.*

PHILLIPS, MCLAUGHLIN & HALL, P.A.

*/s/ John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
1200 N. Broom St
Wilmington, DE 19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Lupin Ltd. and Lupin Pharmaceuticals, Inc.*

SHAW KELLER LLP

*/s/ Andrew E. Russell*
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew E. Russell (#5382)
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com

*Attorneys for Defendants Actavis Elizabeth LLC and Teva Pharmaceuticals USA, Inc.*

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/  Dominick T. Gattuso*
Dominick T. Gattuso (#3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Tel.: (302) 472-7300
dgattuso@hegh.law

*Attorneys for Defendants Sawai Pharmaceutical Co., Ltd., Sawai USA, Inc.*

MORRIS JAMES LLP

*/s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888- 6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendants Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma LLC*

STAMOULIS & WEINBLATT LLC

*/s/ Richard C. Weinblatt*
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street, 3rd Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Defendants Prinston Pharmaceutical Inc., Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai US Inc., and Solco Healthcare US, LLC*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Limited*

**SCHEDULE A DEFINITIONS AND INSTRUCTIONS**

Defendants hereby incorporate by reference, as though fully set forth herein, the Definitions set forth in Defendants' First Set of Joint Interrogatories and First Set of Requests for Production of Documents and Things, dated August 31, 2021.

**DEPOSITION TOPICS**

1.      The circumstances, including the earliest claimed priority date, under which the subject matter of the Patent-in-Suit or any Related Patents or Related Patent Applications was (i) first conceived and/or when the inventors first thought their idea would work, (ii) first observed experimentally, (iii) first recorded and/or described in writing, (iv) first reduced to practice and/or first made, (v) first disclosed to a person other than the inventors, (vi) first publicly disclosed, (vii) first used, (viii) first publicly used, (ix) first offered for sale, and (x) first sold, and (xi) all persons involved in the conception and reduction to practice of the claimed inventions and their roles in the conception and reduction to practice, and the information and documents supporting the alleged dates of conception and reduction to practice of the alleged inventions.

2.      The research, development, and testing of the subject matter disclosed in the Patent-in-Suit, including but not limited to research, development, and testing related to: the Mirabegron formulations disclosed in the Patent-in-Suit; the Mirabegron tablets disclosed in the Patent-in-Suit; and the methods of treatment disclosed in the Patent-in-Suit; and all persons involved in the research, development, and testing of the subject matter disclosed in the Patent-in-Suit and each person's role, including documents and communications, laboratory notebook entries, reports, memoranda, analyses, meeting minutes, and test data related thereto.

3.      The data, test results, figures, examples, tables, and formulations disclosed in the Patent-in-Suit including, without limitation, all laboratory notebook entries, studies, reports, memoranda, analyses, meeting minutes, and test data (including records of clinical data or analyses

of clinical data) related thereto, as well as all information regarding the instrumentation used to carry out such testing.

4.      Any investigation, analysis, or search for information or prior art relating to the subject matter of the Patent-in-Suit.

5.      All documents authored by any named inventor of the Patent-in-Suit, including all publications and manuscripts, and any drafts and submissions thereof, in this country or any other country, relating to pharmaceutical compositions of Mirabegron.

6.      The decision to develop a hydrogel-forming formulation comprising Mirabegron, including:

      a.  Data and information on any formulation tested by Plaintiffs for Mirabegron;

      b.  Comparisons by Plaintiffs of the dissolution properties of immediate release formulations of Mirabegron with modified release formulations of Mirabegron;

      c.  Comparisons by Plaintiffs of the therapeutic effectiveness of immediate release formulations of Mirabegron with extended-release formulations of Mirabegron;

      d.  The decision to develop an extended-release formulation of Mirabegron;

      e.  The decision to develop an extended-release Mirabegron drug product marketed as Myrbetriq®.

7.      The preparation, filing, and the prosecution history, and arguments made therein, for the application that issued as the Patent-in-Suit, Related Patents, and Related Patent Applications, including but not limited to: all claim amendments and cancellations, including the reasons for each; the subject matter disclosed in the prior art references cited by the Examiner during prosecution; the arguments made during prosecution in response to the Examiner's rejections and facts, data, results, testing, experimental conditions, or protocols, used as the basis for such arguments, including those made to overcome the Examiner's rejections under 35 U.S.C. § 112 and 35 U.S.C. § 103; the bases

for the statement in Applicants' remarks submitted on May 13, 2019 that "[t]he art is replete with information on how to prepare hydrogel-forming formulations, and a skilled artisan would clearly be able to identify components that could be used for that purpose to achieve the claimed dissolution rate," (*id*. at 9), including the identification of the art referenced in the statement; and the identification of persons and other entities involved during such prosecution, any third-party observations submitted, any declarations submitted on behalf of Astellas Pharma Inc., Astellas Ireland Co., Ltd., and Astellas Pharma Global Development, Inc. or the inventors.

