IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASTELLAS PHARMA INC., et al., | ) ) ) | |
| Plaintiffs, | ) | C.A. No. 20-1589-JFB-CJB |
| v. | ) ) | (consolidated) |
| SANDOZ INC., et al., | ) ) | |
| Defendants. | ) ) ) | Public Version Filed April 4, 2022 |

**DEFENDANTS' RESPONSIVE LETTER TO JUDGE BURKE IN ADVANCE OF
<u>APRIL 4, 2022 DISCOVERY TELECONFERENCE</u>**

Dear Judge Burke:

Defendants submit this letter per the Court's Oral Order (D.I. 309), setting forth their responsive positions on the issues presented in Paragraphs IV-XII of the parties' joint dispute letter (D.I. 314).

**Paragraph IV: Strides and Solara's Position That Their Extensive Production in Civil Action No. 16-905 (D. Del.) is Sufficient for Purposes of the Present Action (RFP Nos. 1-19 to Strides and RFP Nos. 1-19 to Solara).**

To be clear, it is not Strides/Solara's position that they will not produce documents other than those produced by the Sawai Defendants[1] in Civil Action No. 16-905 (the "First Action"). Rather, their position is that the extensive First Action production addresses all issues now in dispute, constituting a good faith search and production in response to the discovery requests in this action.

First, discovery in the First Action covered the entire relevant time period from 2016 through the eve of trial in August 2019. *See* First Action, D.I. 531. Sawai's development was before 2016, Sawai filed its ANDA[2] in 2016, and no changes were made to Sawai's ANDA formulation since August 2019. Astellas's RFP No. 7, which admittedly seeks documents after the First Action, is irrelevant. This RFP seeks documents relating to a 2019 FDA warning letter that does not mention mirabegron. Strides/Solara confirmed after reasonable investigation that it bears no relation to mirabegron.

Second, contrary to Astellas's arguments, document discovery in the First Action covered the issue now in dispute, namely, Sawai's ANDA formulation. Sawai's formulation was at issue in the First Action, as a major dispute involved whether Sawai's API was stable or converted to the claimed polymorph in the final formulated tablet. Sawai's ANDA formulation, its constituent parts, and stability were thus heavily litigated.

Third, regardless of the issues disputed in the First Action, Sawai Defendants' collection and production of documents fully covered the development and properties of Sawai's ANDA product. In addition to the ANDA, which is of primary relevance here, Sawai Defendants produced over 94,000 documents hitting on broad search terms, including "mirabegron," from custodial and non-custodial sources. Sawai Defendants further presented extensive sworn-to information through interrogatory responses and corporate testimony. In other words, the Sawai Defendants have already produced materials on "how the proposed mirabegron product was developed and tested, including the selection of the excipients used to provide the extended release of mirabegron." That is why the production is sufficient.

This is not to say that Strides/Solara have or would refuse to search for or produce supplemental documents if Astellas identified a specific deficiency. Strides/Solara already confirmed that the 2019 Warning Letter is not relevant. Astellas also asserted it was "unable to locate laboratory notebooks concerning the research and development of Sawai's ANDA Product." Sawai Defendants investigated and determined Astellas was wrong – the production includes many

---

[1] "Sawai Defendants" refers to Sawai, Strides, and Solara.

[2] Strides and Solara are not proper parties here, as they are merely a contract manufacturer and API supplier, respectively, for Sawai's ANDA product. Their motion to dismiss is pending, and would resolve this dispute.

relevant lab notebooks – and advised Astellas of the same, but has not heard back. Astellas mentions RFP No. 14, but prior art has already been produced, and Sawai Defendants have explained that their first awareness of the '780 patent, which issued years *after* Sawai's ANDA was developed and filed, is not relevant to any issue in this case. Astellas also mentions RFP Nos. 4-6, but again there is not a crystallized dispute on these requests, which plainly seek attorney-client communications between the Sawai Defendants, who are working as a defendant group and share the same counsel. Regardless such would not be relevant to any disputed issue in this case.[3]

**Paragraph V(a): Zydus's Objections and Responses to Astellas's Interrogatory Nos. 8 and 12-14.**

Astellas's Interrogatory No. 8 is directed to "*all* dissolution testing procedures and protocols that were *used or considered* when developing Zydus's ANDA Product," including apparatus, conditions, and time points used or considered. Courts in this District have denied motions to compel responses to such broad interrogatories. *See, e.g.*, *Sprint Commc'ns Co., LP v. Charter Commc'ns, Inc.*, 1-17-cv-01734-RGA, DI 378 (D. Del. Feb 21, 2020) (motion for supplemental response denied where request was "so broad" that it sought information on patents not in suit).