8.      The chemical, physiochemical and pharmacokinetic properties of Mirabegron, including but not limited to: Mirabegron's water solubility, permeability, classification with the Biopharmaceutics Classification System (BCS), site of absorption, and biological half-life; and when these properties were first disclosed or made publicly available, including the publications that disclosed these properties.

9.      Data and information used as the basis for selecting named inventors of the Patent-in-Suit, including all written and verbal communications.

10.      Plaintiffs' current and past relationships with the named inventors of the Patent-in-Suit, including all agreements with the named inventors and all communications with and compensation paid to each named inventor, including those who are former employees.

11.      All information that Plaintiffs contend evince the skills and/or qualifications of a person of ordinary skill in the art pertaining to the Patent-in-Suit, including, without limitation,

      a.   The educational level of the named inventors;

      b.   The type of problems encountered in the art;

      c.   The prior art solutions to those problems;

      d.   The rapidity with which innovations are made;

      e.   The sophistication of the technology; and

     f.   The educational level of active workers in the field.

12.     Any life cycle management strategies for Myrbetriq®, including plans or efforts to improve or replace prior treatments for overactive bladder, any comparisons to other products for the treatment treatments for overactive bladder and any alleged benefits or disadvantages of Myrbetriq® over such treatments.

13.     The design, research, and development, including all studies, experiments, analyses, investigations, or reports, of any product or method of treatment that Plaintiffs contend embodies any of the asserted claims of the Patent-in-Suit, including but not limited to Myrbetriq®, a method of treatment using Myrbetriq®, NDA No. 202611, and the identification of individuals with involvement in such.

14.     Any clinical trial anywhere in the world that used an extended-release formulation of Mirabegron, including all compositions investigated or considered during the development of Myrbetriq®.

15.     All filings and communications with FDA concerning NDA No. 202611, Myrbetriq®, or Mirabegron.

16.     All marketing plans, business plans, advertising plans, sales plans, promotional plans, market studies, market research, projections, market analyses, competitive research, pharmacoeconomic studies, evaluations, and competitive analyses relating to any product Plaintiffs contend embodies the asserted claims of the Patent-in-Suit, including but not limited to Myrbetriq®, such marketing and sales information including but not limited to:

     a.   all marketing efforts by or on behalf of Plaintiffs for the promotion of each such product;

     b.   all marketing efforts of each such product, including communications with doctors, nurses, and/or other health care providers, health insurance companies,

pharmacies, patients, and training and instruction of marketing personnel;

c. all promotional, advertising, and marketing expenditures associated with each such product on a monthly, quarterly, and annual basis; gross and net sales, on a monthly, quarterly, and annual basis, of each such product in the U.S. market and all competing products in the United States for use to treat overactive bladder, since receipt of FDA approval of Myrbetriq® to the present;

d. all profit and loss data, on a monthly, quarterly, and annual basis, for each such product;

e. all assessments of the share of the market in the United States for drug products for use to treat overactive bladder, since receipt of FDA approval to the present;

f. all facts relating to the relationship, including but not limited to the return on investment, between any promotional, marketing, or education efforts and sales revenue for each such product; all marketing studies, customer surveys, customer lists, estimates of market size, marketing materials, advertising materials, and promotional materials relating to each such product;

g. the pricing of each such product, including but not limited to price lists, pricing strategy, price determination, discounts, rebates, coupons, and all monthly, quarterly, and annual summaries or reports concerning prices; and

h. any licenses, attempts to license, or offers to license the Patent-in-Suitor any product embodying any of the claims of the Patent-in-Suit.

17.    Market and financial analyses relating to entry of any generic Mirabegron product, including an unbranded or other authorized generic version of Myrbetriq®.

18.    Financial data, performance, predictions, and analysis for Myrbetriq®, including without limitation the prescriptions, sales, costs (including research and development costs), pricing,

gross and net profits, revenues, market share, market definition, sales and profit projections, and physician or managed care surveys.