It would be unduly burdensome for Zydus to respond to this interrogatory where the substance of the information sought has already been produced to Astellas in the form of documents, including not only Zydus's ANDA but also laboratory notebooks, and can be, and has already been, addressed by Zydus's Rule 30(b)(6) witnesses during deposition. (See Ex. 1, August 8, 2018 Dep. Tr., M.E. Kannan.)

Moreover, Astellas fails to mention that the dissolution test method of any generic mirabegron product should follow the dissolution method identified in FDA's product specific guidance for mirabegron. (Ex. 2, 2013 FDA Draft Guidance on Mirabegron; Ex. 3, 2022 FDA Draft Guidance on Mirabegron; Ex. 4, FDA Dissolution Methods for Mirabegron providing, inter alia, USP Apparatus I (Basket), 100 RPM.) ANDA applicants are not free to use any other dissolution method when seeking FDA approval for their mirabegron extended release tablets unless FDA approves it. (*Id*. at Ex. 2, 2013 FDA Draft Guidance for Mirabegron; Ex. 3, 2022 FDA Draft Guidance for Mirabegron.) For these same reasons, Interrogatory No. 8 is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FRCP 26(b)(2)(C)(i).

As Zydus explained to Astellas during the parties' meet and confer, Zydus's pharmaceutical development report and dissolution methods and results contained in its ANDA, and Zydus's laboratory notebooks prepared during its research and development of its mirabegron product and produced in the First Action, set forth the dissolution testing procedures, protocol, and conditions used during development of Zydus's ANDA Product. Moreover, Zydus provided a detailed supplemental response to Interrogatory No. 1 directed to noninfringement, including the claim limitation directed to dissolution. It is not clear why these discovery responses are not sufficient.

---

[3] Strides/Solara advised Astellas that its invocation of the Court's discovery dispute process was premature given current negotiations on specific discovery requests, but Astellas unilaterally pressed forward.

2

Astellas's Interrogatory Nos. 12 and 13 likewise are directed to information that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FRCP 26(b)(2)(C)(i). Zydus's Rule 30(b)(6) witness in the First Action already provided testimony addressing selection of excipients for its ANDA product. (See Ex. 1, August 8, 2018 Dep. Tr., M.E. Kannan.) As Astellas should know from that testimony, as well as exhibits presented to that same witness, information that Zydus considered when selecting excipients has already been made available to Astellas. Any narrative interrogatory response Zydus might prepare would never capture all of the context and information Astellas has already received and considered. Moreover, Zydus will again be designating a Rule 30(b)(6) witness to address any questions about Zydus's pharmaceutical development report that were not raised in the First Action.

Astellas's other excuses for seeking these narrative responses are not sufficiently tied to the asserted claims. The asserted claims only discuss the issue of molecular weight, not viscosity or solubility, which are, regardless, better left for expert witnesses. Similarly, whether Zydus "attempt[ed] to design-around the patent-in-suit" (an impossibility based on when the ANDA was filed), or copied the excipients of Myrbetriq, are not probative of any secondary consideration of non-obviousness.

In addition to the foregoing, the "'proportionality to the needs of the case' should take into account the stage of this litigation." *Sprint Commc'ns Co.*, DI 378. What Astellas is demanding with regard to Interrogatory Nos. 8, 12, and 13 amounts to "clean-up" discovery, as Astellas fully completed fact (and expert) discovery in the First Action involving the same ANDA. *See id.* (in denying motions to compel, the court stated that "the scope and breadth of discovery sought in the unresolved [] topics should be considered in the context of fact discovery having closed, subject to what is practically speaking the clean up of outstanding discovery.") Thus, Astellas's discovery requests should be evaluated in that context and denied, as Astellas has benefited from numerous avenues in obtaining the same discovery sought here.

Astellas's Interrogatory No. 14 is directed to "*all* sustained release formulations of Mirabegron that were considered by Zydus when developing Zydus's ANDA Product." Sustained release formulations that are outside of the purview of Zydus's ANDA are not relevant in this case. *See, e.g.*, *H. Lundbeck A/S v. Lupin Ltd.*, 1-18-cv-88-LPS, D.I. 1088 at 173, 189-202 (D. Del. Oct. 5, 2021) ("In the specific context of a patent infringement action brought pursuant to 35 U.S.C. § 271(e)(2)(A) . . . the infringement inquiry is 'whether, if a particular drug were put on the market, it would infringe the relevant patent.'"). As Astellas acknowledges elsewhere in its letter, the focus of a Hatch-Waxman action is "properly grounded in the ANDA application and the extensive materials typically submitted in its support. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1249-50 (Fed. Cir. 2000).