19.    The factual basis for any alleged objective indicia of nonobviousness concerning the Patent-in-Suit, including, but not limited to:

   a.  any alleged unexpected properties or advantages of the subject matter of the Patent-in-Suit;

   b.  any alleged commercial success of the subject matter of the Patent-in-Suit, including sales of products Plaintiffs contends embody or revenue generated in connection with the purported practice of the methods of treatment claimed in the Patent-in-Suit;

   c.  any alleged long-felt need or potential market demand met by the subject matter of the Patent-in-Suit;

   d.  any alleged prior failure of others to solve any problem to which the subject matter of the Patent-in-Suit would be considered a solution;

   e.  any alleged copying by others of the subject matter of the Patent-in-Suit;

   f.  any alleged praise by others for the subject matter of the Patent-in-Suit; and

   g.  any alleged acceptance in the industry for the subject matter of the Patent-in-Suit.

20.    Plaintiffs' knowledge of any finding that Mirabegron has a food effect, that the in vivo pharmacokinetic properties of Mirabegron are altered depending on whether Mirabegron is administered in a fed state (with food) or a fasted state (without food), and how the alleged invention recited in the Patent-in-Suit solves such food effect.

21.    All dissolution testing conducted of any formulation containing Mirabegron, including testing conducted in a fed state and/or a fasted state.

22.    The development of the extended-release formulation system known as Oral

Controlled Absorption System ("OCAS®"), including, without limitation: (a) when OCAS® or a drug containing OCAS® was first offered for sale; the location of the offer; identity of the offeree; identity of the offeror; (b) when OCAS® was first described in a printed publication anywhere in the world; (c) the involvement of any third parties in the development of OCAS®; (d) the decision to use OCAS® in a formulation containing Mirabegron, and the involvement of any third parties in the decision to use OCAS® in a formulation containing Mirabegron; (e) all active ingredients that have been incorporated into OCAS® as part of an approved drug product or a drug product for which an application for approval is pending in any country; (f) the formulations of other drug products containing OCAS®; and (g) the effect on the dissolution and food effect of any drug products after use of OCAS®.

23.     Plaintiffs' ownership of or other right, title, or interest in the Patent-in-Suit, including all documents that relate to such ownership or other right, title, or interest.

24.     The involvement in any third parties in the research, development, marketing, and/or sales of Myrbetriq®.

25.     The factual basis of Plaintiffs' claim that the above-captioned case is "exceptional" under 25 U.S.C. § 285.

26.     The facts and circumstances concerning retention, preservation, review, and production of documents responsive to discovery requests served in this litigation, including (i) the date(s) Plaintiffs sent out litigation hold notices related to this litigation, and the identity of all persons sent such notices including their title, role and responsibilities at Plaintiffs, (ii) the identity of all people identified in (i) whose documents were searched, collected, reviewed, and/or produced, and (iii) the identity of all people identified in (i) whose documents were not searched, collected, reviewed and/or produced and the reason that such documents were not searched, collected, reviewed and/or produced.

27.     All documents related to any of the foregoing Topics.

<u>**CERTIFICATE OF SERVICE**</u>

I, Pilar G. Kraman, Esquire, hereby certify that on January 20, 2022, I caused a true and correct copy of the foregoing document to be served in the manner indicated upon the following counsel of record:

**BY EMAIL:**

        Daniel M. Silver
        Alexandra M. Joyce
        MCCARTER & ENGLISH, LLP
        Renaissance Centre
        405 N. King Street, 8th Floor
        Wilmington, Delaware 19801
        dsilver@mccarter.com
        ajoyce@mccarter.com

        Simon D. Roberts
        Jason A. Leonard
        Nitya Anand
        Vincent Li
        Christopher M. Bruno
        MCDERMOTT WILL & EMERY
        One Vanderbilt Avenue
        New York, NY 10017-3852
        simonroberts@mwe.com
        jleonard@mwe.com
        nanand@mwe.com
        vli@mwe.com
        cbruno@mwe.com

        *Attorneys for Plaintiffs*

Dated:  January 20, 2022                  YOUNG CONAWAY STARGATT
                                           & TAYLOR, LLP

                                     */s/ Pilar G. Kraman*
                                     Pilar G. Kraman (No. 5199)
                                     Rodney Square
                                     1000 N. King Street
                                     Wilmington, Delaware 19801
                                     pkraman@ycst.com

*Attorneys for Defendants Zydus
Pharmaceuticals (USA), Inc. and Cadila
Healthcare Ltd.*