**Paragraphs V(a), VI (a), VII (a), and VIII(a): Zydus, Apotex, Aurobindo, and Sandoz's Opposition to Astellas's Motion to Compel Discovery Concerning "Foreign ANDA Products" In Response to Astellas's Interrogatory No. 15.**

Astellas's motion to compel Zydus, Apotex, Aurobindo, and Sandoz to answer "ROG No. 15"— which Astellas characterizes as requesting "information relating to efforts to ascertain the dissolution profile and characteristics of Foreign ANDA Products" (Astellas Ltr. at 3)—should be

3

denied because such discovery is not relevant to any issue in this case, much less proportional to the needs of the case.

Astellas admits—as it must—that the "hypothetical inquiry is properly grounded in the ANDA application and the extensive materials typically submitted in its support." (Astellas Ltr. at 4 (citing *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1249-50 (Fed. Cir. 2000).) And per FDA's rules and regulations, Defendants' ANDAs include the dissolution specifications and test results for their ANDA products (as well as batch records and certificates of analysis).

The only relevant dissolution profiles are those of the accused United States ANDA products. Astellas's motion does *not* contain any explanation of how the dissolution profile of a "Foreign ANDA Product" could possibly be relevant to whether a United States ANDA product infringes the dissolution profile limitation of the patent-in-suit. With respect to Zydus, Astellas is pursuing discovery when there is no evidence that a supposed "Foreign ANDA Product" even exists. Tellingly, all of Astellas's arguments assume relevance, but do not show it.[4]

Even if ROG 15 requested relevant information—it doesn't—it is incredibly overbroad and unduly burdensome, asking each Defendant to "state in detail all dissolution testing procedures and protocols that were used or considered [] when developing a Foreign ANDA Product, including identifying which dissolution apparatus were used or considered, what conditions were used or considered, what time points were to be tested, how the samples would be assayed, and why it was either implemented or abandoned." (Astellas Ex. C.) Put another way, ROG 15 is far from proportional or tailored—it is a fishing expedition.

With respect to Sandoz and Apotex, discovery as to Foreign ANDA products is not only irrelevant but also redundant. Sandoz produced unexpired samples of its United States ANDA Products in November 2021, and Apotex will be producing unexpired samples shortly. If Astellas believes that the information in Sandoz's or Apotex's ANDA is somehow insufficient, Astellas can test the produced samples to ascertain the dissolution profile.

For at least the above reasons, Astellas's motion regarding Interrogatory No. 15 should be denied.

**Discovery Dispute Letter Paragraphs V(b), VI(b), VII(b), VIII(b), IX, X, XI, and XII: All Defendants' Opposition to Astellas's Motion to Compel Production of Excipient Samples In Response to Astellas's RFP No. 2.**

Similarly, Astellas does not explain the relevance of samples of "each Excipient that is required to Manufacture [a Defendant's] Mirabegron product" in view of the asserted claims of the patent-in-suit, which concern the dissolution profile of a final-dosage-form pharmaceutical *composition*.

---

[4] *E.g.*: "The relevance of such information is inescapable as certain of the claim limitations relate to specific dissolution properties of mirabegron formulations. [] Thus, such testing on a Foreign ANDA Product is relevant to the characterization of Defendants' ANDA products, including its dissolution profile." (Astellas Ltr. at 3); "[T]his Court and others recognize the importance of permitting discovery regarding issues that bear on establishing the presence of an element of the claim." (*id.*); "[ROG 15] is limited to only a narrow subset of products and to dissolution testing, which is directly relevant to the patent in suit." (*id.*).

4

██████████████████████████████████████

(*See* Astellas Ex. F at Cl. 1.) Thus, the relevant infringement inquiry between the parties concerns the dissolution profile of the finished product, not the selection or properties of each excipient. Instead, Astellas assumes relevance because "multiple asserted claims recite specific excipients used in the patented formulation" (Astellas Ltr. at 4); refuses to identify specific excipients it believes are relevant; and insists on samples of all excipients in each Defendant's ANDA product.

Astellas's demands should fail because all Defendants produced samples of their ANDA products, and if properties of any particular excipient are relevant, Defendants' ANDAs includes all of the excipient specifications, certificates of analysis, and supplier product information (e.g., the water solubility of the "additive"). Astellas has been in possession of Defendants' ANDAs for years, and can purchase unexpired samples of excipients from the manufacturers identified therein. Moreover, **Sandoz** has produced unexpired tablet samples and **Apotex** and **Actavis** ██████ ████████████████████████████████████████████████ Astellas informed Apotex that the excipients were sought only to create their own samples of "Apotex's ANDA Products", the need for which is obviated by Apotex's forthcoming production.

Further, Astellas understates the burden on Defendants of producing samples of as many as ten different excipients per Defendant, which may require different storage and shipping conditions. Defendants should not be required to undertake this burden given the lack of relevance. Also, several Defendants do not have all of the excipients in their possession, custody, or control and/or do not have remaining excipients from the lots used in their ANDA products. **Zydus** and **Lupin** have no remaining excipient samples from the batches used to manufacture the (long-expired) exhibit batches of their proposed ANDA products, which were manufactured as early as 2015, and previously informed Astellas of the same.

The frivolous nature of Astellas's request is also shown by Astellas's delay in raising this dispute; Defendants served their objections and responses to RFP No. 2 in May 2021. **Sandoz** conferred with Astellas in June 2021 and agreed to produce unexpired tablets in July 2021; Astellas did not follow up until the March 2022 discovery dispute letter. **Actavis** conferred with Astellas in July 2021; Astellas did not follow up until a December 2021 meet and confer. As a proposed compromise, Astellas asked if Actavis would consider a stipulation to facilitate Astellas's use of excipients Astellas would purchase from a third party. But Astellas never followed up or sent a draft stipulation for Actavis to review, and Actavis did not hear from Astellas again on this issue until its March 4, 2022 discovery dispute letter. **Lupin, Apotex, Zydus, and Prinston** also conferred with Astellas in December 2021 and January 2022. All defendants were surprised by Astellas's inclusion of this dispute in the March 4, 2022 discovery dispute letter, believing this issue was resolved in view of the significant periods of delay between communications from Astellas on this topic.

Dated: March 28, 2022

| | |
|---|---|
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| /s/ Pilar G. Kraman<br>Pilar G. Kraman (#5199)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>pkraman@ycst.com<br><br>*Attorneys for Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Limited* | /s/ Dominick T. Gattuso<br>Dominick T. Gattuso (#3630)<br>Elizabeth A. DeFelice (#5474)<br>300 Delaware Ave., Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>dgattuso@hegh.law<br>edefelice@hegh.law<br><br>*Attorneys for Defendant Sandoz Inc. and Lek Pharmaceuticals d.d.* |
| ABRAMS & BAYLISS LLP | SHAW KELLER LLP |
| /s/ John M. Seaman<br>John M. Seaman (#3868)<br>20 Montchanin Road, Suite 200<br>Wilmington, DE 19807<br>(302) 778-1000<br>seaman@abramsbayliss.com<br><br>*Attorneys for Defendants Apotex Corp. and Apotex Inc.* | /s/ Andrew E. Russell<br>John W. Shaw (#3362)<br>Karen E. Keller (#4489)<br>Andrew E. Russell (#5382)<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>jshaw@shawkeller.com<br>kkeller@shawkeller.com<br>arussell@shawkeller.com<br><br>*Attorneys for Defendants Actavis Elizabeth LLC and Teva Pharmaceuticals USA, Inc.* |

| | |
|---|---|
| HEYMAN ENERIO<br>GATTUSO & HIRZEL LLP | MORRIS JAMES LLP |
| */s/ Dominick T. Gattuso*<br>Dominick T. Gattuso (#3630)<br>Elizabeth A. DeFelice (#5474)<br>300 Delaware Ave., Suite 200<br>Wilmington, DE 19801<br>(302) 472-7300<br>dgattuso@hegh.law<br>edefelice@hegh.law | */s/ Kenneth L. Dorsney*<br>Kenneth L. Dorsney (#3726)<br>Cortlan S. Hitch (#6720)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>(302) 888- 6800<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com |
| *Attorneys for Defendants Sawai Pharmaceutical Co., Ltd., Sawai USA, Inc., Solara Active Pharma Sciences Ltd. and Strides Pharma Science Limited* | *Attorneys for Defendants Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma LLC* |
| STAMOULIS & WEINBLATT LLC | PHILLIPS, MCLAUGHLIN & HALL, P.A. |
| */s/ Richard C. Weinblatt*<br>Stamatios Stamoulis (#4606)<br>Richard C. Weinblatt (#5080)<br>800 N. West Street, 3rd Floor<br>Wilmington, DE 19801<br>(302) 999-1540<br>stamoulis@swdelaw.com<br>weinblatt@swdelaw.com | */s/ Megan C. Haney*<br>John C. Phillips, Jr. (#110)<br>David A. Bilson (#4986)<br>Megan C. Haney (#5016)<br>1200 N. Broom St<br>Wilmington, DE 19806<br>(302) 655-4200<br>jcp@pmhdelaw.com<br>dab@pmhdelaw.com<br>mch@pmhdelaw.com |
| *Attorneys for Defendants Prinston Pharmaceutical Inc., Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai US Inc., and Solco Healthcare US, LLC* | *Attorneys for Lupin Ltd. and Lupin Pharmaceuticals, Inc.* |