**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ASTELLAS PHARMA INC., et al.,      ) | |
| ) | C.A. No. 20-1589-JFB-CJB |
| Plaintiffs,     ) | (Consolidated) |
| v.     ) | |
| ) | |
| SANDOZ INC., et al.,     ) | |
| ) | |
| Defendants.     ) | |
| ) | |

PUBLIC VERSION FILED: August 25, 2022

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE**
**FROM DANIEL M. SILVER, ESQ. REGARDING DISPUTE CONCERNING**
<u>**TRIAL DATE AND CASE SCHEDULE**</u>

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
405 N. King St., 8th Floor
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs Astellas Pharma Inc.,*
*Astellas Ireland Co., Ltd., and Astellas Pharma*
*Global Development, Inc.*

ME1 41967411v.1

Dear Judge Burke,

We write on behalf of the Astellas Plaintiffs to respectfully request that the Court extend the remainder of the case deadlines, including rescheduling the trial to June 2023 (subject to the Court's availability). This extension is necessary due to delays in the production by some Defendants of important fact discovery supporting Plaintiffs' infringement case.

Plaintiffs brought several discovery disputes to the Court's attention in March 2022, the majority of which the Court ordered produced and were ultimately provided to Plaintiffs after significant delay. While progress has been made to complete fact discovery since these previous discovery disputes, open discovery deficiencies remain.[1] Most notably, Defendant Aurobindo only yesterday produced relevant samples that Aurobindo had in its possession long before discovery began but Plaintiffs only learned of in late June. While Plaintiffs promptly requested these samples, it took almost two months for Aurobindo to produce them. And although Plaintiffs now have the samples, the testing lab will need at least a month to test and report the results, time which does not include consideration and analysis by Plaintiffs' experts. Plaintiffs anticipate these improperly withheld and belatedly-produced samples will be probative of Aurobindo's infringement. More importantly, given the substantial similarity of these samples to several of the other Defendants' ANDA Products, these samples will also be probative of infringement by those other Defendants.

Although it is Defendants' conduct that necessitates the adjustment to the case schedule and trial date, Defendants have rebuffed Plaintiffs' reasonable attempts to negotiate a compromise schedule, refusing any move to the trial date. Ex. 1 at 1, 7, 13-14, 18. Yet resetting the schedule and trial date allows for the testing and analysis of the delinquently produced samples without any prejudice to Defendants or risk of at-risk launch. Because the earliest date on which Defendants can launch their ANDA Products has been pushed back by six months due to FDA's grant of pediatric exclusivity, resetting the case schedule and trial dates still results in more time between the trial date and Defendants' potential launch date than in the original schedule. *Id.* at 6. Defendants' position, on the other hand, substantially prejudices Plaintiffs' ability to fully develop their case.

<u>Background</u>

The patent-in-suit, U.S. Patent No. 10,842,780 (the "'780 patent"), is directed to novel extended-release formulations of mirabegron that enable the medication to be administered with or without food. Defendants each seek to market a generic extended-release mirabegron formulation using the claimed formulations such that their products can also be administered with or without food. The '780 patent claims require Astellas to prove by a preponderance of the evidence, *inter alia*, that each of the Defendants' ANDA Products meet the claim limitations, including the dissolution limitation.[2] This dissolution limitation is the main non-infringement defense advanced by

---

[1]     Plaintiffs have recently been able to amicably resolve many of these discovery disputes without the need for the Court's intervention (D.I. 355, 356, 361, 367, 385), but additional outstanding disputes exist that may require further discovery and/or reopening depositions.

[2]     The dissolution limitation reads: "[W]herein a drug dissolution rate from the pharmaceutical composition is 39% or less after 1.5 hours, and at least 75% after 7 hours, as measured in accordance with United States Pharmacopoeia in 900 mL of a USP buffer having a pH of 6.8 at a paddle rotation speed of 200 rpm." Ex. 2 at Claims 1 and 22.

Defendants. While each of the Defendants has conducted dissolution testing and reported those results in their ANDAs, that testing did not necessarily use the specific testing criteria specified in the claims of the '780 patent. Consequently, Plaintiffs have diligently sought discovery concerning dissolution testing, including samples, Defendants' internal dissolution testing data, and information regarding Defendants' Foreign Mirabegron Products (*i.e.*, products that are substantially similar to the Defendants' ANDA Products). While some of the Defendants provided some of this discovery, Plaintiffs needed the Court's intervention to obtain such discovery from other Defendants, which undoubtedly delayed the completion of fact discovery. D.I. 302, 311, 314.

Unfortunately, while Plaintiffs have diligently endeavored to resolve any outstanding discovery disputes, and recently have been able to do so with several Defendants, several discovery disputes remain.[3] Most notably, Plaintiffs learned from Aurobindo's 30(b)(6) corporate witness in late June that ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. Despite knowing about their existence and the purpose for which these samples were made, Aurobindo did not disclose the existence of those samples despite discovery requests calling for their production. To the contrary, Aurobindo's discovery responses suggested no such samples existed. Ex. 6 (Response to RFP No. 1); Ex. 7 (Response to Interrogatory No. 17).

Importantly, this Testing Batch has broader evidentiary reach than just Aurobindo's ANDA Product. It is probative of infringement by several other Defendants, specifically those having ANDA Products that ████████████████████████████████████████████████████████████ ███████████. While there are slight variations in certain of Defendants' formulations, Plaintiffs contend that using the same polymer and additive may yield strong evidence of similar dissolution profiles amongst multiple Defendants' ANDA Products. *See, e.g., Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) ("A patentee may prove infringement by any method of analysis that is probative of the fact of infringement, and circumstantial evidence may be sufficient.") (internal citations omitted); *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 572 F. App'x 988, 989 (Fed. Cir. 2014). Therefore, given the similar excipients and formulations, the Testing Batch may serve, *inter alia*, as strong evidence of infringement for those similar products. Accordingly, Plaintiffs should be afforded the time to test these samples and have those results considered by their experts before opening expert reports are due.

---

[3]    Plaintiffs have a discovery dispute pending before the Court concerning improperly withheld Aurobindo documents. D.I. 375. Plaintiffs are also pursuing discovery disputes with a few other defendants that are not yet ripe but may require Court intervention.
[4]    While Aurobindo's witness contended that the Testing Batch is not representative because ███████████████████████████████, that alone does not exempt the samples from discovery. Ex. 3 at 190:6-192:25; 288:18-291:23; *See Orexo AB v. Actavis Elizabeth LLC*, 217 F. Supp. 3d 756, 780 (D. Del. 2016), *rev'd and remanded on other grounds*, 903 F.3d 1265 (Fed. Cir. 2018) ("While not a perfect reproduction of Actavis' product, . . . the [experts' reproduction of the] precompression blends are at least circumstantial evidence of infringement.").

Once made aware of them in a late June deposition, Plaintiffs immediately demanded Aurobindo produce the Testing Batch samples—samples which should have been produced in response to Plaintiffs' initial production request from nearly 1.5 years ago (Ex. 6, RFP No. 1). And despite diligent follow up regarding these samples, Plaintiffs only received the samples yesterday. Ex. 8 at ¶¶ 2-3. The samples were promptly sent for dissolution testing, which, based on current lab availability, will not occur until approximately September 1, 2022. *Id.*, ¶¶ 4-5. It will then take the testing lab until approximately September 15th to complete the analysis and issue the data. *Id.*, ¶ 6. Plaintiffs' experts will then need time to assess the results and determine whether (and to what extent) they are applicable to other Defendants' ANDA Products. Accordingly, Plaintiffs request that opening expert reports be due no earlier than October 17, 2022 to avoid unfair prejudice.

<u>Relief Requested</u>

In view of the foregoing, Plaintiffs respectfully request an opportunity to test the newly-received Aurobindo samples, analyze the results, and resolve any open discovery disputes (including the pending privilege log dispute) with the Court before opening expert reports are due. The delay in obtaining the Aurobindo samples, and other requested discovery, cannot be attributed to Plaintiffs and so Plaintiffs should not be prejudiced. In order to avoid any prejudice, the trial date needs to be moved and the remaining case deadlines reset to occur at reasonable intervals – the reasonable intervals agreed to by the parties and set by the Court at the outset of this case.[5] There is no valid basis for Defendants' refusal to move the trial date. To the contrary, when negotiating the original case schedule and trial date, the parties agreed on the February 2023 date because they wanted a decision by ▮▮▮▮▮▮▮▮, the earliest date Defendants could launch their ANDA Products as set by prior settlement agreements. However, since entry of the Scheduling Order, the earliest possible launch date has been ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮. Accordingly, there is substantial room to move the trial date and still allow ample time for post-trial briefing and a decision before any possible at-risk launch.

Good cause exists for these adjustments to the case schedule and trial date. First, the preference is for cases to be resolved on the merits. *See, e.g.*, *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 F. App'x 136, 137 (3d Cir. 2017) ("We . . . 'repeatedly [have] stated our preference that cases be disposed of on the merits whenever practicable.'"). Second, as discussed above, Plaintiffs have been diligent in pursuing discovery related to the dissolution limitation, including the Testing Batch samples, once disclosed to Plaintiffs. Third, given that Plaintiffs received the Testing Batch samples only yesterday, approximately two months are needed to test and have the samples analyzed by its experts. Fourth, Plaintiffs need time to resolve the open discovery disputes with several Defendants, including the Aurobindo privilege log dispute currently before the Court. Finally, the earliest date Defendants can launch their product is ▮▮▮▮▮▮, allowing for substantial flexibility in the current schedule while also preventing any prejudice to all parties. *See, e.g.*, Ex. 9, *FG SRC LLC v. Xilinx, Inc.*, CA No. 20-00601-WCB, at 1-4 (D. Del. Apr. 11, 2022) (D.I. 150) (extending discovery for five months and resetting trial date to allow Plaintiff to obtain discovery based on recently-produced evidence by Defendants).

---

[5]     Plaintiffs' proposed case schedule is set forth in the Proposed Order submitted herewith.

Respectfully submitted,

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)


cc: Counsel of Record (via CM/ECF and E-Mail)

# Exhibit 1

| From: | Romm, Connor |
|---|---|
| To: | Abramowitz, David |
| Cc: | Rachel Pernic Waldron; Richard C. Weinblatt; Jack Phillips; Dominic Gattuso; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya; Sasha Rao; jillian.schurr@katten.com; Andrea.Cheek@knobbe.com; Janusz, Joe; Megan C. Haney; Uthaman, Smitha; kdorsney@morrisjames.com; brent@ipfdalaw.com; EXTERNAL - Matthew Holub; bill.zimmerman; Mack.Montgomery; Carol M. Pitzel Cruz; jpesick@winston.com; seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R.; Soderstrom, Lance A.; William A. Rakoczy; Deanne M. Mazzochi; jshaw@shawkeller.com; Karen Keller; arussell@shawkeller.com; David Fry; Dennies Varughese; mgaertner@lockelord.com; Blessing, Carolyn A.; Savas, Emily; pkraman@ycst.com; EXTERNAL - stamoulis; Greg L. Goldblatt; USR-Mirabegron; @IP Para; KMOB-Mira; Teva_Mirabegron; yixin@ipfdalaw.com; Masar, Martin S.; shashank@ipfdalaw.com; Kevin P. Burke; Steven J. Birkos; Astellas_MyrbetriqMWETeam; Rachel Marshall; ajoyce@mccarter.com |
| Subject: | RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule Modification |
| Date: | Thursday, August 4, 2022 3:07:38 PM |
| Attachments: | Mirabegron - 20220804 Stipulation to Extend Time for Contentions.doc |

Counsel,

==Pursuant to our meet and confer, we understand the parties to be at impasse regarding the case schedule and that the remaining Defendants have joined Sandoz and Zydus in their opposition to any change to the current trial date.== We further understand Defendants and Astellas to be in agreement that a resolution of the remaining case schedule is necessary at this time to provide the parties with certainty going forward. Accordingly, we will circulate a joint letter seeking assistance from the Court in resolving which proposed schedule—Defendants' or Astellas'—is more appropriate in light of the delays we have described below.

Given the parties are at impasse, I have provided the attached stipulation extending the final infringement and invalidity contentions deadlines each by two weeks to give the Court time to determine the appropriate remaining schedule. Please confirm whether you agree to the stipulation by COB today so that our Delaware counsel may work with yours to get this on file.

Regards,
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977    **Email** cromm@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

**From:** Abramowitz, David <DAbramowitz@lockelord.com>
**Sent:** Thursday, August 4, 2022 9:27 AM
**To:** Romm, Connor <Cromm@mwe.com>
**Cc:** Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Richard C. Weinblatt <weinblatt@swdelaw.com>; Jack Phillips <JCP@pmhdelaw.com>; Dominic Gattuso <dgattuso@hegh.law>; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com; Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@pmhdelaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; kdorsney@morrisjames.com; brent@ipfdalaw.com; EXTERNAL - Matthew Holub <matthew.holub@katten.com>; bill.zimmerman <bill.zimmerman@knobbe.com>; Mack.Montgomery

1

<Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz <carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; mgaertner@lockelord.com; Blessing, Carolyn A. <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; pkraman@ycst.com; EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>; yixin@ipfdalaw.com; Masar, Martin S. <martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>; Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** Re: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule Modification

**[ External Email ]**
Counsel

For today's meet and confer at 11:30 am ET/10:30 am CT please use the following conference information.

Conf.# 866-512-4865
Passcode 201548

Regards
David

David B. Abramowitz
Locke Lord LLP
111 S. Wacker Dr.
Chicago, IL  60606
312-443-0591 Direct
773-314-7102. Mobile
312-896-6591 Fax
dabramowitz@lockelord.com
www.lockelord.com

On Aug 3, 2022, at 6:37 PM, Romm, Connor <cromm@mwe.com> wrote:

**\*\* External Email -- Sender: Cromm@mwe.com \*\***

Dear David,

Despite receiving assurances that samples would be forthcoming, Astellas has just learned that the promised samples are still in India and that the shipping process has likely not yet been initiated because of paperwork issues.  Moreover, we were informed that there is no estimate of when those samples might be shipped.  That, combined with the other outstanding fact discovery disputes that might involve other sample productions and the continuance of one or more depositions, makes it virtually impossible that infringement reports could be completed by our prior proposal, as early as September 12, 2022.  That goal is no longer feasible and it is absolutely clear that the trial date will have to be moved – the only question being by what period.  We remain willing to negotiate a schedule which might include aspirational contention and expert report deadlines, but with a realistic trial date given that those aspirational deadlines might slip because the production of the outstanding discovery is delayed.

Because Sandoz and Zydus are now refusing to agree to <u>any</u> shift in the trial date, which might have otherwise alleviated Astellas's concerns with committing to aspirational deadlines, Astellas cannot agree to a piecemeal approach that would extend the expert phase of the case only.

We look forward to the meet and confer scheduled for tomorrow to discuss this issue.

Best regards,
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977    **Email** cromm@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

---

**From:** Abramowitz, David <DAbramowitz@lockelord.com>
**Sent:** Tuesday, August 2, 2022 8:01 PM
**To:** Romm, Connor <Cromm@mwe.com>; Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Richard C. Weinblatt <weinblatt@swdelaw.com>; Jack Phillips <JCP@PMHDELaw.com>; Dominic Gattuso <dgattuso@hegh.law>; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com; Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; kdorsney@morrisjames.com; brent@ipfdalaw.com; EXTERNAL - Matthew Holub <matthew.holub@katten.com>; bill.zimmerman@knobbe.com; Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz

<carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; seaman@abramsbayliss.com;
cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>;
Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy
<wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>;
jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>;
arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese
<dvarughese@sternekessler.com>; mgaertner@lockelord.com; Blessing, Carolyn A.
<cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>;
pkraman@ycst.com; EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L.
Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-
Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira
<KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>;
Dennies Varughese <dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar,
Martin S. <martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke
<KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

[ External Email ]
Connor,

Defendants are available to meet and confer at 11:30 am ET/10:30 am CT on
Thursday.  In advance of that date, if Astellas has a counterproposal please provide
it.

Regards,
David
David B. Abramowitz
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois  60606
312-443-0591 Direct
773-314-7102 Mobile
312-896-6591 Fax
dabramowitz@lockelord.com
www.lockelord.com

---

**From:** Romm, Connor <Cromm@mwe.com>
**Sent:** Tuesday, August 2, 2022 10:10 AM
**To:** Abramowitz, David <DAbramowitz@lockelord.com>; Rachel Pernic Waldron
<rpernicwaldron@rmmslegal.com>; Richard C. Weinblatt <weinblatt@swdelaw.com>;
Jack Phillips <JCP@PMHDELaw.com>; Dominic Gattuso <dgattuso@hegh.law>;

chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>;
Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com;
Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney
<mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>;
kdorsney@morrisjames.com; brent@ipfdalaw.com; EXTERNAL - Matthew Holub
<matthew.holub@katten.com>; bill.zimmerman <bill.zimmerman@knobbe.com>;
Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz
<carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; seaman@abramsbayliss.com;
cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>;
Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy
<wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>;
jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>;
arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese
<dvarughese@sternekessler.com>; Gaertner, Michael <MGaertner@lockelord.com>;
Blessing, Carolyn A. <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>;
EXTERNAL - Pilar Kraman <PKraman@ycst.com>; EXTERNAL - stamoulis
<stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-
Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>;
KMOB-Mira <KMOB-Mira@knobbe.com>; Teva_Mirabegron
<Teva_Mirabegron@winston.com>; Dennies Varughese
<dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar, Martin S.
<martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke
<KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

**\*\* External Email -- Sender: Cromm@mwe.com \*\***

David,

We are willing to meet and confer to discuss a modified schedule through the end of
expert discovery.  Please provide Defendants' availability Wednesday or Thursday to
meet and confer.

To be clear, we are not conceding that the current trial date is workable given
Defendants' discovery delays, and therefore reserve our right to seek further extension
from the Court as necessary to resolve the open disputes.  Indeed, Astellas continues to
pursue samples the testing of which may potentially implicate the majority (if not all) of
Defendants' ANDA Products.  As we have previously noted, we cannot schedule testing
until we have the samples in hand, and lab availability is limited.  Delays in the disclosure
and production of discovery have caused clear and substantial detriment to Astellas,
demonstrating good cause for the requested extension.

Additionally, we disagree that any one Defendant can wash its hands of the discovery delays of the others as this is a single case.  It is our understanding that Defendants are working as a defense group, and therefore should have coordinated resolution of these disputes to avoid delaying the close of fact discovery.  As explained on the prior meet and confer, it is prejudicial to Astellas for any of the Defendants to fall behind, requiring Astellas to perform extra work on a different schedule.  This divide and conquer strategy is improper and would prejudice Astellas in preparing its infringement case, including its final infringement contentions and expert reports.

On the prior meet and confer, Defendants admitted that the current trial date was selected based upon the expected entry date under the controlling settlements from the prior mirabegron litigation.  But as explained to Defendants on that call, the expected entry date under those settlements has been pushed back another six months due to pediatric exclusivity, which was granted after the Court ordered the current trial date.  As a result, Astellas' first request of a three-month extension was more than reasonable and easily achieved Defendants' stated objective in selecting a trial date.  By logical extension, Astellas' proposed compromise position of a 1.5 month extension is, therefore, eminently reasonable under these circumstances.  However, if Defendants require Plaintiffs to move the court for an extension, Plaintiffs reserve the right to request the original extension to account for wasted resources and additional delay caused by Defendants.

Regards,
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977  |  **Email** cromm@mwe.com
Website | vCard | Twitter | LinkedIn

---

**From:** Abramowitz, David <DAbramowitz@lockelord.com>
**Sent:** Friday, July 29, 2022 4:35 PM
**To:** Romm, Connor <Cromm@mwe.com>; Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Richard C. Weinblatt <weinblatt@swdelaw.com>; Jack Phillips <JCP@PMHDELaw.com>; Dominic Gattuso <dgattuso@hegh.law>; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com; Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; kdorsney@morrisjames.com; brent@ipfdalaw.com; EXTERNAL - Matthew Holub <matthew.holub@katten.com>; bill.zimmerman <bill.zimmerman@knobbe.com>; Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz <carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy

<wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; mgaertner@lockelord.com; Blessing, Carolyn A. <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; pkraman@ycst.com; EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese <dvarughese@sternekessler.com>; yixin@ipfdalaw.com>; Masar, Martin S. <martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com>
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule Modification

[ External Email ]

Connor,

Zydus joins Sandoz in its objection to moving the trial date. Astellas has been in possession of more than 90% of the discovery in this matter for over five years. Indeed, according to the Scheduling Order, fact discovery in the case has already closed.

Astellas has no pending discovery disputes with Zydus and the purported issues mentioned in your correspondence below all appear to be ancillary discussions like authenticity stipulations that often are addressed by the parties at the pretrial order stage, not during fact discovery. In fact, in the prior mirabegron litigation issues such as these were resolved during and after expert discovery without complaint. None of these disputes appear to have any relevance to substantive issues such as infringement or invalidity of the '780 patent. Like Sandoz, Zydus would like to move forward with this case, which has been pending for almost two years at this point with the parties still yet to provide final contentions.

The trial date in this case has been set by a Scheduling Order of the Court. If Astellas wishes to seek the trial date be delayed when any of the other parties objects, Astellas must present "good cause" to do so under Fed. R. Civ. P. 16. That is Astellas's burden and not the other way around. The parties' discussions thus far establish that Astellas would not meet that high bar. In fact, Astellas has offered no explanation why it would be unable to move forward with its substantive case under a modified schedule that would retain the current trial date nor provided any evidence that holding the trial in February 2023 would actually prejudice any party given the trial date remains over six months away.

The defendants remain willing to discuss a modified schedule that keeps the trial date, including dates similar to those in Astellas's proposal through the end of expert discovery. Please let us know if you would like to meet and confer regarding those dates.

Regards,
David

David B. Abramowitz
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois  60606
312-443-0591 Direct
773-314-7102 Mobile
312-896-6591 Fax
dabramowitz@lockelord.com
www.lockelord.com

---

**From:** Romm, Connor <Cromm@mwe.com>
**Sent:** Friday, July 29, 2022 2:58 PM
**To:** Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Richard C. Weinblatt <weinblatt@swdelaw.com>; Jack Phillips <JCP@PMHDELaw.com>; Abramowitz, David <DAbramowitz@lockelord.com>; Dominic Gattuso <dgattuso@hegh.law>; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com; Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; kdorsney@morrisjames.com; brent@ipfdalaw.com; EXTERNAL - Matthew Holub <matthew.holub@katten.com>; bill.zimmerman <bill.zimmerman@knobbe.com>; Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz <carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; Gaertner, Michael <MGaertner@lockelord.com>; Blessing, Carolyn A. <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; EXTERNAL - Pilar Kraman <PKraman@ycst.com>; EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese <dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar, Martin S. <martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule

Modification

** External Email -- Sender: Cromm@mwe.com **

Rachel,

As you know, this is a consolidated case and to suggest that the parties might set a special, separate schedule for Sandoz is unfounded as that would further prejudice Astellas and waste judicial resources. As previously noted, various Defendants have caused and continue to create significant impediments to Astellas obtaining the discovery to which it is entitled, including through privilege log issues, inadequate authentication stipulations, and document production insufficiencies. These delays necessitate an adequate extension to the trial date, and Sandoz cannot avoid the issue by seeking to distance itself from the disputes caused by its fellow Defendants.

Further, Sandoz's assertion that it is "entitled to the scheduled trial date and the certainty that will come with it" does not present a cognizable right under the law, nor does it comport with common practice. Indeed, courts regularly move trial dates in light of any number of case-specific necessities or even just for docket scheduling purposes. Further, Defendants' discovery deficiencies continue to prejudice Astellas far beyond any loss of "certainty" that might be caused by moving the trial date less than two months.

Regarding your statement that Sandoz "understands from other Defendants" that the delays arising from these disputes are of Astellas' making, we are under the impression that the individual Defendants named in our dispute letter wish to avoid discussing the specifics of our disputes with the other Defendants. If these individual Defendants are amenable to our discussing these disputes before the Joint Defendant Group, we are happy to demonstrate the unilateral nature of the delays they have caused.

Accordingly, please confer with your fellow Defendants to provide your collective availability for an additional meet and confer.  At this meeting, we expect any Defendant intending to oppose an extension to the trial date will raise and discuss their objections at that time. Please also revisit your discussions with the individual Defendants listed in our dispute letter, and let us know if we may discuss these disputes in detail during the upcoming meet and confer.

Regards,
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977    **Email** cromm@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

**From:** Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>
**Sent:** Thursday, July 28, 2022 7:32 PM
**To:** Romm, Connor <Cromm@mwe.com>; Richard C. Weinblatt <weinblatt@swdelaw.com>; Jack Phillips <JCP@PMHDELaw.com>; David Abramowitz <dabramowitz@lockelord.com>; Dominic Gattuso <dgattuso@hegh.law>; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com; Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; kdorsney@morrisjames.com; brent@ipfdalaw.com; matthew.holub@katten.com; bill.zimmerman <bill.zimmerman@knobbe.com>; Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz <carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; mgaertner@lockelord.com; Carolyn Blessing <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; pkraman@ycst.com; Stamatios Stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese <dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar, Martin S. <martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule Modification

**[ External Email ]**

Dear Astellas counsel---

Thank you for your email.  However, perhaps Astellas misunderstood what was said at the meet-and-confer—there has been no "backtracking" of any kind.  No defendant agreed to move the trial date, and certainly not Sandoz.  Rather, Sandoz, like the other defendants, agreed to consider Astellas' proposal in good faith.  Sandoz has done that, and does not agree to move the trial date for at least the following reasons:

1. First, as Astellas cannot dispute, Sandoz has done nothing to warrant moving the trial date.  To the contrary, Astellas' complaints are admittedly about other defendants.  As such, there is no legitimate reason to prejudice Sandoz.

2. Second, Sandoz is entitled to the scheduled trial date and the certainty that will come with it.

3. Third, none of the Astellas' purported complaints justify moving the trial date.

4. Fourth, Astellas also has not explained why: (i) any existing open discovery issues with other defendants could not be dealt with via a separate expert schedule for those defendants; or (ii) why those disputes are not of Astellas' own making (which we understand from other defendants is the case).

Sandoz attempted to compromise by offering to modify interim dates through the close of expert discovery, but Astellas has refused that compromise.

We are certainly available to meet and confer if you like.  Otherwise, we consider Sandoz and Astellas to be at an impasse regarding the trial date, and we understand that the next step is to approach the Court.

Best regards,
Rachel

**RACHEL PERNIC WALDRON | PARTNER**
RPERNICWALDRON@RMMSLEGAL.COM
DIRECT | 312.222.7543
OFFICE | 312.527.2157



SIX WEST HUBBARD STREET   CHICAGO IL 60654
WWW.RMMSLEGAL.COM

This email message and any attachments are being sent by Rakoczy Molino Mazzochi Siwik LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately by replying to this message, and destroy all copies of this message and any attachments. Thank you.

**From:** Romm, Connor <Cromm@mwe.com>
**Sent:** Thursday, July 28, 2022 2:26 PM
**To:** Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Richard C. Weinblatt <weinblatt@swdelaw.com>; Jack Phillips <JCP@PMHDELaw.com>; David Abramowitz <dabramowitz@lockelord.com>; Dominic Gattuso <dgattuso@hegh.law>; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com;

Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney
<mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>;
kdorsney@morrisjames.com; brent@ipfdalaw.com; matthew.holub@katten.com;
bill.zimmerman <bill.zimmerman@knobbe.com>; Mack.Montgomery
<Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz
<carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; seaman@abramsbayliss.com;
cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>;
Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy
<wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>;
jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>;
arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese
<dvarughese@sternekessler.com>; mgaertner@lockelord.com; Carolyn Blessing
<cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>;
pkraman@ycst.com; Stamatios Stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt
<ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP
Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>;
Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese
<dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar, Martin S.
<martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke
<KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

Dear All,

We are perplexed by Sandoz's apparent refusal to move the trial date given what
occurred during the meet and confer, where Defendants were collectively open to
moving the trial date "a month-month and half" as workable and invited a
counterproposal that would achieve such an extension.  It now appears that Sandoz is
backtracking to Defendants' position before the meet and confer, which was that the
trial date would not be moved at all.  This backtracking is unacceptable given that
Sandoz (or any other Defendant for that matter) failed to voice its objections during
the meet and confer, which was the proper forum to raise and discuss them.

Notwithstanding Sandoz's position, if the other Defendants could please let us know
today whether they have any comments on Astellas' counterproposal.  We have already
explained our bases for seeking to adjust the schedule and move the trial date, so as
part of the meet and confer process, we expect that any Defendant intending to oppose
our request will provide their bases for the opposition.  We intend to submit a joint
letter to Judge Burke this week to request a conference.

Thank you and best regards,

Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977   **Email** cromm@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

---

**From:** Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>
**Sent:** Thursday, July 28, 2022 10:43 AM
**To:** Richard C. Weinblatt <weinblatt@swdelaw.com>; Jack Phillips
<JCP@PMHDELaw.com>; Romm, Connor <Cromm@mwe.com>; David Abramowitz
<dabramowitz@lockelord.com>; Dominic Gattuso <dgattuso@hegh.law>;
chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>;
Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com;
Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney
<mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>;
kdorsney@morrisjames.com; brent@ipfdalaw.com; matthew.holub@katten.com;
bill.zimmerman <bill.zimmerman@knobbe.com>; Mack.Montgomery
<Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz
<carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; seaman@abramsbayliss.com;
cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>;
Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy
<wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>;
jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>;
arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese
<dvarughese@sternekessler.com>; mgaertner@lockelord.com; Carolyn Blessing
<cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>;
pkraman@ycst.com; Stamatios Stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt
<ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP
Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>;
Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese
<dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar, Martin S.
<martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke
<KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

[ External Email ]
Dear Astellas counsel –

Sandoz will not oppose this stipulation in the spirit of cooperation and in the interest of
judicial economy.  For the same reasons, Sandoz is happy to discuss modifying interim
dates through the close of expert discovery (and indeed, Sandoz thinks this would be the
best way to proceed instead of these piecemeal extensions).  Please note, however, that

==Sandoz will not countenance moving the trial date.==

Best regards,
Rachel


**RACHEL PERNIC WALDRON | PARTNER**
RPERNICWALDRON@RMMSLEGAL.COM
DIRECT | 312.222.7543
OFFICE | 312.527.2157



SIX WEST HUBBARD STREET    CHICAGO IL 60654
WWW.RMMSLEGAL.COM

This email message and any attachments are being sent by Rakoczy Molino Mazzochi
Siwik LLP, are confidential, and may be privileged. If you are not the intended recipient,
please notify us immediately by replying to this message, and destroy all copies of this
message and any attachments. Thank you.

**From:** Richard C. Weinblatt <weinblatt@swdelaw.com>
**Sent:** Wednesday, July 27, 2022 4:50 PM
**To:** Jack Phillips <JCP@PMHDELaw.com>; Romm, Connor <Cromm@mwe.com>; David Abramowitz <dabramowitz@lockelord.com>; Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Dominic Gattuso <dgattuso@hegh.law>; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com; andrea.cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; kdorsney@morrisjames.com; brent@ipfdalaw.com; matthew.holub@katten.com; bill.zimmerman@knobbe.com; Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz <carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; John Seaman <seaman@abramsbayliss.com>; cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; John Shaw <jshaw@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; Mike Gaertner <mgaertner@lockelord.com>; Carolyn Blessing <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; Pilar Kraman <pkraman@ycst.com>; Stamatios Stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira

14

<KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese <dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar, Martin S. <martin.masar@katten.com>; shashank@ipfdalaw.com; Kevin P. Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule Modification

Ok for Prinston.

Thanks.

Regards,

Rich


Richard C. Weinblatt
Stamoulis & Weinblatt LLC
www.swdelaw.com

**From:** Jack Phillips <JCP@PMHDELaw.com>
**Sent:** Wednesday, July 27, 2022 5:47 PM
**To:** Romm, Connor <Cromm@mwe.com>; David Abramowitz <dabramowitz@lockelord.com>; Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Dominic Gattuso <dgattuso@hegh.law>; chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com; andrea.cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; kdorsney@morrisjames.com; brent@ipfdalaw.com; matthew.holub@katten.com; bill.zimmerman@knobbe.com; Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz <carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; John Seaman <seaman@abramsbayliss.com>; cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; Bill Rakoczy <wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; John Shaw <jshaw@shawkeller.com>; Karen Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; Mike Gaertner <mgaertner@lockelord.com>; Carolyn Blessing <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; Pilar Kraman <pkraman@ycst.com>; Richard C. Weinblatt <weinblatt@swdelaw.com>; Stamatios Stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>;

KMOB-Mira <KMOB-Mira@knobbe.com>; Teva_Mirabegron
<Teva_Mirabegron@winston.com>; Dennies Varughese
<dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar, Martin S.
<martin.masar@katten.com>; shashank@ipfdalaw.com; kburke@rmmslegal.com;
Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

I am signed off for Lupin.


Phillips, McLaughlin & Hall, P.A.

1200 North Broom Street
Wilmington DE, 19806
Offices: (302) 655-4200 | Fax: (302) 655-4210 | PMHDELaw.com

*This message and any attachments may contain confidential and attorney-client
privileged information and are intended only for the use of the intended recipients
of this message. If you are not the intended recipient of this message, or the
employee or agent responsible to deliver it to the intended recipient, please notify
the sender by return email, and delete this and all copies of this message and any
attachments from your system. You are hereby notified that any unauthorized
disclosure, use, distribution, or reproduction of this message or any attachments is
strictly prohibited and may be unlawful.*


**From:** Romm, Connor <Cromm@mwe.com>
**Sent:** Wednesday, July 27, 2022 3:37 PM
**To:** David Abramowitz <dabramowitz@lockelord.com>; Rachel Pernic Waldron
<rpernicwaldron@rmmslegal.com>; Dominic Gattuso <dgattuso@hegh.law>;
chitch@morrisjames.com; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>;
Sasha Rao <SRao@sternekessler.com>; jillian.schurr@katten.com;
andrea.cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney
<mch@PMHDELaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>;
kdorsney@morrisjames.com; brent@ipfdalaw.com; matthew.holub@katten.com; Jack
Phillips <JCP@PMHDELaw.com>; bill.zimmerman@knobbe.com; Mack.Montgomery
<Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz
<carol.pitzel.cruz@knobbe.com>; jpesick@winston.com; John Seaman
<seaman@abramsbayliss.com>; cannataro@abramsbayliss.com; Mukerjee, Deepro R.
<deepro.mukerjee@katten.com>; Soderstrom, Lance A.
<lance.soderstrom@katten.com>; Bill Rakoczy <wrakoczy@rmmslegal.com>; Deanne M.
Mazzochi <DMazzochi@rmmslegal.com>; John Shaw <jshaw@shawkeller.com>; Karen
Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry
<dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; Mike

Gaertner <mgaertner@lockelord.com>; Carolyn Blessing <cblessing@lockelord.com>;
Savas, Emily <esavas@lockelord.com>; Pilar Kraman <pkraman@ycst.com>;
weinblatt@swdelaw.com; Stamatios Stamoulis <stamoulis@swdelaw.com>; Greg L.
Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-
Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira
<KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>;
Dennies Varughese <dvarughese@sternekessler.com>; yixin@ipfdalaw.com; Masar,
Martin S. <martin.masar@katten.com>; shashank@ipfdalaw.com;
kburke@rmmslegal.com; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

Dear all,

Thank you again for yesterday's productive meet and confer.  While we appreciate that
it may take time to obtain final confirmation from each of your respective clients, we ask
that you get back to us regarding the below proposed schedule by Friday.

In the meantime, please confirm your agreement to the attached stipulation by COB
today, which extends the deadlines for final infringement and invalidity contentions
each by one week while the parties consider the below.

Best,
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977   **Email** cromm@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

---

**From:** Romm, Connor
**Sent:** Tuesday, July 26, 2022 5:57 PM
**To:** Abramowitz, David <DAbramowitz@lockelord.com>; Rachel Pernic Waldron
<rpernicwaldron@rmmslegal.com>; Dominick Gattuso <dgattuso@hegh.law>; Cortlan S.
Hitch <CHitch@morrisjames.com>; 'dsilver@mccarter.com' <dsilver@mccarter.com>;
Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; Schurr,
Jillian M. <jillian.schurr@katten.com>; 'Andrea.Cheek@knobbe.com'
<Andrea.Cheek@knobbe.com>; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney
<mch@pmhdelaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>;
Kenneth Laurence Dorsney <kdorsney@morrisjames.com>; Brent Batzer
<brent@ipfdalaw.com>; EXTERNAL - Matthew Holub <matthew.holub@katten.com>;
John C. Phillips , Jr. <jcp@pmhdelaw.com>; 'bill.zimmerman'
<bill.zimmerman@knobbe.com>; Mack.Montgomery

<Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz
<carol.pitzel.cruz@knobbe.com>; Pesick, Jason <JPesick@winston.com>;
'seaman@abramsbayliss.com' <seaman@abramsbayliss.com>;
cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>;
Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy
<wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>;
'jshaw@shawkeller.com' <jshaw@shawkeller.com>; Karen Keller
<kkeller@shawkeller.com>; 'arussell@shawkeller.com' <arussell@shawkeller.com>;
David Fry <dfry@shawkeller.com>; Dennies Varughese
<dvarughese@sternekessler.com>; 'mgaertner@lockelord.com'
<mgaertner@lockelord.com>; Blessing, Carolyn A. <cblessing@lockelord.com>; Savas,
Emily <esavas@lockelord.com>; 'pkraman@ycst.com' <pkraman@ycst.com>;
weinblatt@swdelaw.com; EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L.
Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-
Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira
<KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>;
Dennies Varughese <dvarughese@sternekessler.com>; 'Yixin Tang'
<yixin@ipfdalaw.com>; Masar, Martin S. <martin.masar@katten.com>; Shashank
Upadhye <shashank@ipfdalaw.com>; Kevin P. Burke <KBurke@rmmslegal.com>; Steven
J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>; 'ajoyce@mccarter.com' <ajoyce@mccarter.com>
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

Dear All,

<mark>Thank you for meeting with us this afternoon to discuss the proposed schedule
amendment.  During that call, the Defendants agreed that they were amenable to
considering a modest change to the current trial date.</mark>  Please find below a proposed
schedule which reflects a compromise between Astellas' and Defendants' proposed
schedules.

| Event | Current Deadline | Proposed Deadline (Amended) |
|---|---|---|
| Plaintiff to provide final infringement contentions | July 22, 2022 | August 19, 2022 |
| Defendants to provide final invalidity contentions | August 1, 2022 | August 29, 2022 |
| Opening Expert Reports | August 12, 2022 | September 12, 2022 |
| Rebuttal Expert Reports | September 16, 2022 | October 10, 2022 |
| Reply Expert Reports | October 14, 2022 | November 7, 2022 |
| Deadline to complete expert discovery | November 22, 2022 | December 21, 2022 |
| Expert status conference | December 1, 2022 | N/A – No Dauberts |

| with the Court | | necessary |
| Oral arguments on pending dispositive and Daubert motions | December 22, 2022 | N/A – No Dauberts necessary |
| Joint Proposed Final Pretrial Order | January 13, 2023 | TBD based on trial date |
| Pretrial conference | January 19, 2023 | TBD based on trial date |
| Trial | Beginning February 6, 2023 | Beginning March 27, 2023 |
| Interim Status Report | August 10, 2022 | September 2, 2022 |

Additionally, in order to streamline the schedule, we eliminated the deadline for Daubert motions as this case is scheduled for a bench trial. As we discussed, we request that Defendants let us know as quickly as possible whether they are amenable to these changes.

Best.
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977    **Email** cromm@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

---

**From:** Romm, Connor
**Sent:** Monday, July 25, 2022 5:11 PM
**To:** Abramowitz, David <DAbramowitz@lockelord.com>; Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Dominick Gattuso <dgattuso@hegh.law>; Cortlan S. Hitch <CHitch@morrisjames.com>; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; Schurr, Jillian M. <jillian.schurr@katten.com>; Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@pmhdelaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; Kenneth Laurence Dorsney <kdorsney@morrisjames.com>; Brent Batzer <brent@ipfdalaw.com>; EXTERNAL - Matthew Holub <matthew.holub@katten.com>; John C. Phillips , Jr. <jcp@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>; Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz <carol.pitzel.cruz@knobbe.com>; Pesick, Jason <JPesick@winston.com>; seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; mgaertner@lockelord.com; Blessing, Carolyn A. <cblessing@lockelord.com>; Savas,

Emily <esavas@lockelord.com>; pkraman@ycst.com; weinblatt@swdelaw.com;
EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt
<ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP
Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>;
Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese
<dvarughese@sternekessler.com>; 'Yixin Tang' <yixin@ipfdalaw.com>; Masar, Martin S.
<martin.masar@katten.com>; Shashank Upadhye <shashank@ipfdalaw.com>; Kevin P.
Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>; ajoyce@mccarter.com
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

David,

Thank you for your email.  We are available to meet and confer tomorrow at 2 pm CT/3
pm ET.  Please use the following dial-in: 8778535257,,4983637434#,,#.

Best,
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977   **Email** cromm@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

---

**From:** Abramowitz, David <DAbramowitz@lockelord.com>
**Sent:** Monday, July 25, 2022 3:28 PM
**To:** Romm, Connor <Cromm@mwe.com>; Rachel Pernic Waldron
<rpernicwaldron@rmmslegal.com>; Dominick Gattuso <dgattuso@hegh.law>; Cortlan S.
Hitch <CHitch@morrisjames.com>; dsilver@mccarter.com; Anand, Nitya
<Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; Schurr, Jillian M.
<jillian.schurr@katten.com>; Andrea.Cheek@knobbe.com; Janusz, Joe
<joe.janusz@katten.com>; Megan C. Haney <mch@pmhdelaw.com>; Uthaman, Smitha
<Smitha.Uthaman@lockelord.com>; Kenneth Laurence Dorsney
<kdorsney@morrisjames.com>; Brent Batzer <brent@ipfdalaw.com>; EXTERNAL -
Matthew Holub <matthew.holub@katten.com>; John C. Phillips , Jr.
<jcp@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>;
Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz
<carol.pitzel.cruz@knobbe.com>; Pesick, Jason <JPesick@winston.com>;
seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R.
<deepro.mukerjee@katten.com>; Soderstrom, Lance A.
<lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>;
Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen
Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry

<dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; mgaertner@lockelord.com; Blessing, Carolyn A. <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; pkraman@ycst.com; weinblatt@swdelaw.com; EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>; Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese <dvarughese@sternekessler.com>; 'Yixin Tang' <yixin@ipfdalaw.com>; Masar, Martin S. <martin.masar@katten.com>; Shashank Upadhye <shashank@ipfdalaw.com>; Kevin P. Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel Marshall <RMarshall@hegh.law>
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule Modification

**[ External Email ]**
Connor,

Defendants are available to meet and confer regarding the below and the issues in your draft letter tomorrow, July 26, 2022 at 2 pm CT/3 pm ET. Please send conference information.

Regards,
David
David B. Abramowitz
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
312-443-0591 Direct
773-314-7102 Mobile
312-896-6591 Fax
dabramowitz@lockelord.com
www.lockelord.com

---

**From:** Romm, Connor <Cromm@mwe.com>
**Sent:** Monday, July 25, 2022 12:05 PM
**To:** Abramowitz, David <DAbramowitz@lockelord.com>; Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Dominick Gattuso <dgattuso@hegh.law>; Cortlan S. Hitch <CHitch@morrisjames.com>; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; Schurr, Jillian M. <jillian.schurr@katten.com>; Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@pmhdelaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; Kenneth Laurence Dorsney <kdorsney@morrisjames.com>; Brent Batzer <brent@ipfdalaw.com>; EXTERNAL -

Matthew Holub <matthew.holub@katten.com>; John C. Phillips , Jr.
<jcp@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>;
Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz
<carol.pitzel.cruz@knobbe.com>; Pesick, Jason <JPesick@winston.com>;
seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R.
<deepro.mukerjee@katten.com>; Soderstrom, Lance A.
<lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>;
Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen
Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry
<dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>;
Gaertner, Michael <MGaertner@lockelord.com>; Blessing, Carolyn A.
<cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; EXTERNAL - Pilar
Kraman <PKraman@ycst.com>; weinblatt@swdelaw.com; EXTERNAL - stamoulis
<stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-
Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>;
KMOB-Mira <KMOB-Mira@knobbe.com>; Teva_Mirabegron
<Teva_Mirabegron@winston.com>; Dennies Varughese
<dvarughese@sternekessler.com>; 'Yixin Tang' <yixin@ipfdalaw.com>; Masar, Martin S.
<martin.masar@katten.com>; Shashank Upadhye <shashank@ipfdalaw.com>; Kevin P.
Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

<div style="border:2px solid red; padding:4px;">

**\*\* External Email -- Sender: Cromm@mwe.com \*\***

</div>

David,

We have considered your counterproposal, and we find its proposed extensions
inadequate in light of the delays caused by certain Defendants' outstanding discovery
deficiencies, as discussed in the attached draft joint letter.

Despite Astellas' diligent efforts, outstanding discovery deficiencies such as privilege log
issues, inadequate authentication stipulations, and document production insufficiencies
remain regarding certain Defendants.  Astellas has followed up with the relevant
Defendants repeatedly, but Defendants have yet to resolve these issues.  Moreover,
certain Defendants have only recently agreed to produce samples of certain requested
batches of their Mirabegron products that should have been produced long ago.  Given
limited lab availability, which can only be scheduled once the samples are in hand,
Defendants' delay continues to substantially prejudice Astellas under the Defendants'
proposed schedule.

In light of these issues and the vast differences between the parties' proposed
schedules, Astellas suspects that Court intervention may be required to determine how

best to structure the remaining deadlines.

Accordingly, please provide your availability to meet and confer early this week.  Should the parties be unable to come to an agreement during this meet and confer, please confirm that Defendants consent to affix their local counsel's signature to the attached so that the Court may determine the remaining case schedule that is most appropriate in light of the delays discussed above.  To be clear, the fact discovery portion of this case cannot conclude until all Defendants have cured their discovery deficiencies.  Moreover, we cannot agree to any proposed schedule that allows Defendants' delays to prejudice Astellas.  Any proposal that attempts to compress the remaining schedule to fit the current trial date is insufficient.

Best,
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977   **Email** cromm@mwe.com
Website | vCard | Twitter | LinkedIn

---

**From:** Romm, Connor
**Sent:** Thursday, July 21, 2022 12:49 PM
**To:** Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>; Abramowitz, David <DAbramowitz@lockelord.com>; Dominick Gattuso <dgattuso@hegh.law>; Cortlan S. Hitch <CHitch@morrisjames.com>; dsilver@mccarter.com; Anand, Nitya <Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; Schurr, Jillian M. <jillian.schurr@katten.com>; Andrea.Cheek@knobbe.com; Janusz, Joe <joe.janusz@katten.com>; Megan C. Haney <mch@pmhdelaw.com>; Uthaman, Smitha <Smitha.Uthaman@lockelord.com>; Kenneth Laurence Dorsney <kdorsney@morrisjames.com>; Brent Batzer <brent@ipfdalaw.com>; EXTERNAL - Matthew Holub <matthew.holub@katten.com>; John C. Phillips , Jr. <jcp@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>; Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz <carol.pitzel.cruz@knobbe.com>; Pesick, Jason <JPesick@winston.com>; seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R. <deepro.mukerjee@katten.com>; Soderstrom, Lance A. <lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>; Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry <dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>; mgaertner@lockelord.com; Blessing, Carolyn A. <cblessing@lockelord.com>; Savas, Emily <esavas@lockelord.com>; pkraman@ycst.com; weinblatt@swdelaw.com; EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt <ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>;

Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese
<dvarughese@sternekessler.com>; 'Yixin Tang' <yixin@ipfdalaw.com>; Masar, Martin S.
<martin.masar@katten.com>; Shashank Upadhye <shashank@ipfdalaw.com>; Kevin P.
Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

Rachel,

Thank you for your email.  The proposed edits you provided are acceptable.  We will
have our Delaware counsel work with yours to get the stipulation on file today.

Best,
Connor

CONNOR S. ROMM
Associate
**McDermott Will & Emery LLP**  200 Clarendon Street, Floor 58, Boston, MA 02116-5021
**Tel** +1 617 535 5977    **Email** cromm@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

---

**From:** Rachel Pernic Waldron <rpernicwaldron@rmmslegal.com>
**Sent:** Thursday, July 21, 2022 11:31 AM
**To:** Romm, Connor <Cromm@mwe.com>; Abramowitz, David
<DAbramowitz@lockelord.com>; Dominick Gattuso <dgattuso@hegh.law>; Cortlan S.
Hitch <CHitch@morrisjames.com>; dsilver@mccarter.com; Anand, Nitya
<Nanand@mwe.com>; Sasha Rao <SRao@sternekessler.com>; Schurr, Jillian M.
<jillian.schurr@katten.com>; Andrea.Cheek@knobbe.com; Janusz, Joe
<joe.janusz@katten.com>; Megan C. Haney <mch@pmhdelaw.com>; Uthaman, Smitha
<Smitha.Uthaman@lockelord.com>; Kenneth Laurence Dorsney
<kdorsney@morrisjames.com>; Brent Batzer <brent@ipfdalaw.com>; EXTERNAL -
Matthew Holub <matthew.holub@katten.com>; John C. Phillips , Jr.
<jcp@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>;
Mack.Montgomery <Mack.Montgomery@knobbe.com>; Carol M. Pitzel Cruz
<carol.pitzel.cruz@knobbe.com>; Pesick, Jason <JPesick@winston.com>;
seaman@abramsbayliss.com; cannataro@abramsbayliss.com; Mukerjee, Deepro R.
<deepro.mukerjee@katten.com>; Soderstrom, Lance A.
<lance.soderstrom@katten.com>; William A. Rakoczy <wrakoczy@rmmslegal.com>;
Deanne M. Mazzochi <DMazzochi@rmmslegal.com>; jshaw@shawkeller.com; Karen
Keller <kkeller@shawkeller.com>; arussell@shawkeller.com; David Fry
<dfry@shawkeller.com>; Dennies Varughese <dvarughese@sternekessler.com>;
mgaertner@lockelord.com; Blessing, Carolyn A. <cblessing@lockelord.com>; Savas,
Emily <esavas@lockelord.com>; pkraman@ycst.com; weinblatt@swdelaw.com;
EXTERNAL - stamoulis <stamoulis@swdelaw.com>; Greg L. Goldblatt

<ggoldblatt@rmmslegal.com>; USR-Mirabegron <USR-Mirabegron@katten.com>; @IP
Para <MJIPPara@morrisjames.com>; KMOB-Mira <KMOB-Mira@knobbe.com>;
Teva_Mirabegron <Teva_Mirabegron@winston.com>; Dennies Varughese
<dvarughese@sternekessler.com>; 'Yixin Tang' <yixin@ipfdalaw.com>; Masar, Martin S.
<martin.masar@katten.com>; Shashank Upadhye <shashank@ipfdalaw.com>; Kevin P.
Burke <KBurke@rmmslegal.com>; Steven J. Birkos <SBirkos@rmmslegal.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; Rachel
Marshall <RMarshall@hegh.law>
**Subject:** RE: Astellas v. Sandoz et al., Case No. 20-1589-JFB-CJB (D.Del.) | Schedule
Modification

**[ External Email ]**
Connor –

Defendant are amenable to a stipulation extending Astellas' infringement contentions
deadline by one week, as long as Defendants get a commensurate extension; please see
the attached.

Rachel

**RACHEL PERNIC WALDRON | PARTNER**
**RPERNICWAL**

*********************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a
private communication sent by a law firm and may be confidential or protected by privilege. If
you are not the intended recipient, you are hereby notified that any disclosure, copying,
distribution or use of the information contained in or attached to this message is strictly
prohibited. Please notify the sender of the delivery error by replying to this message, and
then delete it from your system. Our Privacy Policy explains how we may use your personal
information or data and any personal information or data provided or made available to us.
Thank you.
*********************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

_____

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles | Miami |
New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or
exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident,
please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails
sent to and from our servers to ensure regulatory compliance to protect our clients and business.

# Exhibit 2

US010842780B2

(12) **United States Patent**
Takaishi et al.

(10) Patent No.: **US 10,842,780 B2**
(45) **Date of Patent:** **Nov. 24, 2020**

(54) **PHARMACEUTICAL COMPOSITION FOR MODIFIED RELEASE**

(71) Applicant: **ASTELLAS PHARMA INC.**, Tokyo (JP)

(72) Inventors: **Yuuki Takaishi**, Tokyo (JP); **Yutaka Takahashi**, Tokyo (JP); **Takashi Nishizato**, Tokyo (JP); **Daisuke Murayama**, Tokyo (JP); **Emiko Murayama**, Tokyo (JP); **Soichiro Nakamura**, Tokyo (JP); **Kazuhiro Sako**, Tokyo (JP)

(73) Assignee: **ASTELLAS PHARMA INC.**, Tokyo (JP)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **15/432,854**

(22) Filed: **Feb. 14, 2017**

(65) **Prior Publication Data**

US 2017/0231965 A1    Aug. 17, 2017

**Related U.S. Application Data**

(63) Continuation of application No. 12/568,313, filed on Sep. 28, 2009, now abandoned.

(60) Provisional application No. 61/101,338, filed on Sep. 30, 2008.

(51) **Int. Cl.**
*A61K 31/426* (2006.01)
*A61K 9/20* (2006.01)
*A61K 9/28* (2006.01)

(52) **U.S. Cl.**
CPC .......... *A61K 31/426* (2013.01); *A61K 9/2009* (2013.01); *A61K 9/2013* (2013.01); *A61K 9/2031* (2013.01); *A61K 9/2054* (2013.01); *A61K 9/2095* (2013.01); *A61K 9/2853* (2013.01); *A61K 9/2866* (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,929,629 A | 5/1990 | Jeffery | |
| 5,681,582 A | 10/1997 | Gilis et al. | |
| 6,204,285 B1 | 3/2001 | Fabiano et al. | |
| 6,346,532 B1 | 2/2002 | Maruyama et al. | |
| 6,368,628 B1 | 4/2002 | Seth | |
| 6,436,441 B1 | 8/2002 | Sako et al. | |
| 6,699,503 B1 | 3/2004 | Sako et al. | |
| 7,442,387 B2 | 10/2008 | Sugihara et al. | |
| 8,877,214 B2 | 11/2014 | Takaishi et al. | |
| 2001/0006982 A1 | 7/2001 | Cruz et al. | |
| 2003/0198619 A1 | 10/2003 | Dong et al. | |
| 2003/0203024 A1 | 10/2003 | Sako et al. | |
| 2004/0033263 A1 | 2/2004 | Seroff et al. | |

| | | | |
|---|---|---|---|
| 2004/0213845 A1 | 10/2004 | Sugihara et al. | |
| 2005/0100602 A1 | 5/2005 | Sako et al. | |
| 2005/0100603 A1 | 5/2005 | Sako et al. | |
| 2005/0261328 A1 | 11/2005 | Wienrich | |
| 2005/0287185 A1 | 12/2005 | Wong et al. | |
| 2006/0099257 A1 | 5/2006 | Langridge et al. | |
| 2006/0115540 A1 | 6/2006 | Takasu et al. | |
| 2008/0275076 A1 | 11/2008 | Holm et al. | |
| 2009/0011018 A1 | 1/2009 | Kondo et al. | |
| 2009/0093529 A1 | 4/2009 | Takasu et al. | |
| 2010/0144807 A1 | 6/2010 | Takaishi et al. | |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | 199889288 B2 | 5/1999 |
| CA | 2263659 A1 | 2/1998 |
| CA | 2315235 A1 | 6/1999 |
| CA | 2328348 A1 | 10/1999 |
| CA | 2336853 A1 | 1/2000 |
| CA | 2507266 A1 | 6/2004 |
| CA | 2144077 C | 5/2005 |
| CA | 2490299 C | 8/2008 |
| CA | 2305802 C | 11/2008 |
| CA | 2387705 C | 6/2009 |
| EP | 1 205 190 A1 | 5/2002 |
| EP | 1 440 969 A1 | 7/2004 |
| EP | 1 559 427 A1 | 8/2005 |
| EP | 1 974 725 A1 | 10/2008 |
| EP | 2 345 410 A1 | 7/2011 |
| EP | 2 554 168 B1 | 1/2018 |
| GB | 2356197 A | 5/2001 |
| JP | S40-2053 | 2/1965 |

(Continued)

OTHER PUBLICATIONS

Daewoong Pharmaceutical Co., Ltd.; Petitioner's Brief; 2017 Dang 473 Patent Invalidation Action; Feb. 21, 2017.
Australian Patent Application No. 2009300752, Examination Report, dated Dec. 14, 2012, 11 pages.
Canadian Patent Application No. 2,740,342, Office Action, dated Jun. 3, 2013, 3 pages.
Canadian Patent Application No. 2,740,342, Second Office Action, dated Feb. 14, 2014, 2 pages.
Chinese Patent Application No. 200980138691.9, Decision on Rejection, dated Feb. 14, 2014, 5 pages.

(Continued)

*Primary Examiner* — Jeffrey S Lundgren
*Assistant Examiner* — Michael J Schmitt
(74) *Attorney, Agent, or Firm* — Venable LLP

(57) **ABSTRACT**

A pharmaceutical composition for modified release, comprising (1) (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide, or a pharmaceutically acceptable salt thereof, (2) at least one additive which ensures penetration of water into the pharmaceutical composition and which has a solubility such that the volume of water required for dissolving 1 g of the additive is 10 mL or less, and (3) a hydrogel-forming polymer having an average molecular weight of approximately 100,000 or more, or a viscosity of 12 mPa·s or more at a 5% aqueous solution at 25° C. is disclosed.

**25 Claims, 1 Drawing Sheet**

ASTMIRA_00002881

## US 10,842,780 B2
Page 2

(56)            **References Cited**

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| JP | 3140465 | B2 | 3/2001 |
| JP | 2001-114736 | A | 4/2001 |
| JP | 2005-162736 | A | 6/2005 |
| JP | 2008-532953 | A | 8/2006 |
| JP | 3815496 | B2 | 8/2006 |
| JP | 5625855 | B2 | 11/2014 |
| JP | 5849946 | B2 | 2/2016 |
| KR | 10-0355130 | B | 1/2003 |
| KR | 2005-0072809 | A | 7/2010 |
| KR | 2005-0107298 | A | 9/2011 |
| WO | 94/06414 | A1 | 3/1994 |
| WO | 02/00622 | A2 | 1/2002 |
| WO | 02/48134 | A2 | 6/2002 |
| WO | 2004/041276 | A1 | 5/2004 |
| WO | 2009/019599 | A2 | 2/2009 |
| WO | 2009/052353 | A2 | 4/2009 |
| WO | 2010/038690 | A1 | 4/2010 |

OTHER PUBLICATIONS

Chinese Patent Application No. 200980138691.9, first Office Action, dated Jun. 18, 2013, 14 pages (English translation).
Chinese Patent Application No. 200980138691.9, second Office Action, dated Jun. 18, 2013, 13 pages (English translation).
Decision of the Rejection, dated Jul. 3, 2015, CN Patent Application No. 200980138691.9, 43 pages (includes English translation).
Extended Search Report, dated Oct. 30, 2014, EP Application No. 09 81 7723, 5 pages.
Final Office Action, dated May 17, 2013, U.S. Appl. No. 13/073,721.
Final Office Action, dated Nov. 21, 2013, U.S. Appl. No. 13/073,677.
Hercules Incorporated, "Klucel Hydroxypropylcellulose, Physical and Chemical Properties," Aqualon Division, http://www.brenntagspecialties.com/en/downloads/product/multi_market_principals/aqualon/klucel_hpc_booklet.pdf, 2001, 26 pages.
Intellectual Property Office of the Philippines; Subsequent Substantive Examination Report; PH Application No. 1/2011/500628; 3 pages; dated Jan. 11, 2016.
International Search Report of Application No. PCT/JP2009/066742 dated Nov. 10, 2009.
Ishikawa et al., "Preparation of rapidly disintegrating tablet using new types of microcrystalline cellulose (PH-M series) and low-substituted-hydroxypropylceliulose or spherical sugar granules by direct compression method," Chem. Pharm. Bull. 49(2) 134-139, 2001.
Israeli Patent Application No. 212033, First Substantive Examination Report, 4 pages (English translation).
Japanese Patent Application No. 2010-531838, first Office Action, dated Oct. 12, 2010, 8 pages (English translation).
Japanese Patent Application No. 2010-531838, first Office Action, dated Dec. 28, 2010, 4 pages (English translation).
Korean Patent Application No. 10-2011-7009897, Notice of Final Rejection, dated Nov. 17, 2014 (with English translation) 6 pages.
Korean Patent Application No. 10-2011-7009897, Notice of Preliminary Rejection, dated Mar. 20, 2014, 10 pages (includes English translation).
Mexican Institute of Industrial Property; First Office Action from Examiner; MX Application No. MX/a/2011/003445; 7 pages; dated Mar. 1, 2016.
Michel et al.,The Pharmacokinetc Profile of Tamsulosin Oral Controlled Absorption System (OCAS®), 2005, European Urology Supplements, vol. 4, pp. 15-24.
MX Application No. MX/a/2011/003445, Second Office Action dated Sep. 2, 2016, 2 pgs. (English translation 3 pgs.).
Non-Final Office Action; U.S. Appl. No. 14/584,933 dated Nov. 17, 2016, 17 pages.
Office Action, dated May 13, 2013, U.S. Appl. No. 13/073,677.
Office Action, dated Oct. 18, 2012, U.S. Appl. No. 13/073,721.
Office Action, dated Sep. 17, 2012, U.S. Appl. No. 13/073,677.

PH Patent Application No. 1/2011/500628, Second Examination Report (Office Action), dated May 26, 2014, 2 pages.
Philippines Patent Application No. 1/2011/500628, Examination Report, dated Jul. 18, 2013, 2 pages.
Reexamination Notice, dated Jan. 30, 2015, Chinese Patent Application No. 200980138691.9, 14 pages (includes English translation).
Russia Patent Application No. 2011117274/15, Office Action, dated Mar. 6, 2013, 6 pages (English translation).
Shin-Etsu Chemical Co., Ltd, "Low-substituted hydroxypropyl cellulose NF, L-HPC" http://www.elementoorgankia.ru/files/lhpc.pdf, Cellulose & Pharmaceutical Department, 23 pages, accessed on Jun. 30, 2014.
U.S. Non—Final Office Action, U.S. Appl. No. 13/073,721, dated Jul. 30, 2014, 24 pages.
Indonesian Patent Application No. W00201101572, First Office Action dated Aug. 1, 2018, 4 pages.
Andersson, et al; Pharmacological treatment of overactive bladder: report from the International Consultation on Incontinence; Current Opinion in Urology; 2009; 19:380-394.
Benner et al; Patent-reported reasons for discontinuing overactive bladder medication; Journal Complication; 2009; BJU International; 105; 1276-1282.
Non-final Office Action, U.S. Appl. No. 14/584,933; dated Jan. 19, 2018.
The U.S. Patent and Trademark Office; Final Office Action in U.S. Appl. No. 14/584,933 dated Jul. 18, 2017.
D'Souza, et al; Persistence, Adherence, and Switch Rates Among Extended-Release and Immediate-Release Over Active Bladder Medications in a Regional Managed Care Plan; JMCP vol. 14, No. 3, Apr. 2008, pp. 291-301.
Controller of Patents, Indian Patent Office; Examination Report; dated May 29, 2017; Application No. 2738/CHENP/2011.
State Intellectual Property Office of the People's Republic of China; First Office Action; CN Patent Application No. 201510642287.2; dated Nov. 3, 2017.
European Patent Office; Communication Pursuant to Article 94(3) EPC dated Feb. 14, 2017 in Application No. 11 762 748.9-1468.
European Patent Office; Communication Pursuant to Article 114(2) EPC dated Feb. 2, 2017 in Application No. 11762748.9-1468/2554168.
BETMIGA® Tablets—Annex I, Summary of Product Characteristics; Dec. 2012.
Prescribing Information of MYRBETRIQ®; Aug. 2016.
European Medicines Agency—Assessment Report; dated Oct. 2012.
The U Co., Ltd; Petitioner's Brief; Korean Case No. 2017 Dang 569 Patent Invalidation Action re KR 10-1524164; Apr. 14, 2017.
Mexican Institute of Industrial Property; Communication of results of the examination on the merits; PCT Patent Application No. MX/a/2011/003445; dated Mar. 22, 2017.
State Intellectual Property Office of the People's Republic of China; Chinese Patent Application No. 201510642287.2; Notification of the Second Office Action; dated Jul. 25, 2018.
European Patent Office; First Official Communication pursuant to Article 94(3)EPC; Application No. 09817723.1-1114; dated Apr. 30, 2018.
European Patent Office; Third Party Observation—Communication pursuant to Rule 114(2)EPC; Application No. 09817723.1-1114; dated May 8, 2018.
Final Office Action dated Jan. 23, 2019 in U.S. Appl. No. 14/584,933.
European Patent Office; Official Communication pursuant to Article 94(3)EPC in European Application No. 09817723.1 dated Dec. 20, 2018.
Summons to Attend Oral Proceedings in re Opposition to European Patent No. 2 554 168 B1 (Jul. 17, 2019).
"<711> Dissolution" in USP30-NF25, vol. 1; The United States Pharmacopeial Convention: Rockville, pp. 277-284 (May 2007).
Guidance for Industry: Food-Effect Bioavailability and Fed Bioequivalence Studies, pp. 1-9, 2 (Dec. 2002) (emphasis added).
Sathish Ummadi et al., "Overview on Controlled Release Dosage Form," 3(4) Int. J. Pharma Sci. 258-269 (2013).
Christer Tannergren et al., "Toward an Increased Understanding of the Barriers to Colonic Drug Absorption in Humans Implications for

ASTMIRA_00002882

## US 10,842,780 B2

Page 3

(56)                **References Cited**

OTHER PUBLICATIONS

Early Controlled Release Candidate Assessment," 6(1) Mol. Pharmaceutics 60-73 (Feb. 2009).
Marilyn N. Martinez et al., "A Mechanistic Approach to Understanding the Factors Affecting Drug Absorption: A Review of Fundamentals," 42 J. Clin. Pharmacol. 620-643 (2002).
"Colonic Drug Absorption and Metabolism," Bieck ed., pp. 21-22 (1993).
Center for Drug Evaluation and Research, Application Number: 202611orig1s000, Clinical Pharmacology and Biopharmaceutics Review(s)—Mirabegron, 218 pages (Mar. 2012).
Preliminary Office Action in Brazilian Application No. PI0919466-5 (dated Sep. 2, 2019).
Submission by Lederer & Keller Patentanwälte Partnerschaft mbB in re Opposition to European Patent No. 2 554 168 (Oct. 10, 2019).
Submission by Hexal AG in re Opposition to European Patent No. 2 554 168 (Oct. 10, 2019).
"Yamanouchi Shaklee Pharma Licenses OCAS Drug Delivery Technology from Yamanouchi Pharmaceutical Co., Ltd.," Pharmaceutical Online, pp. 1-2 (May 1999).
Submission by STADA Arzneimittel AG in re Opposition to European Patent No. 2 554 168 (Oct. 10, 2019).
Communication pursuant to Article 94(3) EPC in European Application No. 09817723.1 (dated Sep. 4, 2019).
Center for Drug Development Assistance, National Institute of Food and Drug Safety Evaluation 11-1470550-000003-08, Dec. 2009, 121 pages and 5 pages English translation, Korea.
Chapple, Christopher R., The Development of the Oral Controlled Absorption System (OCAS®): A New Improved Formulation of Tamsulosin, European Urology Supplements, 2005, pp. 1-4, vol. D4, Elsevier B.V., UK.
Takasu, T., et al., Effect of ®-2-(2-aminothiazol-4-yl)-4'-{2-[(2-hydroxy-2-phenylethyl)amino]ethyl} acetanilide (YM178), a novel selective beta3-adrenoceptor agonist, on bladder function, J Pharmacol Exp Ther., May 2007, p. 321-322, vol. 642-7, Epub 2007. (Abstract only).
Hoffmann Eitle, Letter to European Patent Office responding to Official Action dated Feb. 14, 2017 in European Patent Application No. 11 762 758.9, dated Aug. 2, 2017, 5 pages.
clinicaltrials.gov, Pharmacokinetics of Oral Mirabegron With Different Release Rates Versus Intravenous (IV) Mirabegron, U.S. National Library of Medicine, Jul. 2013, 6 pages.
clinicaltrials.gov, History of Changes for Study: NCT00940121, Pharmacokinetics of Oral Mirabegron With Different Release Rates Versus Intravenous (IV) Mirabegron, U.S. National Library of Medicine, Jul. 2013, 7 pages.
Anlage A with Translation of the evidence during Opposition proceeding from opponent Notice of Opposition from STADA Arzneimittel AG dated Oct. 24, 2018 (99 pages) See #33 below.
Mauger et al., Intrinsic Dissolution Performance Testing of the USP Dissolution Apparatus 2 (Rotating Paddle) Using Modified Salicylic Acid Calibrator Tablets: Proof of Principle, Dissolution Technologies, Aug. 2003, pp. 6-15.
Andersson, Karl-Erik, Prospective Pharmacologic Therapies for the Overactive Bladder, Therapeutic Advances in Urology, 2009, 1(2) 71-83.
Dressman, et al., Oral Drug Absorption Prediction and Assessment, Drugs and the Pharmaceutical Sciences, 2000, Pages Preface, 183-228, Marcel Dekker, Inc., New York, USA.
Skelly et al., In Vitro and In Vivo Testing and Correlation for Oral Controlled/Modified Release Dosage Forms. Report of the 2nd Workshop Held Dec. 1988, Washington, DC, U.S.A., Journal of Controlled Release, 1990, pp. 95-106, vol. 14, Elsevier Science Publishers B.V., Amsterdam, The Netherlands.
The European Agency for the Evaluation of Medicinal Products, Note for Guidance on Modified Release Oral and Transdermal Dosage Forms: Section II (Pharmacokinetic and Clinical Evaluation), Jul. 1999, 12 pages, London.

Lachman et al., Sustained Release Dosage Forms, The Theory and Practice of Industrial Pharmacy, 3rd Edition, Chapter 14, Aug. 10, 2011, pp. 430-456.
Chapple et al., "Add-on" Tolterodine Extended Release Improves Overactive Bladder Symptoms in Men Receiving Alpha-Blocker Therapy, Eur Urol Suppl 2008; 7(3):239, Abstract 674.
Andersson et al., Pharmacological Treatment of Overactive Bladder: Report from the International Consultation on Incontinence, Current Opinion in Urology, 2009, pp. 380-394, vol. 19, Wolfers Klower Health.
clinicaltrials.gov, History of Changes for Study: NCT00662909, Study to Test the Efficacy and Safety of the Beta-3 Agonist YM178 in Patients with Symptoms of Overactive Bladder, U.S. National Library of Medicine, Nov. 2017, 8 pages.
clinicaltrials.gov, History of Changes for Study: NCT00912964, A Study to Test the Efficacy and Safety of the Beta-3 Agonist YM178 in Subjects with Symptoms of Overactive Bladder, U.S. National Library of Medicine, Nov. 2017, 8 pages.
clinicaltrials.gov, History of Changes for Study: NCT00689104, Study to Test the Efficacy and Safety of the Beta-3 Agonist YM178 in Subjects with Symptoms of Overactive Bladder, U.S. National Library of Medicine, Nov. 2017, 8 pages.
clinicaltrials.gov, History of Changes for Study: NCT00940121, Pharmacokinetics of Oral Mirabegron With Different Release Rates Versus Intravenous (IV) Mirabegron, U.S. National Library of Medicine, Jul. 2013, 8 pages.
clinicaltrials.gov, History of Changes for Study: NCT00965926, A Study to Investigate the Food Effect on the Pharmacokinetics of YM178 in Healthy, Non-elderly Volunteers, U.S. National Library of Medicine, Jul. 2013, 6 pages.
clinicaltrials.gov, History of Changes for Study: NCT00939757, Study of the Effect of Food on the Pharmacokinetics of Mirabegron, U.S. National Library of Medicine, Jul. 2013, 6 pages.
Bikiaris et al., New Aspects in Sustained Drug Release Formulations, Recent Patents on Drug Delivery & Formulation, 2007, pp. 201-213, vol. 1, No. 3, Bentham Science Publishers Ltd., Greece.
Wen et al., Oral Controlled Release Formulation Design and Drug Delivery, Theory to Practice, 2010, Pages preface and 1-9, John Wiley & Sons, Inc.
Siepmann et al., Polymer Blends for Controlled Release Coatings, Journal of Controlled Release, 2008, pp. 1-15, vol. 125, Elsevier B.V.
Gupta et al., Recent Trends in Oral Drug Delivery: A Review, Recent Patents on Drug Delivery & Formulation, 2009, pp. 162-173, vol. 3, Bentham Science Publishers Ltd.
Notice of Opposition to a European Patent, Patent No. EP2554168 to Astellas Pharma Inc., Opponent Hexal AG, Dated Oct. 24, 2018.
Notice of Opposition to a European Patent, Patent No. EP2554168 to Astellas Pharma Inc., Opponent STADA Arzneimittel AG, Dated Oct. 24, 2018.
Notice of Opposition to a European Patent, Patent No. EP2554168 to Astellas Pharma Inc., Opponent Alfred E. Tiefenbacher (GmbH & Co. KG), Dated Oct. 30, 2018.
Notice of Opposition to a European Patent, Patent No. EP2554168 to Astellas Pharma Inc., Opponent Lederer & Keller Patentanwalte Partnerschaft mbB, Dated Oct. 24, 2018.
Decision of Rejection in Chinese Application No. 201510642287.2 (dated Nov. 5, 2019).
European Patent Office; Official Communication pursuant to Rule 114(2) EPC in European Application No. 09817723.1 dated Jan. 10, 2019.
Amendment submitted dated May 30, 2012 by Applicant in U.S. Appl. No. 12/568,313—identified as T1 in the Official Communication cited herein.
Amendment submitted dated Aug. 26, 2013 by Applicant in U.S. Appl. No. 12/568,313—identified as T2 in the Official Communication cited herein.
Response to Communication Pursuant to Art. 94(3) EPC in European Application No. 09817723.1 (dated May 13, 2020).
Mitsuru Hashida (ed.), "Design and Evaluation of Formulations for Oral Administration," pp. 33, 35, 293-294 (Feb. 1995) (Exhibit A1).

ASTMIRA_00002883

## US 10,842,780 B2

Page 4

(56)            **References Cited**

OTHER PUBLICATIONS

A. Dokoumetzidis et al., "IVIVC of Controlled Release Formulations: Physiological—Dynamical Reasons for Their Failure," 129 J. Control. Release 76 (2008) (Exhibit A2).

Guidelines for the Design and Evaluation of Oral Prolonged Release Dosage Forms, Pharmaceutical Affairs Council, Ministry of Health and Welfare, Japan, (1), No. 5, pp. 1-4 (Mar. 1988) (Exhibit A3).

Idada Sadao et al. (eds.), "Comprehensive Techniques for Development System of New Formulations, Volume for Bases and Additive," pp. 424-429 (Jul. 1985) (Exhibit A4).

Kazuhiro Sako, "Formulations and Particle Design: Design of Novel Oral Controlled-Release System (OCAS) for Continuous Drug Absorption," 14(6) Pharm Tech Japan 85-98 (Jun. 1998) (Exhibit A5).

Hiroyasu Ogata, "1. Pharmacokinetics: Absorption," 30 (3) Jpn. J. Clin. Pharmacol. Ther. 617, 619 (May 1999) (Exhibit A9).

Written Demand for Trial for Invalidation of Japanese Patent No. 5849946 (dated Apr. 2020).

Non-Final Office Action in U.S. Appl. No. 14/584,933 (dated Jun. 10, 2020).

Response to Communication Pursuant to Rules 70(2) and 70a(2) EPC in European Application No. 11762748.9 (dated Nov. 2015).

Response to Communication Pursuant to Art. 94(3) EPC and Third Party Observations in European Application No. 11762748.9 (dated Aug. 2, 2017).

Observations in Response to Oppositions to European Patent No. 2 554 168 B1 (Mar. 25, 2019).

Response to Summons in Oppositions to European Patent No. 2 554 168 B1 (Oct. 10, 2019).

Response to Submissions of Opponents in Oppositions to European Patent No. 2 554 168 B1 (Oct. 18, 2019).

Decision in Opposition and Oral Proceeding Minutes in European Patent No. 2 554 168 B1 (Mar. 2, 2020).

Response to Communication Pursuant to Rules 70(2) and 70a(2) EPC in European Application No. 09817723.1 (dated May 18, 2015).

Response to Communication Pursuant to Art. 94(3) EPC and Third Party Observations in European Application No. 09817723.1 (dated Aug. 28, 2018).

Response to Communication Pursuant to Art. 94(3) EPC and Third Party Observations in European Application No. 09817723.1 (dated May 20, 2019).

Response to Communication Pursuant to Art. 94(3) EPC in European Application No. 09817723.1 (dated Mar. 13, 2020).

Communication Pursuant to Art. 94(3) EPC in European Application No. 09817723.1 (dated Apr. 2, 2020).

Yoshinobu Yamazaki et al., "Species Differences in the Distribution of β3-Adrenoceptor Subtypes in Bladder Smooth Muscle," 124 Brit. J. Pharmacol. 593-599 (1998).

Osamu Yamaguchi, "β3-Adrenoceptors in Human Detrusor Muscle", 59 (Suppl. 5A) Urology 25-29 (2002).

Peter G. Welling, "Effects of Food on Drug Absorption," 16 Annu. Rev. Nutr. 383-415 (1996).

Nobuyuki Tanaka et al., "β3-Adrenoceptor Agonists for the Treatment of Frequent Urination and Urinary Incontinence: 2-[4-(2-{[(1S,2R)-2-Hydroxy-2-(4-hydroxyphenyl)-1-methylethyl]amino}ethyl)phenoxy]-2-methylpropionic Acid," 9 Bioorgan. Med. Chem. 3265-3271 (2001).

Nobuyuki Tanaka et al., "Discovery of Novel N-Phenylglycine Derivatives as Potent and Selective β3-Adrenoceptor Agonists for the Treatment of Frequent Urination and Urinary Incontinence," 44 J. Med. Chem. 1436-1445 (Apr. 2001).

Hiroo Takeda et al., "Role of the β3-Adrenoceptor in Urine Storage in the Rat: Comparison between the Selective β3-Adrenoceptor Agonist, CL316,243, and Various Smooth Muscle Relaxants," 293 J. Pharmacol. Exp. Ther. 939-945 (2000).

Brahma N. Singh, "Effects of Food on Clinical Pharmacokinetics," 37(3) Clin. Pharmacokinet. 213-255 (Sep. 1999).

Paul Abrams et al., "The Standardisation of Terminology in Lower Urinary Tract Function: Report from the Standardisation Sub-Committee of the International Continence Society," 21 Neurourol. Urodyn. 167-178 (2002).

K.-E. Andersson, "Overactive Bladder—Pharmacological Aspects," 210 Scand. J. Urol. Nephrol. Suppl. 72-81 (2002).

Richard J. Bastin et al., "Salt Selection and Optimisation Procedures for Pharmaceutical New Chemical Entities," 4(5) Org. Process Res. Dev. 427-435 (2000).

David P. Benziger et al., "Differential Effects of Food on the Bioavailability of Controlled-Release Oxycodone Tablets and Immediate-Release Oxycodone Solution," 85(4) J. Pharm. Sci. 407-410 (1996).

Harry G. Brittain, "Methods for the Characterization of Polymorphs and Solvates," Ch. 6 in Polymorphism in Pharmaceutical Solids, pp. 227-278 (1999).

Artur Burger, "The Relevance of Polymorphism," in Topics in Pharmaceutical Sciences 1983, pp. 347-358 (1983).

Stephen R. Byrn, Solid-State Chemistry of Drugs, pp. 6-11 (1982).

Stephen Bym et al., "Pharmaceutical Solids: A Strategic Approach of Regulatory Considerations," 12(7) Pharm. Res. 945-954 (1995).

Mino R. Caira, "Crystalline Polymorphism of Organic Compounds," in Topics in Current Chemistry, vol. 198, pp. 163-208 (1999).

Jens T. Carstensen, "Preformulation," Ch. 7 in Modem Pharmaceutics 213-237 (1996).

Drug Data Report, 21(7), p. 619.

Daniel S. Elliott et al., "Medical Management of Overactive Bladder," 76(4) Mayo Clin Proc. 353-355 (Apr. 2001).

Guideline for Industry: Guideline for Submitting Supporting Documentation for the Manufacture of and Controls for Drug Products, Center for Drugs and Biologics, Food and Drug Administration, pp. 1-17 (Feb. 1987).

David Fleisher et al., "Drug, Meal and Formulation Interactions Influencing Drug Absorption After Oral Administration," 36(3) Clin. Pharmacokinet. 233-254 (Mar. 1999).

Takao Fujimura et al., "Expression and Possible Functional Role of the β3-Adrenoceptor in Human and Rat Detrusor Muscle," 161 J. Urol. 680-685 (1999).

Janice J. MacKichan et al., "Pharmacokinetic Considerations for Drug Delivery," Ch. 2 in Gibaldi's Drug Delivery Systems in Pharmaceutical Use, pp. 11-22 (2007).

Dharmesh H. Doshi, "Oral Delivery Systems," Ch. 3 in Gibaldi's Drug Delivery Systems in Pharmaceutical Use, pp. 23-41 (2007).

Philip L. Gould, "Salt Selection for Basic Drugs," 33(1-3) Int. J. Pharm. 201-217 (1986).

John Haleblian et al., "Pharmaceutical Applications of Polymorphism," 58(8) J. Pharm. Sci 911-929 (Aug. 1969).

Bruno C. Hancock et al., "Characteristics and Significance of the Amorphous State in Pharmaceutical Systems," 86(1) J. Pharm. Sci. 1-12 (Jan. 1997).

Y. Igawa et al., "Possible β3-Adrenoceptor-Mediated Relaxation of the Human Detrusor", 164 Acta Physiol Scand 117-118 (1998).

Rajendra K. Khankari et al., "Pharmaceutical Hydrates," 248 Thermochimica Acta 61-79 (1995).

Penelope A. Longhurst et al., "Pharmacological techniques for the in vitro study of the urinary bladder," 45 J. Pharmacol. Tox. Met. 91-108 (2001).

"Hydrates," in Encyclopedia of Pharmaceutical Technology, vol. 7, p. 393 (1993).

Donna J. Sellers et al., "Potential therapeutic targets for treatment of overactive bladder," 19 World J. Urol. 307-311 (2001).

Technical Examination Report in Brazilian Application No. PI0919466-5 (dated Jul. 10, 2020).

Technical Examination Report in Brazilian Application No. BR122019026041-9 (dated Jul. 10, 2020).

ASTMIRA_00002884

**U.S. Patent**          Nov. 24, 2020          US 10,842,780 B2



ASTMIRA_00002885

US 10,842,780 B2

**1**

# PHARMACEUTICAL COMPOSITION FOR MODIFIED RELEASE

## CROSS REFERENCE TO RELATED APPLICATIONS

The present application is a continuation of U.S. patent application Ser. No. 12/568,313, filed Sep. 28, 2009, which application claims the benefit of priority to U.S. Patent Application No. 61/101,338, filed Sep. 30, 2008, the teachings of which are hereby incorporated by reference.

## TECHNICAL FIELD

The present invention relates to a pharmaceutical composition for modified release capable of reducing food effects, which are observed in conventional tablets, by combining an active ingredient with specific ingredients to control a releasing rate of the active ingredient.

More particularly, the present invention relates to a pharmaceutical composition comprising (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide or a pharmaceutically acceptable salt thereof, an additive which ensures penetration of water into the pharmaceutical composition (hereinafter sometimes referred to as a hydrophilic base), and a polymer which forms a hydrogel, in which the changes in AUC and Cmax caused by the intake of food can be decreased by controlling a releasing rate of the active ingredient.

## BACKGROUND ART

(R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide has been created by Astellas Pharma Inc., and it has been reported that this compound has not only both an activity of promoting insulin secretion and an activity of enhancing insulin sensitivity, but also an antiobestic activity and an antihyperlipemic activity based on an activity of selectively stimulating a β3 receptor, and is useful in treating diabetes (see, for example, patent literature 1).

Further, it has been reported that the compound can be used as a therapeutic agent for overactive bladder, such as overactive bladder accompanied by prostatic hyperplasia, or overactive bladder accompanied by urinary urgency, urinary incontinence, and urinary frequency (see, for example, patent literature 2).

A clinical trial of (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide in the form of conventional formulations revealed disadvantages, for example, that pharmacokinetic data unexpectedly varied according to the presence or absence of the intake of food (not published). For example, the rate of decrease of Cmax in a fed state was 67%, and the rate of decrease of AUC in the fed state was 47%, in comparison with those in a fasted state. In this case, Cmax in the fasted state was three times higher than that in the fed state. These problems are considered to be raised by, for example, the changes in pharmacokinetics caused by food, and therefore, the development of a formulation capable of avoiding the effects by food intake is desired.

As a technique of preparing a formulation for modified release, a hydrogel sustained release tablet containing an additive which ensures penetration of water into the tablet, and a hydrogel-forming polymer is disclosed (see, for example, patent literature 3).

**2**

However, patent literature 3 does not refer to (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide, and further improvements are needed to produce a pharmaceutical composition.

## CITATION LIST

### Patent Literature

[patent literature 1] International Publication No. WO 99/20607 (Example 41)
[patent literature 2] International Publication No. WO 2004/041276
[patent literature 3] International Publication No. WO 94/06414

## SUMMARY OF INVENTION

### Technical Problem

An object of the present invention is to provide a pharmaceutical composition for modified release comprising (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide or a pharmaceutically acceptable salt thereof, in which the pharmaceutical composition has efficacy the same as or higher than those of conventional formulations and has no limitations on food intake, and a process of manufacturing the pharmaceutical composition.

### Solution to Problem

The elimination half-life ($T_{1/2}$) of (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide is long (approximately 18 to 24 hours), and thus, a formulation thereof for modified release is not necessarily needed to maintain its blood level. Taking into consideration the results of the clinical trial described above, the present inventors conducted intensive studies to design the formulation by paying attention to the control of a release rate of the drug from a formulation to the extent that the release is not affected by food intake or the like, rather than the addition of release control.

On the basis of blood concentration profiles (in a fasted state/after the intake of food) after administration of a conventional formulation (rapid release formulation), the absorption rate of the drug in a fed state was calculated by a deconvolution method to predict continuous absorption for about 4 hours. The present inventors considered from this result that a formulation capable of continuous drug release for 4 hours or more would be able to reduce the effects by food, because the drug release from the formulation would become the rate-limiting step for absorption.

The present inventors carried out a clinical trial in human using three types of formulations in which the release rate of the drug was controlled (Time when the release percentage of the drug from the unit formulation was 80% (T80%)=4 hr, 6 hr, and 10 hr), and found that all formulations could reduce the effects by food, to complete the present invention.

It is generally known that the retention time in the stomach and the release rate of formulations for modified release vary according to the presence or absence of food intake, and as a result, there is a possibility that blood concentration profiles is changed. However, surprisingly, when using this formulation, the change of the blood concentration profiles was small in the presence or absence of food intake.

ASTMIRA_00002886

US 10,842,780 B2

**3**

The present invention is characterized by providing a pharmaceutical composition for modified release which is not affected by the effects of food intake and exhibits a decreased change in AUC or Cmax.

The present invention provides:

[1] a pharmaceutical composition for modified release, comprising (1) (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide, or a pharmaceutically acceptable salt thereof, (2) at least one additive which ensures penetration of water into the pharmaceutical composition and which has a solubility such that the volume of water required for dissolving 1 g of the additive is 10 mL or less, and (3) a hydrogel-forming polymer having an average molecular weight of approximately 100,000 or more, or a viscosity of 12 mPa·s or more at a 5% aqueous solution at 25° C.;

[2] the pharmaceutical composition for modified release of [1], wherein the additive which ensures penetration of water into the pharmaceutical composition is one compound, or two or more compounds selected from the group consisting of polyethylene glycol, polyvinylpyrrolidone, D-mannitol, D-sorbitol, xylitol, lactose, sucrose, anhydrous maltose, D-fructose, dextran, glucose, polyoxyethylene hydrogenated castor oil, polyoxyethylene polyoxypropylene glycol, polyoxyethylene sorbitan higher fatty acid ester, sodium chloride, magnesium chloride, citric acid, tartaric acid, glycine, β-alanine, lysine hydrochloride, and meglumine;

[3] the pharmaceutical composition for modified release of [2], wherein the additive which ensures penetration of water into the pharmaceutical composition is one compound, or two or more compounds selected from the group consisting of polyethylene glycol, polyvinylpyrrolidone, D-mannitol, lactose, sucrose, sodium chloride, and polyoxyethylene polyoxypropylene glycol;

[4] the pharmaceutical composition for modified release of any one of [1] to [3], wherein an amount of the additive which ensures penetration of water into the pharmaceutical composition is 5% by weight to 75% by weight with respect to the total weight of the pharmaceutical composition;

[5] the pharmaceutical composition for modified release of [4], wherein an amount of the additive which ensures penetration of water into the pharmaceutical composition is 5% by weight to 70% by weight with respect to the total weight of the pharmaceutical composition;

[6] the pharmaceutical composition for modified release of any one of [1] to [5], wherein the hydrogel-forming polymer is one compound, or two or more compounds selected from the group consisting of polyethylene oxide, hydroxypropyl methylcellulose, hydroxypropyl cellulose, carboxymethyl cellulose sodium, hydroxyethyl cellulose, and a carboxyvinyl polymer;

[7] the pharmaceutical composition for modified release of [6], wherein the hydrogel-forming polymer is one compound, or two or more compounds selected from the group consisting of polyethylene oxide, hydroxypropyl methylcellulose, and hydroxypropyl cellulose;

[8] the pharmaceutical composition for modified release of any one of [1] to [7], wherein an amount of the hydrogel-forming polymer is 1% by weight to 70% by weight with respect to the total weight of the pharmaceutical composition;

[9] the pharmaceutical composition for modified release of any one of [1] to [8], further comprising an antioxidant;

[10] the pharmaceutical composition for modified release of [9], wherein the antioxidant is one compound, or two or

**4**

more compounds selected from the group consisting of butyl hydroxytoluene, propyl gallate, and sodium ascorbate;

[11] the pharmaceutical composition for modified release of claim 10, wherein the antioxidant is butyl hydroxytoluene;

[12] the pharmaceutical composition for modified release of any one of [9] to [11], wherein an amount of the antioxidant is 0.025% by weight to 0.25% by weight;

[13] the pharmaceutical composition for modified release of any one of [1] to [12], further comprising a stabilizer;

[14] the pharmaceutical composition for modified release of [13], wherein the stabilizer is one compound, or two or more compounds selected from the group consisting of yellow ferric oxide, red ferric oxide, and black iron oxide;

[15] the pharmaceutical composition for modified release of [14], wherein the stabilizer is yellow ferric oxide and/or red ferric oxide;

[16] the pharmaceutical composition for modified release of any one of [13] to [15], wherein an amount of the stabilizer is 0.05% by weight to 1% by weight;

[17] a process of manufacturing a pharmaceutical composition for modified release, characterized by comprising mixing (1) (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide, or a pharmaceutically acceptable salt thereof with (2) at least one additive which ensures penetration of water into the pharmaceutical composition and which has a solubility such that the volume of water required for dissolving 1 g of the additive is 10 mL or less and (3) a hydrogel-forming polymer having an average molecular weight of approximately 100,000 or more, or a viscosity of 12 mPa·s or more at a 5% aqueous solution at 25° C., wherein an amount of the additive is 5% by weight to 75% by weight with respect to the total weight of the pharmaceutical composition, and an amount of the hydrogel-forming polymer is 1% by weight to 70% by weight with respect to the total weight of the pharmaceutical composition;

[18] the process of [17], wherein the additive which ensures penetration of water into the pharmaceutical composition is one compound, or two or more compounds selected from the group consisting of polyethylene glycol, polyvinylpyrrolidone, D-mannitol, D-sorbitol, xylitol, lactose, sucrose, anhydrous maltose, D-fructose, dextran, glucose, polyoxyethylene hydrogenated castor oil, polyoxyethylene polyoxypropylene glycol, polyoxyethylene sorbitan higher fatty acid ester, sodium chloride, magnesium chloride, citric acid, tartaric acid, glycine, β-alanine, lysine hydrochloride, and meglumine; and

[19] the process of [17] or [18], wherein the hydrogel-forming polymer is one compound, or two or more compounds selected from the group consisting of polyethylene oxide, hydroxypropyl methylcellulose, hydroxypropyl cellulose, carboxymethyl cellulose sodium, hydroxyethyl cellulose, and a carboxyvinyl polymer.

As formulation techniques for reducing or avoiding the changes in pharmacokinetics such as AUC or Cmax accompanied by food intake, a formulation technique concerning a sustained-release pharmaceutical composition containing tamsulosin hydrochloride is disclosed (see Japanese Unexamined Patent Publication (Kokai) No. 2005-162736 and Japanese Unexamined Patent Publication (Kokai) No. 2005-162737). This formulation technique is limited to tamsulosin, and applied to a formulation containing the drug at a low dose (0.4 mg per unit formulation). This formulation enables to control the release of tamsulosin therefrom by being mainly composed of a sustained-release base. By

ASTMIRA_00002887

US 10,842,780 B2

**5**

contrast, the pharmaceutical composition contains the drug at a high dose (i.e., high content per unit formulation), and it is considered difficult to control the release rate of the drug from a formulation containing the sustained-release base at a low content, and therefore, the present invention is technically quite different from the formulation disclosed in these references.

### Effects of Invention

According to the present invention, a pharmaceutical composition for modified release which has no limitations on food intake and is stable (for example, reduction of changes in a sequential dissolution profile) can be provided.

Further, a pharmaceutical composition for modified release in which AUC is not reduced can be provided.

With respect to a conventional formulation, the rate of decrease of Cmax in the fed state was 67% in comparison with that in a fasted state. By contrast, with respect to the pharmaceutical composition for modified release of the present invention, the rate of decrease of Cmax in the fed state was 42% in comparison with that in a fasted state, and this result showed that reduction of Cmax caused by food intake could be significantly alleviated by forming its formulation into the pharmaceutical formulation for modified release.

### BRIEF DESCRIPTION OF DRAWINGS

The FIGURE is a graph showing dissolution profiles of the pharmaceutical composition for modified release prepared in Example 11, and the time courses thereof.

### DESCRIPTION OF EMBODIMENTS

The pharmaceutical composition for modified release of the present invention will be explained hereinafter.

The term "rapid release formulation (conventional formulation)" as used herein means a formulation in which the dissolution rate of the drug from the formulation is 85% or more after 30 minutes from the beginning a dissolution test, which is carried out in accordance with a dissolution test (paddle method) described in the United States Pharmacopoeia under the conditions that 900 mL of an appropriate test fluid (such as a USP buffer, pH 6.8) is used and the paddle rotation speed is 100 rpm. Alternatively, the term means a formulation in which the dissolution rate of the drug from the formulation is 85% or more after 30 minutes from the beginning a dissolution test, which is carried out in accordance with a dissolution test, method 2 described in the Japanese Pharmacopoeia under the conditions that 900 mL of an appropriate test fluid (such as a Mc. Ilvain buffer, pH 6.8) is used and the paddle rotation speed is 50 rpm.

The term "pharmaceutical composition for modified release" as used herein means a formulation in which the dissolution rate of the drug from the formulation is less than 85% after 30 minutes from the beginning a dissolution test carried out under the above conditions, and the drug release is controlled to the extent that the effects by food are reduced. More particularly, it is a formulation in which an additive (hydrophilic base) which ensures penetration of water into the formulation is combined with a polymer which forms a hydrogel.

The wording "the effects by food are reduced" as used herein means, for example, a 10% reduction, a 20% reduction in another embodiment, and a 30% reduction in still another embodiment, in comparison with Cmax of a con-

**6**

ventional formulation. Alternatively, the term means, for example, a 10% reduction with respect to decrease of Cmax and AUC in administration after food intake, in comparison with Cmax and AUC in administration in the fasted state, a 20% reduction in another embodiment, and a 30% reduction in still another embodiment.

The rates of decrease of Cmax and AUC are calculated by the following equations:

$$Rd(Cmax) = [Cmax(FS) - Cmax(FI)] \times 100/Cmax(FS)$$

$$Rd(AUC) = [AUC(FS) - AUC(FI)] \times 100/AUC(FS)$$

Rd(Cmax): Rate of decrease of Cmax (%)
Cmax(FS): Cmax in administration in the fasted state
Cmax(FI): Cmax in administration after food intake
Rd(AUC): Rate of decrease of AUC (%)
AUC(FS): AUC in administration in the fasted state
AUC(FI): AUC in administration after food intake

The term "formulation in which the effects by food are reduced" as used herein means a formulation in which the dissolution rate of the drug from the formulation is 75% or less after 1.5 hours and 100% or less after 4 hours from the beginning a dissolution test, which is carried out under the above conditions [in accordance with a dissolution test (paddle method) described in the United States Pharmacopoeia under the conditions that 900 mL of an appropriate test fluid (such as a USP buffer, pH 6.8) is used and the paddle rotation speed is 50 to 200 rpm]. In another embodiment, the term means a formulation in which the dissolution rate of the drug from the formulation is 75% or less after 1.5 hours and 75% or more to 100% or less after 7 hours.

The term "stable" as used herein means that it is stable against, for example, heat, temperature, humidity, or light. More particularly, the term means that, for example, when a plastic bottle is filled with a pharmaceutical composition and sealed, and then, the bottle is preserved for three months under the conditions at 40° C. and 75% RH or 60° C., the change in the dissolution rate at the point showing a dissolution rate of 50% is within ±5% or less. Alternatively, the term means that, for example, when a pharmaceutical composition is exposed to 1.2 million Lux·hr of light, the change in the dissolution rate at the point showing a dissolution rate of 50% is within ±5% or less.

(R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide (hereinafter sometimes referred to as compound A) is represented by the following structural formula.

[Chem. 1]



Compound A may be used in a free form which is not a salt, and may form a salt with an acid in other embodiments. Examples of such a salt include an acid addition salt with a mineral acid such as hydrochloric acid, hydrobromic acid, hydroiodic acid, sulfuric acid, nitric acid, phosphoric acid, or the like; and an acid addition salt with an organic acid such as formic acid, acetic acid, propionic acid, oxalic acid, malonic acid, succinic acid, fumaric acid, maleic acid, lactic

US 10,842,780 B2

7

8

acid, malic acid, citric acid, tartaric acid, carbonic acid, picric acid, methanesulfonic acid, ethanesulfonic acid, glutamic acid, or the like.

The dose of compound A may be appropriately selected in accordance with symptom, age, sex, and the like of the patient to be treated. The daily dose of compound A for oral administration to an adult is generally 0.01 to 100 mg/kg, which is administered once or divided into two to four doses per day.

The content of compound A per formulation is, for example, 1% by weight to 70% by weight, 5% by weight to 70% by weight in another embodiment, and 5% by weight to 50% by weight in still another embodiment. The content of compound A per formulation is 1 mg to 500 mg, and 10 mg to 200 mg in another embodiment.

It is necessary that the hydrogel-forming polymer used in the present invention can control the release rate of the drug, to the extent that the blood concentration profile of the drug is not affected by the presence or absence of food intake.

The molecular weight of the hydrogel-forming polymer is, for example, 100,000 or more, 100,000 to 8,000,000 in another embodiment, 100,000 to 5,000,000 in still another embodiment, and 100,000 to 2,000,000 in still another embodiment. The viscosity of the hydrogel-forming polymer is, for example, 12 mPa·s or more in a 5% aqueous solution at 25° C.; 12 mPa·s or more in a 5% aqueous solution at 25° C., and 40,000 mPa·s or less in a 1% aqueous solution at 25° C. in another embodiment; 400 mPa·s or more in a 2% aqueous solution at 25° C., and 7,500 mPa·s or less in a 1% aqueous solution at 25° C. in still another embodiment; and 400 mPa·s or more in a 2% aqueous solution at 25° C., and 5,500 mPa·s or less in a 1% aqueous solution at 25° C. in still another embodiment.

In the pharmaceutical composition for modified release of the present invention, the release period of time of the drug from the formulation can be arbitrarily controlled by adjusting the viscosity of the polymer which is used as the hydrogel-forming polymer.

The hydrogel-forming polymer used in the present invention is not particularly limited, so long as the release of the drug can be controlled to the extend that the effects of food on compound A may be reduced. Examples of the hydrogel-forming polymer include polyethylene oxide, hydroxypropyl methylcellulose, hydroxypropyl cellulose, carboxymethyl cellulose sodium, hydroxyethyl cellulose, and carboxyvinyl polymers. Examples of the hydrogel-forming polymer in another embodiment include polyethylene oxide, hydroxypropyl methylcellulose, and hydroxypropyl cellulose.

Examples of polyethylene oxide (hereinafter sometimes referred to as PEO) include product names, Polyox WSR-308 [average molecular weight: 8,000,000, viscosity: 10,000-15,000 mPa·s (1% aqueous solution at 25° C.)], Polyox WSR-303 [average molecular weight: 7,000,000, viscosity: 7,500-10,000 mPa·s (1% aqueous solution at 25° C.)], Polyox WSR Coagulant [average molecular weight: 5,000,000, viscosity: 5,500-7,500 mPa·s (1% aqueous solution at 25° C.)], Polyox WSR-301 [average molecular weight: 4,000,000, viscosity: 1,650-5,500 mPa·s (1% aqueous solution at 25° C.)], Polyox WSR-N-60K [average molecular weight: 2,000,000, viscosity: 2,000-4,000 mPa·s (2% aqueous solution at 25° C.)], Polyox WSR-N-12K [average molecular weight: 1,000,000, viscosity: 400-800 mPa·s (2% aqueous solution at 25° C.)], Polyox WSR-1105 [average molecular weight: 900,000, viscosity: 8,800-17,600 mPa·s (5% aqueous solution at 25° C.)], Polyox WSR-205 [average molecular weight: 600,000, viscosity: 4,500-

8,800 mPa·s (5% aqueous solution at 25° C.)], Polyox WSR-N-750 [average molecular weight: 300,000, viscosity: 600-1200 mPa·s (5% aqueous solution at 25° C.)], Polyox WSR-N-80 [average molecular weight: 200,000, viscosity: 55-90 mPa·s (5% aqueous solution at 25° C.)], and Polyox WSR-N-10 [average molecular weight: 100,000, viscosity: 12-50 mPa·s (5% aqueous solution at 25° C.)] (DOW).

Examples of hydroxypropyl methylcellulose (hereinafter sometimes referred to as HPMC) include product name Metolose 90SH50000 [viscosity in a 2% aqueous solution at 20° C.: 2,900-3,900 mPa·s], Metolose SB-4 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 4 mPa·S), TC-5RW (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 6 mPa·S), TC-5S (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 15 mPa·S), TC-5R (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 6 mPa·S), TC-5M (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 4.5 mPa·S), TC-5E (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 3 mPa·S), Metolose 60SH-50 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 50 mPa·s), Metolose 65SH-50 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 50 mPa·s), Metolose 90SH-100 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 100 mPa·s), Metolose 90SH-100SR (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 100 mPa·s), Metolose 65SH-400 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 400 mPa·s), Metolose 90SH-400 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 400 mPa·s), Metolose 65SH-1500 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 1,500 mPa·s), Metolose 60SH-4000 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 4,000 mPa·s), Metolose 65SH-4000 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 4,000 mPa·s), Metolose 90SH-4000 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 4,000 mPa·s), Metolose 90SH-4000SR (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 4,000 mPa·s), Metolose 90SH-15000 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 15,000 mPa·s), Metolose 90SH-15000SR (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 15,000 mPa·s), and Metolose 90SH-30000 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 30,000 mPa·s).

Examples of hydroxypropyl cellulose (hereinafter sometimes referred to as HPC) include HPC-SSL (product name, Nippon Soda Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: 2.0-2.9 mPa·S), HPC-SL (product name, Nippon Soda Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: 3.0-5.9 mPa·S), HPC-L (product name, Nippon Soda Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: 6.0-10.0 mPa·S), HPC-M (product name, Nippon Soda Co.,

ASTMIRA_00002889

US 10,842,780 B2

9

Ltd.) (viscosity in a 2% aqueous solution at 20° C.: 150-400 mPa·S), and HPC-H (product name, Nippon Soda Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: 1,000-4,000 mPa·S).

Examples of methylcellulose (hereinafter sometimes referred to as MC) include Metolose SM15 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 15 mPa·S), Metolose SM25 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 25 mPa·S), Metolose SM100 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 100 mPa·S), Metolose SM400 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 400 mPa·S), Metolose SM1500 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 1,500 mPa·S), and Metolose SM4000 (product name, Shin-Etsu Chemical Co., Ltd.) (viscosity in a 2% aqueous solution at 20° C.: approximately 4,000 mPa·S).

Examples of carboxymethyl cellulose sodium (hereinafter sometimes referred to as CMCNa) include product names, Sunrose F-30MC [viscosity: 250-350 mPa·s (1% aqueous solution at 25° C.)], Sunrose F-150MC [average molecular weight: 200,000, viscosity: 1,200-1,800 mPa·s (1% aqueous solution at 25° C.)], Sunrose F-600MC [viscosity: 6,000-8,000 mPa·s (1% aqueous solution at 25° C.)], Sunrose F-1000MC [average molecular weight: 420,000, viscosity: 8,000-12,000 mPa·s (the same)], Sunrose F-1400MC [viscosity: 12,000-15,000 mPa·s (1% aqueous solution at 25° C.)], and Sunrose F-300MC [average molecular weight: 300,000, viscosity: 2,500-3,000 mPa·s (the same)] (Nippon Paper Chemicals Co., Ltd.).

Examples of hydroxyethyl cellulose (hereinafter sometimes referred to as HEC) include product names, HEC DAICEL SE850 [average molecular weight: 1,480,000, viscosity: 2,400-3,000 mPa·s (1% aqueous solution at 25° C.)], and HEC DAICEL SE900 [average molecular weight: 1,560,000, viscosity: 4,000-5,000 mPa·s (1% aqueous solution at 25° C.)](Daicel chemical Industries, Ltd.).

Examples of carboxyvinyl polymers include Carbopol 71G (viscosity: 4,000-11,000 mPa·s), Carbopol 971P (viscosity: 4,000-11,000 mPa·s), Carbopol 981 (viscosity: 4,000-10,000 mPa·s), Carbopol 941 (viscosity: 4,000-10,000 mPa·s), Carbopol 934 (viscosity: 30,500-39,400 mPa·s), and Carbopol 934P (viscosity: 29,400-39,400 mPa·s)(B.F-.Goodrich Chemical).

These hydrogel-forming polymers may be used alone, or as an appropriate combination of two or more thereof. A combination of different lots may be used.

The content of the hydrogel-forming polymer is not particularly limited, so long as it is an amount to the extent that the blood concentration profile of the drug is not affected by the presence or absence of food intake. The content of the hydrogel-forming polymer is, for example, 1% by weight to 70% by weight with respect to the total weight of the formulation, and 3% by weight to 70% by weight in another embodiment. The content of the hydrogel-forming polymer is 5% by weight to 70% by weight with respect to the total weight of the formulation, 10% by weight to 60% by weight in another embodiment, and 10% by weight to 40% by weight in still another embodiment. The content of the hydrogel-forming polymer is 0.1% by weight to 1,000% by weight with respect to the weight of the drug, 1% by weight to 500% by weight in another embodiment, and 5% by weight to 300% by weight in still another embodiment.

10

A polymer of which the viscosity (before mixing) is beyond the specific range can be used as an appropriate combination with one or more other polymers, in case that the mixture obtained by mixing these plural polymers has a viscosity (as measured before the use) within the specific range.

In the additive which ensures penetration of water into the pharmaceutical composition of the present invention (hydrophilic base), the amount of water necessary to dissolve 1 g of the hydrophilic base at 20±5° C. is 10 mL or less, 6 mL or less in another embodiment, 5 mL or less in still another embodiment, and 4 mL or less in still another embodiment. When the hydrophilic base has a high solubility to water, the effect that allows water to penetrate into the formulation is high.

Examples of the hydrophilic base include water-soluble polymers, such as polyethylene glycol [PEG: for example, product names PEG 400, PEG 1500, PEG 4000, PEG 6000, and PEG 20000 (NOF Corporation)], polyvinyl pyrrolidone (PVP: for example, product name PVP K30 (BASF), and the like; sugar alcohols, such as D-mannitol, D-sorbitol, xylitol, and the like; saccharides, such as lactose, sucrose, anhydrous maltose, D-fructose, dextran (for example, Dextran 40), glucose, and the like; surfactants, such as polyoxyethylene hydrogenated castor oil [HCO: for example, Cremophor RH40 (BASF), HCO-40, HCO-60 (Nikko Chemicals)], polyoxyethylene polyoxypropylene glycol [for example, Pluronic F68 (Asahi Denka and the like)], polyoxyethylene sorbitan higher fatty acid esters [Tween: for example, Tween 80 (Kanto Chemical)], and the like; salts, such as sodium chloride, magnesium chloride, and the like; organic acids, such as citric acid, tartaric acid, and the like; amino acids, such as glycine, β-alanine, lysine hydrochloride, and the like; and aminosaccharides, such as meglumine and the like.

As another embodiment, PEG, PVP, D-mannitol, D-sorbitol, xylitol, lactose, sucrose, anhydrous maltose, D-fructose, dextran, glucose, polyoxyethylene polyoxypropylene glycol, sodium chloride, magnesium chloride, citric acid, tartaric acid, glycine, β-alanine, lysine hydrochloride, or meglumine may be used. As still another embodiment, PEG, PVP, D-mannitol, lactose, sucrose, sodium chloride, polyoxyethylene polyoxypropylene glycol, or the like may be used.

These hydrophilic bases may be used alone, or as an appropriate combination of two or more thereof.

The content of the hydrophilic base is not particularly limited, so long as it is an amount capable of controlling the release of the drug to the extent that the release of the drug is not affected by food. The content of the hydrophilic base is, for example, 5% by weight to 75% by weight, 5% by weight to 70% by weight in another embodiment, and 20% by weight to 60% by weight in still another embodiment.

The pharmaceutical composition for modified release of the present invention may be prepared as various dosage forms, which include, for example, formulations for oral administration such as tablets, capsules (including microcapsules), granules, and powder, and formulations for parenteral administration such as suppositories (for example, rectal suppositories or vaginal suppositories). These formulations may be safely administered orally or parenterally. Formulations for oral administration such as tablets, capsules, and granules may be selected in another embodiment.

The pharmaceutical composition for modified release of the present invention may be prepared by mixing the drug, the hydrogel-forming polymers, and the hydrophilic base, and forming the mixture into a predetermined shape. The mixing and forming may be carried out in accordance with

ASTMIRA_00002890

US 10,842,780 B2

11

conventional methods widely used in the technical field for formulation. A pharmaceutically acceptable carrier may be used in the mixing and/or forming, if desired.

In the preparation of the pharmaceutical composition for modified release of the present invention, further various pharmaceutical additives may be used, if desired. Such pharmaceutical additives are not particularly limited, so long as they are pharmaceutically acceptable. Examples of the pharmaceutical additives include various organic or inorganic carrier substances which are widely used as formulation materials, such as fillers, lubricants, binders, and disintegrating agents. Other formulation additives such as preservatives, antioxidants, stabilizers, film coating agents, coloring agents, and sweeteners may be used, if desired.

Examples of the fillers include lactose, sucrose, D-mannitol, D-sorbitol, starch, gelatinized starch, dextrin, crystalline cellulose, low substituted hydroxypropyl cellulose, carboxymethyl cellulose sodium, gum arabic, dextrin, pullulan, light anhydrous silicic acid, synthetic aluminum silicate, magnesium aluminate metasilicate, and the like.

Examples of the lubricants include magnesium stearate, calcium stearate, talc, colloidal silica, and the like.

Examples of the binders include gelatinized starch, sucrose, gelatin, gum arabic, methylcellulose, carboxymethyl cellulose, carboxymethyl cellulose sodium, crystalline cellulose, sucrose, D-mannitol, trehalose, dextrin, pullulan, hydroxypropyl cellulose, hydroxypropyl methylcellulose, polyvinylpyrrolidone, and the like.

Examples of the disintegrating agents include lactose, sucrose, starch, carboxymethyl cellulose, carboxymethyl cellulose calcium, croscarmellose sodium, carboxymethyl starch sodium, light anhydrous silicic acid, low substituted hydroxypropylcellulose, and the like.

Examples of the preservatives include p-hydroxybenzoate esters, chlorobutanol, benzyl alcohol, phenethyl alcohol, dehydroacetic acid, sorbic acid, and the like.

The antioxidants are not particularly limited, so long as it can avoid the effects of dissolution behavior. Examples of the antioxidants include butylated hydroxytoluene (BHT), propyl gallate (PG), butylhydroxyanisol (BHA), ascorbic acid, sodium ascorbate, erythorbic acid, sodium nitrite, sodium bisulfite, sodium pyrosulfite, citric acid, and edetate sodium; BHT, PG, and sodium ascorbate in another embodiment; and BHT in still another embodiment.

Examples of the stabilizers include yellow ferric oxide, red ferric oxide, black iron oxide, and the like.

Examples of the film coating agents include pharmaceutically commonly-used bases, such as water-soluble polymers, plasticizers, and inorganic substances, or a combination thereof.

Examples of the coloring agents include water-soluble edible tar pigments (examples: edible pigments such as food red No. 2, food red No. 3, food yellow No. 4, food yellow No. 5, food blue No. 1, and food blue No. 2), water-insoluble lake pigments (examples: aluminum salts of the above water-soluble edible tar pigments), natural pigments (examples: β-carotene, chlorophyll, and colcothar), and the like.

Examples of the sweeteners include saccharin sodium, dipotassium glycyrrhizinate, aspartame, stevia, and the like.

These carriers or formulation additives may be used alone, or as an appropriate combination of two or more thereof.

With respect to the contents thereof, they may be used in appropriate amounts. For example, the content of the antioxidant is 0.025% by weight to 0.25% by weight with respect to the total weight of the formulation, and that of the

12

stabilizer is 0.05% by weight to 1% by weight with respect to the total weight of the formulation.

Hereinafter, the process of manufacturing the pharmaceutical composition for modified release of the present invention will be explained, the present invention is not limited to the following particular embodiments.

The pharmaceutical composition for modified release of the present invention may be prepared by known methods per se, such as dry granulation, wet granulation, fluidized bed granulation, intermittent granulation, agitation granulation, or the like.

As a method of de-lumping or pulverizing the drug, conventional crushing or pulverizing methods may be applied, for example, using an impact mill (Hosokawa Micron Corporation; Fine Impact Mill), a dry & wet mill (Powrex Corporation: Comil), or a cutting mill granulator (Dalton Corporation; Power Mill).

As a method of pulverizing the hydrophilic base, the hydrogel-forming polymer, or the formulation additives, conventional pulverizing methods may be applied, for example, using an impact mill (Hosokawa Micron Corporation; Fine Impact Mill or Sample Mill) or a jet mill (Horkos Corp; Jet Mill).

As a method of granulating the drug, conventional granulation methods may be used. Examples of such methods include a fluidized bed granulation method, an intermittent granulation method, an agitation granulation method, a high-speed agitation granulation method, a tumbling fluidized bed granulation method, an extrusion granulation method, a pulverization granulation method, a dry granulation method, and the like. In another embodiment, examples thereof include a fluidized bed granulation method, an intermittent granulation method, an agitation granulation method, a high-speed agitation granulation method, a tumbling fluidized bed granulation method, and a dry granulation method, and any method capable of granulating the drug may be used. Examples of a granulator include a fluidized bed granulator (for example, Flow Coater, Freund Corporation, or GPCG; Glatt GmbH), a granulation and coating apparatus equipped with a horizontal rotating disc having a flat powder contact portion [for example, a centrifugal fluidizing granulator (for example, CF granulator; Freund Corporation)], a granulation and coating apparatus having a rotating disk with a flat surface placed at the bottom of a fluidized bed and having an aeration portion (for example, Spiralflow, or Flowcoater with a rotor container; Freund Corporation), and a dry granulator in which material powder is directly compressed, molded, crushed, and sieved (for example, Roller Compactor; Freund Corporation).

In the dry granulation, for example, the drug, the hydrogel-forming polymer, the hydrophilic base, and additives such a filler may be compression-molded using a dry granulator, and then, may be crushed and sieved to obtain granulated products having a desired size.

In the wet granulation, for example, while the drug, the hydrogel-forming polymer, the hydrophilic base, and additives such as a filler is fluidized, an appropriate amount of water or a liquid containing the hydrophilic base and the binder may be sprayed. The liquid containing the hydrophilic base may be prepared by dissolving or dispersing the essential component in a solvent such as water, ethanol, methanol, or the like. These solvents may be used as an appropriate mixture thereof.

The amount of water used in the granulation is not particularly limited, so long as the binder or formulation additives may be uniformly dissolved and/or suspended (dispersed) in the water. When the hydrophilic base is used

US 10,842,780 B2

13
14

in the solid form, the amount of water is not particularly limited, so long as the hydrogel-forming polymer can be granulated.

When the hydrophilic base is used in the liquid form, the amount of water to the hydrogel-forming polymer is generally 10% by weight or less, 8% by weight or less in another embodiment, and 5% by weight or less in still another embodiment. A method of adding water in the granulation is not particularly limited, so long as a nonuniform mixture consisting of untreated powder and aggregates, which are generally powdery, is not generated. Examples thereof include a continuous spray method in which water is continuously added, an intermittent spray method in which a dry step (and a shaking step, if desired) is carried out during the granulation step, and the like.

The addition rate of water in the granulation is not particularly limited, so long as a nonuniform mixture consisting of untreated powder and aggregates, which are generally powdery, is not generated. In the fluidized bed granulation, the addition rate of water to the hydrogel-forming polymer is generally 0.1% by weight/min. to 1% by weight/min., 0.2% by weight/min. to 0.8% by weight/min. in another embodiment, and 0.4% by weight/min. to 0.6% by weight/min. in still another embodiment.

The temperature of the powder in the granulation is not particularly limited, so long as it does not induce thermal denaturation of the hydrogel-forming polymer. The temperature is, for example, 20° C. to the melting point (62° C. to 67° C.) of the hydrogel-forming polymer, 20° C. to 50° C. in another embodiment, 20° C. to 35° C. in still another embodiment, and 25° C. to 30° C. in still another embodiment.

The concentration of the binder liquid as a solid content which may be used in the granulation is, for example, 1% to 20% as a formulation amount. The binder is not particularly limited, so long as it is pharmaceutically acceptable.

The binder may be added in the solid form to a granulator, and then, water may be sprayed as the binder liquid. Alternatively, the binder may be dissolved in water, and then, the resulting binder liquid may be sprayed.

An appropriate spray rate of the binder liquid varies according to a production method to be applied or its production scale. In a 1-kg scale production by the fluidized bed granulation, the spray rate is 2 g/min. to 20 g/min., and 5 g/min. to 15 g/min. in another embodiment.

An appropriate temperature of the product in the granulation is 15° C. to 50° C., and 15° C. to 40° C. in another embodiment.

The resulting granulated products may be, for example, dried or heated.

In the drying step, an apparatus and a method are not particularly limited, so long as the granulated products can be dried. Examples of an apparatus for drying include a fluidized bed granulator (for example, Flow Coater; Freund Corporation, or GPCG; Glatt GmbH), a granulation and coating apparatus equipped with a horizontal rotating disc having a flat powder contact portion [for example, a centrifugal fluidizing granulator (for example, CF granulator; Freund Corporation)], a granulation and coating apparatus having a rotating disk with a flat surface placed at the bottom of a fluidized bed and having an aeration portion (for example, Spiraflow, or Flowcoater with a rotor container; Freund Corporation), and the like. The conditions for drying are not particularly limited, so long as the granulated products may be generally dried in the fluidized bed. The drying of the granulated products will be almost completed, for example, under the conditions in which the dry inlet air

temperature is 50° C. and the drying is carried out until the temperature of the granulated products becomes 40° C. and, in another embodiment, under the conditions in which the dry inlet air temperature is 40° C. and the drying is carried out until the temperature of the granulated products becomes 30° C. As the drying method, forced-air drying or drying under reduced pressure may be used.

After the completion of the granulation, an anti-oxidant may be added.

The granulated products may be sieved.

In the sieving step, an apparatus and a method are not particularly limited, so long as the granulated products can be sieved. Examples of an apparatus for sieving include a screen, a dry & wet mill (Powrex Corporation: Comil), a cutting mill granulator (Dalton Corporation; Power Mill), and the like. The conditions for sieving are not particularly limited, so long as the granulated products may be generally sieved to obtain particles having a desired size.

After the completion of the sieving, an anti-oxidant may be added.

Examples of tabletting include a direct tabletting method in which the drug, the hydrophilic base, and the hydrogel-forming polymer are mixed with an appropriate additive(s), and the mixture is compression-molded to obtain tablets; a method in which a composition obtained by a wet granulation (the granulation is carried out by spraying a mixture of the drug, the hydrophilic base, the hydrogel-forming polymer, and additives with a binder liquid) or a melting granulation (the granulation is carried out by heating a mixture of the drug, the hydrophilic base, the hydrogel-forming polymer, and an appropriate low-melting substance) is formed into tablets; and the like.

A rotary tabletting machine, a single punch tabletting machine, and the like may be used as a tabletting machine. A method as well as an apparatus is not particularly limited, so long as a compression-molded product (preferably tablets) can be pharmaceutically produced.

After the tabletting, the obtained tablets may be dried. The initial water content of the tablet is, for example, 2% by weight/tablet or less, 1.5% by weight/tablet or less in another embodiment, and 0.9% by weight/tablet or less in still another embodiment.

After the tabletting, the obtained tablets may be film coated using a pan coating machine at an amount of 1% by weight to 5% by weight per tablet.

EXAMPLES

The present invention will now be further illustrated by, but is by no means limited to, the following Examples.

Example 1

In a mortar, 10 g of compound A, 2.5 g of polyethylene oxide (Dow chemical; product name: WSR N-60K; The same compound was used in the following Examples, unless otherwise specified.), and 7.5 g of polyethylene glycol (Sanyo Chemical Industries, Ltd.; PEG 6000; The same compound was used in the following Examples.) were mixed well. The mixture was formed into tablets using Autograph (Shimadzu; The same apparatus was used in the following Examples.) to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 400 mg.

Example 2

In a mortar, 10 g of compound A, 3.5 g of polyethylene oxide, and 6.5 g of polyethylene glycol were mixed well,

ASTMIRA_00002892

US 10,842,780 B2

**15**

and the mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 400 mg.

### Example 3

In a mortar, 10 g of compound A, 6.25 g of polyethylene oxide, and 5 g of polyethylene glycol were mixed well, and the mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 425 mg.

### Example 4

In a mortar, 10 g of compound A, 5 g of hydroxypropyl methylcellulose (Shin-Etsu Chemical Co., Ltd.; HPMC90SH-4000SR), and 5 g of polyethylene glycol were mixed well, and the mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 400 mg.

### Example 5

In a mortar, 10 g of compound A, 5 g of hydroxypropyl methylcellulose (Shin-Etsu Chemical Co., Ltd.; HPMC90SH-100000SR), and 5 g of polyethylene glycol were mixed well, and the mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 400 mg.

### Example 6

In a mortar, 10 g of compound A, 7.5 g of hydroxypropyl methylcellulose (Shin-Etsu Chemical Co., Ltd.; HPMC90SH-100SR), and 2.5 g of polyethylene glycol were mixed well, and the mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 400 mg.

### Example 7

After 400 g of compound A, 140 g of polyethylene oxide, 251.2 g of polyethylene glycol, 0.8 g of finely ground BHT (Merck; The same compound was used in the following Examples.) and 8 g of magnesium stearate were weighed out, these compounds were mixed using a mixer. The mixture was compression-molded using Roller Compactor Mini (Freund Corporation) and sieved to obtain a pharmaceutical composition for modified release (granules) of the present invention. The obtained granules were formed into tablets using a rotary tabletting machine (Hata Iron Works Co., Ltd.; The same apparatus was used in the following Examples.) to obtain a pharmaceutical composition for modified release (tablets) of the present invention having a tablet weight of 400 mg.

### Example 8

The tablets obtained in Example 7 were coated with a film coating agent [Colorcon; Opadry (containing yellow ferric oxide as a stabilizer); The same agent was used in the following Examples, unless otherwise specified.] dispersed

**16**

into water to obtain a pharmaceutical composition for modified release (tablets) of the present invention.

### Example 9

Into a fluidized bed granulating apparatus GPCG-5 (Freund Corporation; The same apparatus was used in the following Examples.), 1500 g of de-lumped compound A, 1050 g of polyethylene oxide, and 1764 g of polyethylene glycol were loaded, and granulated with 1350 g of a 10% by weight aqueous solution of hydroxypropyl cellulose (Nippon Soda Co., Ltd.; HPC-SL; The same compound was used in the following Examples.) to obtain a pharmaceutical composition for modified release (granules) of the present invention. The resulting pharmaceutical composition for modified release (granules) of the present invention was sieved and mixed with 4 g of finely ground BHT and 30 g of magnesium stearate, and the mixture was formed into tablets using a rotary tabletting machine to obtain a pharmaceutical composition for modified release (tablets) of the present invention having a tablet weight of 300 mg. The obtained tablets were spray-coated with an aqueous dispersion of the film coating agent using HiCoater to obtain a pharmaceutical composition for modified release (tablets) of the present invention having a tablet weight of 309 mg.

### Example 10

Into a fluidized bed granulating apparatus GPCG-5, 1500 g of de-lumped compound A, 1050 g of polyethylene oxide, 1764 g of polyethylene glycol, and 135 g of hydroxypropyl cellulose (HPC-SL) were loaded, and granulated with purified water to obtain a pharmaceutical composition for modified release (granules) of the present invention. The resulting pharmaceutical composition for modified release (granules) of the present invention was sieved and mixed with 4 g of finely ground BHT and 30 g of magnesium stearate, and the mixture was formed into tablets using a rotary tabletting machine to obtain a pharmaceutical composition for modified release (tablets) of the present invention having a tablet weight of 300 mg. The obtained tablets were spray-coated with an aqueous dispersion of the film coating agent using HiCoater to obtain a pharmaceutical composition for modified release (tablets) of the present invention having a tablet weight of 309 mg.

### Example 11

After 400 g of compound A, 100 g of polyethylene oxide, 290 g of polyethylene glycol, 2 g of finely ground BHT, and 8 g of magnesium stearate were weighed out, these compounds were mixed using a mixer. The mixture was compression-molded using Roller Compactor Mini and sieved to obtain a pharmaceutical composition for modified release (granules) of the present invention. The obtained granules were formed into tablets using a rotary tabletting machine to obtain a pharmaceutical composition for modified release (tablets) of the present invention having a tablet weight of 400 mg.

### Example 12

In a mortar, 10 g of compound A, 2.5 g of polyethylene oxide (Dow chemical; product name: WSR Coagulant), and 12.5 g of polyethylene glycol were mixed well. The mixture was formed into tablets using Autograph to obtain a phar-

ASTMIRA_00002893

US 10,842,780 B2

17 / 18

maceutical composition for modified release of the present invention having a tablet weight of 400 mg.

## Example 13

In a mortar, 10 g of compound A, 0.5 g of polyethylene oxide (Dow chemical; product name: WSR 301), and 5 g of polyethylene glycol were mixed well. The mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 310 mg.

## Example 14

In a mortar, 5 g of compound A, 15 g of polyethylene oxide, and 5 g of polyethylene glycol were mixed well. The mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 250 mg.

## Example 15

In a mortar, 10 g of compound A, 10 g of polyethylene oxide (Dow chemical; product name: WSR N-12K), and 5 g of D-mannitol (Towa Chemical Industry Co., Ltd; product name: Mannit P) were mixed well. The mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 500 mg.

## Example 16

In a mortar, 2 g of compound A, 2 g of polyethylene oxide, and 10 g of polyethylene glycol were mixed well. The mixture was formed into tablets using Autograph to obtain a pharmaceutical composition for modified release of the present invention having a tablet weight of 350 mg.

## Example 17

Into a fluidized bed granulating apparatus GPCG-5, 400 g of de-lumped compound A, 1120 g of polyethylene oxide, and 2313.6 g of polyethylene glycol were loaded, and granulated with 1200 g of a 10% by weight aqueous solution of hydroxypropyl cellulose to obtain a pharmaceutical composition for modified release (granules) of the present invention. The resulting pharmaceutical composition for modified release (granules) of the present invention was sieved and mixed with 6.4 g of finely ground BHT and 40 g of magnesium stearate, and the mixture was formed into tablets using a rotary tabletting machine to obtain a pharmaceutical composition for modified release (tablets) of the present invention having a tablet weight of 250 mg. The obtained tablets were spray-coated with an aqueous dispersion of the film coating agent (containing yellow ferric oxide and red ferric oxide as stabilizers) using HiCoater to obtain a pharmaceutical composition for modified release (tablets) of the present invention having a tablet weight of 257.5 mg.

The formulations in Examples 1 to 17 are shown in Tables 1 to 3.

### TABLE 1

| Examples | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| compound A (g) | 10 | 10 | 10 | 10 | 10 | 10 |
| PEO WSR N-60K (g) | 2.5 | 3.5 | 6.25 | — | — | — |

### TABLE 1-continued

| Examples | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| HPMC 90SH-4000SR (g) | — | — | — | 5 | — | — |
| HPMC 90SH-1000000SR (g) | — | — | — | — | 5 | — |
| HPMC 90SH-100SR (g) | — | — | — | — | — | 7.5 |
| PEG (g) | 7.5 | 6.5 | 5 | 5 | 5 | 2.5 |

### TABLE 2

| Examples | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|
| compound A (g) | 400 | 400 | 1500 | 1500 | 400 |
| PEO WSR N-60K (g) | 140 | 140 | 1050 | 1050 | 100 |
| PEG (g) | 251.2 | 251.2 | 1764 | 1764 | 290 |
| HPC-SL (g) | — | — | 135 | 135 | — |
| magnesium stearate | 8 | 8 | 30 | 30 | 8 |
| BHT (g) | 0.8 | 0.8 | 4 | 4 | 2 |
| film coating agent (g) | — | 23.7 | 134 | 134 | — |

### TABLE 3

| Examples | 12 | 13 | 14 | 15 | 16 | 17 |
|---|---|---|---|---|---|---|
| compound A (g) | 10 | 10 | 5 | 10 | 2 | 400 |
| PEO WSR N-60K (g) | — | — | 15 | — | 2 | 1120 |
| PEO WSR coagulant (g) | 2.5 | — | — | — | — | — |
| PEO WSR 301 (g) | — | 0.5 | — | — | — | — |
| PEO WSR N-12K (g) | — | — | — | 10 | — | — |
| PEG (g) | 12.5 | 5 | 5 | — | 10 | 2313.6 |
| D-mannitol | — | — | — | 5 | — | — |
| HPC-SL (g) | — | — | — | — | — | 120 |
| magnesium stearate (g) | — | — | — | — | — | 40 |
| BHT (g) | — | — | — | — | — | 6.4 |
| film coating agent (g) | — | — | — | — | — | 120 |

## Comparative Example 1

After 400 g of pulverized compound A was mixed with 1200 g of D-mannitol, 320 g of purified water was further added, and the whole was kneaded using an agitation granulator (Powrex Corporation; VG-25). The resulting aggregate was sieved through a screen having an opening of 850 μm, and dried using a fluidized bed granulating apparatus (Freund Corporation; FLO-1). The dried products were sieved through a screen having an opening of 500 μm, and filled into No. 1 capsules at a content of 320 mg per capsule to obtain a pharmaceutical composition for comparison containing 80 mg of compound A.

## EXPERIMENTAL EXAMPLES

### 1. Dissolution test

The pharmaceutical compositions prepared in Examples 2, 8, and 9 were subjected to a dissolution test carried out in accordance with a USP dissolution test (paddle method). As a test fluid, 900 mL of a phosphate buffer (pH 6.8) was used. The pharmaceutical composition prepared in Comparative Example 1 was tested in accordance with a dissolution test, method 2 described in the Japanese Pharmacopoeia. As a test fluid, 900 mL of a Mc. Ilvain buffer (pH 6.8) was used, and the paddle rotation speed was 50 rpm.

The results are shown in Table 4. The dissolution rate after 1.5 hours of the pharmaceutical composition for modified release prepared in each Example was less than 40%. By contrast, the composition prepared in Comparative Example showed a high dissolution rate of 85% or more after 0.5 hour.

ASTMIRA_00002894

US 10,842,780 B2

**19**

TABLE 4

|          | Example 2 | Example 8 | Example 9 | Comparative Example 1 |
|----------|-----------|-----------|-----------|-----------------------|
| 0.5 hr.  | —         | —         | —         | 95%                   |
| 1.5 hr.  | 35%       | 39%       | 32%       | —                     |
| 2.5 hr.  | 57%       | 61%       | 54%       | —                     |
| 4.5 hr.  | 93%       | 95%       | 92%       | —                     |

2. Stability Test

Plastic bottles were filled with the pharmaceutical composition for modified release prepared in Example 11, and sealed. These bottles were preserved under the conditions at 40° C. and 75% RH or at 60° C. for 3 months. After the preservation, each pharmaceutical composition was subjected to a dissolution test carried out in accordance with a USP dissolution test (paddle method). As a test fluid, 900 mL of a phosphate buffer (pH 6.8) was used. The results are shown in FIG. 1. The acceleration of a dissolution rate was not observed after the preservation for 3 months under the conditions at 40° C. and 75% RH or at 60° C., and the results were indicative that the pharmaceutical composition was stable.

The pharmaceutical compositions for modified release prepared in Examples 8 and 9 were packed with aliminum/aliminum blister, and preserved under the conditions at 40° C. and 75% RH for 6 months. After the preservation, each pharmaceutical composition was subjected to a dissolution test carried out in accordance with a USP dissolution test (paddle method). As a test fluid, 900 mL of a phosphate buffer (pH 6.8) was used. As a result, changes in the dissolution rate at the point showing a dissolution rate of approximately 50% were 2% and 3%, with respect to the pharmaceutical compositions prepared in Examples 8 and 9, respectively, and the results were indicative that the pharmaceutical compositions were stable.

The pharmaceutical composition for modified release prepared in Example 17 was exposed to 1.2 million Lux·hr of light. After the exposure, the pharmaceutical composition was subjected to a dissolution test carried out in accordance with a USP dissolution test (paddle method). As a test fluid, 900 mL of a phosphate buffer (pH 6.8) was used. As a result, the change in the dissolution rate at the point showing a dissolution rate of approximately 50% was less than 1%, and the result was indicative that the pharmaceutical composition was stable.

3. Pharmacokinetics (PK) Test in Human

The pharmaceutical composition for modified release prepared in Example 8, which contained the equivalent corresponding to 200 mg of compound A, was administered to healthy persons in a fasted state or after 30 minutes from the intake of food, and the plasma levels of the drug were measured.

For comparison, 2 capsules of the pharmaceutical composition (conventional formulation) prepared in Comparative Example 1, which contained the equivalent corresponding to 160 mg of compound A, was administered to healthy persons in a fasted state or after 30 minutes from the intake of food, and the plasma levels of the drug were measured.

With respect to the conventional formulation, the rate of decrease of Cmax in the fed state was 67%, in comparison with that in a fasted state, and the rate of decrease of AUC was 47% (Cmax in the fasted state was approximately three times higher than that in the fed state). With respect to the pharmaceutical composition for modified release of the present invention, the rate of decrease of Cmax in free-feeding was 42%, in comparison with that in a fasted state,

**20**

and the rate of decrease of AUC was 25%. These results indicated that the reductions of Cmax and AUC caused by food intake could be significantly alleviated by the pharmaceutical composition for modified release of the present invention.

INDUSTRIAL APPLICABILITY

According to the present invention, a pharmaceutical composition for modified release in which the changes in AUC and Cmax caused by food intake can be decreased by controlling a releasing rate of the active ingredient can be provided.

As above, the present invention was explained with reference to particular embodiments, but modifications and improvements obvious to those skilled in the art are included in the scope of the present invention.

The invention claimed is:

1. A pharmaceutical composition, comprising 10 mg to 200 mg of (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide, or a pharmaceutically acceptable salt thereof, in a sustained release hydrogel-forming formulation comprising a hydrogel-forming polymer having an average molecular weight of 100,000 to 8,000,000 and an additive having a water solubility of at least 0.1 g/mL at 20±5° C.,

wherein the hydrogel-forming polymer is at least one compound selected from the group consisting of polyethylene oxide, hydroxypropyl methylcellulose, hydroxypropyl cellulose, carboxymethyl cellulose sodium, hydroxyethyl cellulose, and a carboxyvinyl polymer,

wherein the additive is at least one selected from the group consisting of polyethylene glycol, polyvinylpyrrolidone, D-mannitol, D-sorbitol, xylitol, lactose, sucrose, anhydrous maltose, D-fructose, dextran, glucose, polyoxyethylene hydrogenated castor oil, polyoxyethylene polyoxypropylene glycol, polyoxyethylene sorbitan higher fatty acid ester, sodium chloride, magnesium chloride, citric acid, tartaric acid, glycine, (3-alanine, lysine hydrochloride, and meglumine, and

wherein a drug dissolution rate from the pharmaceutical composition is 39% or less after 1.5 hours, and at least 75% after 7 hours, as measured in accordance with United States Pharmacopoeia in 900 mL of a USP buffer having a pH of 6.8 at a paddle rotation speed of 200 rpm.

2. The pharmaceutical composition according to claim 1, wherein the additive is at least one selected from the group consisting of polyethylene glycol, polyvinylpyrrolidone, D-mannitol, lactose, sucrose, sodium chloride, and polyoxyethylene polyoxypropylene glycol.

3. The pharmaceutical composition according to claim 1, wherein an amount of the additive is 5% by weight to 75% by weight with respect to a total weight of the pharmaceutical composition.

4. The pharmaceutical composition according to claim 3, wherein the amount of the additive is 5% by weight to 70% by weight with respect to the total weight of the pharmaceutical composition.

5. The pharmaceutical composition according to claim 1, wherein the hydrogel-forming polymer is at least one compound selected from the group consisting of polyethylene oxide, hydoxypropyl methylcellulose, and hydroxypropyl cellulose.

6. The pharmaceutical composition according to claim 1, further comprising an antioxidant.

US 10,842,780 B2

21

**7**. The pharmaceutical composition according to claim **6**, wherein the antioxidant is at least one compound selected from the group consisting of butyl hydroxytoluene, propyl gallate, and sodium ascorbate.

**8**. The pharmaceutical composition according to claim **7**, wherein the antioxidant is butyl hydroxytoluene.

**9**. The pharmaceutical composition according to claim **6**, wherein an amount of the antioxidant is 0.025% by weight to 0.25% by weight with respect to a total weight of the pharmaceutical composition.

**10**. The pharmaceutical composition according to claim **1**, further comprising a stabilizer.

**11**. The pharmaceutical composition according to claim **10**, wherein the stabilizer is at least one compound selected from the group consisting of yellow ferric oxide, red ferric oxide, and black iron oxide.

**12**. The pharmaceutical composition according to claim **11**, wherein the stabilizer is yellow ferric oxide and/or red ferric oxide.

**13**. The pharmaceutical composition according to claim **10**, wherein an amount of the stabilizer is 0.05% by weight to 1% by weight with respect to a total weight of the pharmaceutical composition.

**14**. The pharmaceutical composition according to claim **1**, wherein the drug dissolution rate from the pharmaceutical composition is at least 92% after 4.5 hours.

**15**. The pharmaceutical composition according to claim **1**, wherein the average molecular weight of the hydrogel-forming polymer is 100,000 to 2,000,000.

**16**. The pharmaceutical composition according to claim **1**, comprising 10 mg to 200 mg of (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide.

**17**. A tablet, comprising the pharmaceutical composition according to claim **1**.

**18**. A tablet, comprising the pharmaceutical composition according to claim **16**.

**19**. A method for treating overactive bladder comprising administering the tablet according to claim **17** to a subject in need thereof.

**20**. A method for treating overactive bladder comprising administering the tablet according to claim **18** to a subject in need thereof.

**21**. The pharmaceutical composition according to claim **1**, wherein the average molecular weight of the hydrogel-forming polymer is 100,000 to 5,000,000.

**22**. A pharmaceutical composition, comprising 10 mg to 200 mg of (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide, or a pharmaceutically acceptable salt thereof, in a sustained release hydrogel-forming formulation comprising a means for forming a hydrogel and a means for ensuring penetration of water into the pharmaceutical composition,

wherein a drug dissolution rate from the pharmaceutical composition is 39% or less after 1.5 hours, and at least 75% after 7 hours, as measured in accordance with United States Pharmacopoeia in 900 mL of a USP buffer having a pH of 6.8 at a paddle rotation speed of 200 rpm.

**23**. The pharmaceutical composition according to claim **22**, comprising 10 mg to 200 mg of (R)-2-(2-aminothiazol-4-yl)-4'-[2-[(2-hydroxy-2-phenylethyl)amino]ethyl]acetic acid anilide.

**24**. A tablet, comprising the pharmaceutical composition according to claim **22**.

**25**. A tablet, comprising the pharmaceutical composition according to claim **23**.

\*    \*    \*    \*    \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.      : 10,842,780 B2                             Page 1 of 2
APPLICATION NO.  : 15/432854
DATED            : November 24, 2020
INVENTOR(S)     : Yuuki Takaishi et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Item [56] REFERENCES CITED:

Page 2
Column 1:
Line 4, Foreign References "JP 2008-532953 8/2006" should read --JP 2008-532953 8/2008--;
Line 26, Other Publications "tion Report, 4 pages (English translation)." should read --tion Report, received Feb. 4, 2014, 4 pages (English translation).--;
Line 30, "Japanese Patent Application No. 2010-531838, first Office Action, dated Dec. 28, 2010, 4 pages (English translation)." should read --Japanese Patent Application No. 2010-531838, second Office Action, dated Dec. 28, 2010, 4 pages (English translation).--;
Column 2:
Line 17, "dated Aug. 1, 2018," should read --mailed Aug. 1, 2018,--;
Line 70, "Humans" should read --Humans:--;

Page 3
Column 2:
Lines 9-10, "Wolfers Klower" should read --Wolters Kluwer--;

Page 4
Column 1:
Line 21, "Nov. 2015)." should read --Nov. 9, 2015).--;
Column 2:
Line 22, "Stephen Bym et al.," should read --Stephen Byrn et al.,--; and
Line 64, "World J. Ural." should read --World J. Urol.--.

Signed and Sealed this
Thirteenth Day of July, 2021

Drew Hirshfeld
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

ASTMIRA_00002897

**CERTIFICATE OF CORRECTION (continued)**                                  Page 2 of 2
**U.S. Pat. No. 10,842,780 B2**

In the Specification

Column 2:
Line 54, "a clinical trial in human" should read --a human clinical trial--; and
Line 64, "profiles is" should read --profiles are--.

Column 5:
Line 52, "Mc. Ilvain buffer," should read --McIlvaine buffer,--.

Column 6:
Line 13, "$Rd(AUC)=[AUC(FS)-AUC(FI)]1\times100/AUC(FS)$" should read --$Rd(AUC)=[AUC(FS)-AUC(FI)]\times100/AUC(FS)$--.

Column 7:
Line 41, "extend" should read --extent--.

Column 10:
Line 3, "in case" should read --in the case--.

Column 12:
Line 57, "is fluidized," should read --are fluidized,--.

Column 18:
Line 60, "Mc. Ilvain buffer" should read --McIlvaine buffer--.

Column 19:
Line 25, "alminum/" should read --aluminum/--; and
Line 26, "alminum blister," should read --aluminum blister,--.

In the Claims

Column 20:
Line 41, "(3-alanine," should read --β-alanine,--; and
Line 61, "claim" should be deleted.

ASTMIRA_00002898

# Exhibit 3

CONFIDENTIAL

Page 175

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
CASE No. 20-cv-01589-JFB-CJB

- - - - - - - - - - - - - - - - - - - - - - - - -x

ASTELLAS PHARMA INC., et al,

                          Plaintiffs,

          -against-

SANDOZ, et al,


                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - -x




CONFIDENTIAL VIDEOTAPED

DEPOSITION OF DR. SREEKANTH MANIKONDA

VOLUME II

FRIDAY JUNE 24, 2022

7:01 a.m.




REPORTED BY:

DANIELLE GRANT

APPEARING REMOTELY FROM RICHMOND COUNTY, NEW YORK

JOB NO.: SY 5096

CONFIDENTIAL

Page 176

1

2

3

4

5

6

7

8

9

10

11                        JUNE 24, 2022

12                        7:01 a.m.

13

14

15

16                  Confidential Videotaped

17   Volume 2 Deposition of DR. SREEKANTH MANIKONDA, held

18   pursuant to Notice before DANIELLE GRANT, a

19   Stenographic Reporter and Notary Public of the

20   State of New Jersey.

21

22

23

24

25

CONFIDENTIAL

Page 177

```
 1
 2     REMOTE APPEARANCES:
 3
 4     McDERMOTT, WILL & EMERY, LLP
 5     Attorneys for the Plaintiffs
 6          One Vanderbilt Avenue
 7          New York, New York 10017-3852
 8     BY:  JAYITA GUHANIYOGI, ESQ., of Counsel
 9          jguhaniyogi@mwe.com
10
11     STERNE KESSLER GOLDSTEIN & FOX
12     Attorneys for the Defendant, Aurobindo
13          109 Symonds Drive
14          Unit 174
15          Hinsdale, Illinois 60522
16     BY:  SASHA RAO, ESQ., of Counsel
17          SRao@sternekessler.com
18
19
20
21
22
23
24     ALSO PRESENT:
       Gabriel Arrowwood, Videographer
25
```

CONFIDENTIAL

Page 178

1

2

3                    FEDERAL STIPULATIONS

4

5           IT IS STIPULATED AND AGREED by and

6      between the attorneys for the respective parties

7      herein that the filing, sealing, and

8      certification of the within deposition be waived.

9           IT IS FURTHER STIPULATED AND AGREED

10     that all objections, except as to the form of the

11     question, shall be reserved to the time of the

12     trial.

13          IT IS FURTHER STIPULATED AND AGREED

14     that the within deposition may be sworn to and

15     signed before any officer authorized to

16     administer an oath, with the same force and

17     effect as if signed to before the court.

18

19

20                    - oOo -

21

22

23

24

25

CONFIDENTIAL

Page 190

1       CONFIDENTIAL - DR. SREEKANTH MANIKONDA

2           MR. RAO:  Objection.  Assumes

3       facts and vague.



CONFIDENTIAL



Page 191

1          CONFIDENTIAL - DR. SREEKANTH MANIKONDA

14          MR. RAO:  Objection.  Vague.

15          Assumes facts.

CONFIDENTIAL



Page 192

1   CONFIDENTIAL - DR. SREEKANTH MANIKONDA

3   MR. RAO:  Objection.  Outside the

4   scope.

5   A   Could you repeat the question

6   once?

10   MR. RAO:  Same objection.

CONFIDENTIAL



Page 262

1          CONFIDENTIAL - DR. SREEKANTH MANIKONDA

2              MS. GUHANIYOGI:  Should I share

3          this?

4              MR. RAO:  Okay.

5                  (Whereupon, a Document,

6                  Bates-stamped AURO_MBN_0137367

7                  through AURO_MBN_0137383 was marked

8                  as Plaintiff's Exhibit No. 52 for

9                  identification, as of this date.)

10      Q    Mr. Manikonda, I have shared with

11   you Aurobindo Exhibit 52, and I've given you

12   remote control access.

13          Are you able to access Exhibit 52?

14      A    Yes.

15      Q    Do you recognize Exhibit 52?

CONFIDENTIAL

Page 263



1               CONFIDENTIAL - DR. SREEKANTH MANIKONDA

CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



Page 267

1        CONFIDENTIAL - DR. SREEKANTH MANIKONDA

CONFIDENTIAL

Page 268



1        CONFIDENTIAL - DR. SREEKANTH MANIKONDA

CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



Page 271

CONFIDENTIAL - DR. SREEKANTH MANIKONDA

CONFIDENTIAL

Page 287

1          CONFIDENTIAL - DR. SREEKANTH MANIKONDA



25              MR. RAO:  Objection.  Vague.

CONFIDENTIAL

Page 288

1          CONFIDENTIAL - DR. SREEKANTH MANIKONDA



CONFIDENTIAL

Page 289

1                  CONFIDENTIAL - DR. SREEKANTH MANIKONDA



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



Page 292

1                CONFIDENTIAL - DR. SREEKANTH MANIKONDA

# Exhibit 4



**Experiment Code:**

**Experiment Type:**

**Contributors:**   Mr. Subhasis Kundu,Mr. Arjunarao Panchada

| E-signature | Name | Date |
|---|---|---|
| Created By | Mr. Subhasis Kundu | |
| Submitted for Verification By | Mr. Subhasis Kundu | |
| Verified By | Mr. Arjunarao Panchada | |
| Submitted for Approval By | Mr. Subhasis Kundu | |
| Approved By | Mr. Arjunarao Panchada | |

Aurobindo
Exhibit_52
6/24/2022

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER

**FORMULATION EXPERIMENT DOCUMENT**

| Chemia™ | | |
|---|---|---|
| Experiment Code: | ████████████ | report item is not |
| Page No: | 2 / 12 | |

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**          **AURO_MBN2_0000690**

**FORMULATION EXPERIMENT DOCUMENT**

| Experiment Code: | ▓▓▓▓▓▓▓▓▓ | report.item-je.net |
|---|---|---|
| Page No: | 3 / 12 | |

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**     **AURO_MBN2_0000691**

**FORMULATION EXPERIMENT DOCUMENT**

| Chemia | Experiment Code: | ████████████ | report item is not |
|--------|------------------|--------------|--------------------|
|        | Page No:         | 4 / 12       |                    |

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**          **AURO_MBN2_0000692**

**FORMULATION EXPERIMENT DOCUMENT**

| | |
|---|---|
| Experiment Code: | |
| Page No: | 5 / 12 |

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**          **AURO_MBN2_0000693**

**FORMULATION EXPERIMENT DOCUMENT**

| Chemia™ | | |
|---|---|---|
| Experiment Code: | ████████████ | ████████ |
| Page No: | 6 / 12 | |

████████████████████

| | | | |
|---|---|---|---|
| ████ | ██████ | | ████████ |
| █ | ██████ | | ████████████████ |
| █ | ███ | | ████████████████ |
| █ | ████████ | | ████████████████ |
| █ | █████ | | ████████████████ |
| █ | ██████ | | ████████████████ |
| █ | ████ | | ████████████████ |
| █ | █████ | | ████████████████ |
| █ | █████ | | ████████████████ |

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**     **AURO_MBN2_0000694**

**FORMULATION EXPERIMENT DOCUMENT**

| Experiment Code: | ███████████ | ████████████ |
|---|---|---|
| Page No: | 7  /  12 | |

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**          **AURO_MBN2_0000695**

**FORMULATION EXPERIMENT DOCUMENT**

| | | |
|---|---|---|
| Experiment Code: | ██████████ | ███████ |
| Page No: | 8 / 12 | |

██████
██████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████

██████ :

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER

AURO_MBN2_0000696

FORMULATION EXPERIMENT DOCUMENT

| | |
|---|---|
| Experiment Code: | ████████ |
| Page No: | 9 / 12 |

AURO_MBN2_0000697

| FORMULATION EXPERIMENT DOCUMENT | | The resource of this report item is not reachable. |
|---|---|---|
| Experiment Code: | MBGX/FD00281/021 | |
| Page No: | 10 / 12 | |

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER          AURO_MBN2_0000698

**FORMULATION EXPERIMENT DOCUMENT**

| | | | |
|---|---|---|---|
| Experiment Code: | ████████████ | | ████████ |
| Page No: | 11 / 12 | | |

████████████
████ :

████████████████████████████████████

████████████████████████████████████

████████████████████████

████████ :

| ███ | ████ | ████ | ███ | ███ | ███ | ████████ | █ |
|---|---|---|---|---|---|---|---|
| | | | | | | ( █ ) | |
| █ | █ | █ | █ | █ | █ | █ █ | █ |
| | | | █ | █ | | █ █ | █ |
| | | | | | | █ █ | |
| | | | █ | | | █ █ | █ |

| ████ | ████ |
|---|---|
| ███████ | ███████████ |
| ███████ | ██████████ |

████ ██████ ██ ██████ ████ ████ ███████ ███

█████████
█████

██████
| █ █ | ██████ | █ | █ | ██████ | ████ |
|---|---|---|---|---|---|
██████████████████████████████████

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**         **AURO_MBN2_0000699**

**FORMULATION EXPERIMENT DOCUMENT**

| | | |
|---|---|---|
| Experiment Code: | ████████████ | ████████ |
| Page No: | 12 / 12 | |

This is an electronically generated report by Mr. Sreekanth Manikonda on Oct 5, 2021, 10:36 AM through Chemia-ELN. Physical signature is not required.

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**          **AURO_MBN2_0000700**

# Exhibit 5

XGSA15003

# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ASTELLAS PHARMA INC., *et al.*<br><br>    Plaintiffs,<br><br>    v.<br><br>SANDOZ INC., *et al.*<br><br>    Defendants. | Civil Action No. 20-1589-JFB-CJB |

**AUROBINDO PHARMA LTD. AUROBINDO PHARMA USA, INC., AND AUROLIFE PHARMA LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-3)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware, Defendants Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma LLC ("Aurobindo"), by and through undersigned counsel, object and respond to Plaintiffs Astellas Pharma Inc., Astellas Ireland Co., Inc., and Astellas Pharma Global Development, Inc.'s ("Plaintiffs") First Set of Requests to Defendants for the Production of Documents and Things (Nos. 1-3) as follows.

**PRELIMINARY STATEMENT**

1.      Aurobindo reserves the right to supplement and amend these responses should future investigation indicate that such supplementation or amendment is necessary. Aurobindo's responses should in no way be considered prejudicial in relation to further discovery, investigation, research, analysis, or production of evidence.

2.      Aurobindo's responses are made solely for the purpose of and in relation to this action. Each response is given subject to all appropriate objections including, but not limited to

18.     Aurobindo objects to the definition of "Excipient" to the extent that such term includes components of a product other than the final product that is the subject of ANDA No. 209413.

19.     Subject to these General Objections, and subject to additional objections made to specific Requests below, Aurobindo responds as follows:

<div align="center"><u>SPECIFIC OBJECTIONS AND RESPONSES</u></div>

Aurobindo incorporates the foregoing General Objections into each and every response below. Subject to and without waiving the foregoing General Objections, Aurobindo provides the following Specific Objections and Responses to the Requests.

**<u>REQUEST NO. 1:</u>**

At least fifty (50) representative tablets of each strength of the Defendant Group's Mirabegron product as described in the Defendant Group's ANDA, and a five (5) gram representative sample of Mirabegron API for use in the Defendant Group's Mirabegron product.

**<u>RESPONSE AND OBJECTIONS TO REQUEST NO. 1:</u>**

In addition to its General Objections, Aurobindo specifically objects to this Request as overly broad and unduly burdensome to the extent that it seeks "[a]t least fifty (50) representative tablets of each strength of the Defendant Group's Mirabegron product as described in the Defendant Group's ANDA, and a five (5) gram representative sample of Mirabegron API for use in the Defendant Group's Mirabegron product." Further, Aurobindo specifically objects to this Request as overly broad and unduly burdensome to the extent that it seeks materials previously produced by Aurobindo in the prior action (i.e., C.A. No. 1:16-cv-00905). *See, e.g.,* AURO_MBN_S-001, AURO_MBN_S-002, and AURO_MBN_S-003. Further, Aurobindo specifically objects to this Request to the extent it seeks materials outside the possession, custody, or control of Aurobindo. Aurobindo further objects to this Request as overly

broad, unduly burdensome, insofar as it seeks samples not limited to the product that is the subject of ANDA No. 209413. Aurobindo further objects to this Request as vague and ambiguous to the extent that it relies on the undefined terms "Defendant Group's ANDA" and "Defendant Group's Mirabegron product."

Subject to and without waiving the foregoing objections and the General Objections, Aurobindo does not intend to produce any representative tablets or sample of Mirabegron API in response to this request as currently drafted. Aurobindo is willing to meet and confer regarding this request.

**REQUEST NO. 2:**

A five (5) gram representative sample of each Excipient that is required to Manufacture the Defendant Group's Mirabegron product.

**RESPONSE AND OBJECTIONS TO REQUEST NO. 2:**

In addition to its General Objections, Aurobindo specifically objects to this Request as overly broad, unduly burdensome, not relevant to any parties' claims or defenses, and not proportional to the needs of the case insofar as it seeks "sample[s] of each Excipient that is required to Manufacture the Defendant Group's Mirabegron product." Further, Aurobindo specifically objects to this Request to the extent it seeks materials outside the possession, custody, or control of Aurobindo. Aurobindo further objects to this Request as overly broad, unduly burdensome, insofar as it seeks samples not limited to the product that is the subject of ANDA No. 209413. Aurobindo further objects to this Request as vague and ambiguous to the extent that it relies on the undefined term "Defendant Group's Mirabegron product."

Subject to and without waiving the foregoing objections and the General Objections, Aurobindo does not intend to produce any samples in response to this request as currently drafted. Aurobindo is willing to meet and confer regarding this request.

# Exhibit 7

CONFIDENTIAL INFORMATION—SUBJECT TO PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ASTELLAS PHARMA INC. et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 20-1589-JFB-CJB |
| SANDOZ INC. et al., | |
| Defendants. | |

**AUROBINDO PHARMA LTD., AUROBINDO PHARMA USA, INC., AND AUROLIFE PHARMA LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES (NOS. 17-18)**

Pursuant to Rules 26(e) and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware, Defendants Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma LLC (collectively, "Aurobindo"), by and through undersigned counsel, object and respond to Plaintiffs' Second Set of Interrogatories (Nos. 17-18) as follows.

**GENERAL OBJECTIONS**

Aurobindo makes the following General Objections, which apply to each individual Interrogatory, whether or not specifically restated therein, and shall have the same force and effect as if fully set forth or specifically cited in response to each individual Request.

1.     Aurobindo incorporates by reference its Preliminary Statement and General Objections set forth in Aurobindo Pharma Ltd., Aurobindo Pharma USA Inc., and Aurolife Pharma LLC's Responses and Objections to Plaintiffs' First Set Interrogatories (Nos. 1-16), served on October 7, 2021, as if fully set herein.

1

CONFIDENTIAL INFORMATION—SUBJECT TO PROTECTIVE ORDER

## SPECIFIC OBJECTIONS AND RESPONSES

Aurobindo incorporates the foregoing General Objections into each and every Response below. Subject to and without waiving the foregoing General Objections, Aurobindo provides the following Specific Objections and Responses to the Interrogatories.

## INTERROGATORY NO. 17:

Describe any batches of your ANDA Product that you have manufactured, or that have been manufactured on your behalf, in the last 4 years, including the date of manufacture, the amount of product manufactured, the dosage of mirabegron, the amount and location of any ANDA Product remaining from said batch, the date of expiration, and any testing performed on the ANDA Product to determine dissolution characteristics of the ANDA Product.

## RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 17:

In addition to its General Objections, Aurobindo specifically objects to this Interrogatory to the extent it calls for information subject to the attorney-client privilege, the work-product immunity, or any other applicable privilege, protection, exemption, or immunity. Aurobindo further objects to this Interrogatory to the extent it requires Aurobindo to disprove any elements or theories of infringement for which Plaintiffs have the burden of proof and for which Plaintiffs have not met that burden. Aurobindo objects to this Interrogatory as vague, overly broad, and unduly burdensome because it demands "any batches of your ANDA product" and "any testing performed on the ANDA Product to determine characteristics of the ANDA Product." Aurobindo further objects to this Interrogatory as vague, ambiguous, and undefined, at least with respect to "[d]escribe," "batches," "on your behalf," "remaining," and "characteristics." Aurobindo objects to this Interrogatory to the extent it calls for information and documents not in Aurobindo's possession, custody, or control. Aurobindo also objects to this Interrogatory as vague, overly broad, unduly burdensome, calling for information that is not relevant to any claim or defense, calling for information that is not proportional to the needs of the case, and failing to describe with reasonable particularity the information sought to the extent it covers anything other than the

2

CONFIDENTIAL INFORMATION—SUBJECT TO PROTECTIVE ORDER

product that is the subject of ANDA No. 209413. Aurobindo objects to this Interrogatory as overbroad and unduly burdensome to the extent it encompasses documents already in Plaintiffs' possession or that are publically available. Aurobindo objects to this Interrogatory to the extent that it seeks information, documents, or things already provided in the Prior Action. Aurobindo further objects to this request as prematurely seeking expert discovery, contrary to the Federal Rules of Civil Procedure, the Local Rules, and the Scheduling Order.

Subject to and without waiving any of the foregoing General and Specific Objections, Aurobindo responds as follows:

After a reasonable investigation, ███████████████████████████████

████████████████████████████████████████████████████████████████

███████████

Aurobindo specifically reserves the right to revise, correct, supplement, or clarify this Response to the extent necessary as discovery in this case progresses.

**INTERROGATORY NO. 18:**

To the extent you would contest the validity of any dissolution testing and/or the results of such testing performed on the 50 mg tablet samples of your ANDA Product produced in Civil Action No. 16-905-JFB-CJB on the bases of age, expiration, that the tablets no longer comply with the specifications of your ANDA and/or any other reason(s) specific to the tablets themselves, identify and describe with particularity all factual and legal bases for contesting the validity of such testing and/or the results of such testing.

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 18:**

In addition to its General Objections, Aurobindo specifically objects to this Interrogatory to the extent it calls for information subject to the attorney-client privilege, the work-product immunity, or any other applicable privilege, protection, exemption, or immunity. Aurobindo objects to this Interrogatory as premature because the bases for infringement set forth in Plaintiffs' initial infringement contentions are vague, ambiguous, and conclusory and do not adequately

3

# Exhibit 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ASTELLAS PHARMA INC., ASTELLAS IRELAND CO., LTD., and ASTELLAS PHARMA GLOBAL DEVELOPMENT, INC., ) ) ) ) | |
| Plaintiffs, ) ) ) | C.A. No. 20-1589-JFB-CJB |
| v. ) ) | (Consolidated) |
| SANDOZ INC., et al., ) ) ) | |
| Defendants. ) ) | |

## <u>DECLARATION OF NITYA ANAND</u>

I, Nitya Anand, declare as follows:

1.      I am an Associate with the firm of McDermott Will & Emery LLP and am counsel of record for Plaintiffs Astellas Pharma Inc., Astellas Ireland Co., Ltd., and Astellas Pharma Global Development, Inc. ("Astellas or Plaintiffs"). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would competently testify thereto.

2.      On Monday, August 15, 2022, counsel for Astellas received notification from counsel for Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma LLC (collectively, "Aurobindo") that certain samples of mirabegron extended-release tablets (50 mg) (the "Testing Batch" samples) were being shipped to Astellas's sample storage vendor, SciSafe, Inc ("SciSafe"). Based on the tracking information provided by Aurobindo's counsel, the samples had an estimated delivery date of Tuesday, August 16, 2022.

3.      I have been informed that SciSafe received delivery of the Testing Batch samples on Tuesday, August 16, 2022.

1

4.      Upon receipt, I instructed SciSafe to arrange for shipment of the Testing Batch samples to the testing lab being used by Astellas's expert to conduct dissolution testing.  Based on the tracking information, delivery of the Testing Batch samples to the testing lab is expected to occur on Thursday, August 18, 2022.

5.      The testing lab has informed me that, based on current lab availability and assuming the samples are delivered on August 18, 2022, it expects the dissolution testing on the Testing Batch samples to be completed by September 1, 2022.

6.      Subsequent to completing the dissolution testing on the Testing Batch samples, I understand that the testing lab will need to calculate the data and prepare a reviewed data package. The testing lab has informed me that, based on a testing date of September 1st, the reviewed data package should be available by September 15, 2022.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of August, 2022.

<div align="right">

*/s/ Nitya Anand*
Nitya Anand
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017-3852

</div>

# Exhibit 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FG SRC LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 20-00601-WCB |
| | § | |
| XILINX, INC. | § | **FILED UNDER SEAL** |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In this case, plaintiff FG SRC LLC ("SRC") has accused defendant Xilinx, Inc., ("Xilinx") of infringing U.S. Patent No. 9,153,311 ("the '311 patent"). Claim construction has been completed, and fact discovery is currently scheduled to close on May 2, 2022. The parties have filed two motions relating to the discovery proceedings in this case. SRC has moved to extend the deadline for fact discovery and all subsequent deadlines by five months. Dkt. No. 116. Xilinx has moved for a protective order to limit SRC's use of third-party subpoenas. Dkt. No. 133. This order addresses both motions. SRC's motion to extend the deadline for fact discovery (Dkt. No. 116) is GRANTED, and Xilinx's motion for a protective order to limit SRC's use of third-party subpoenas (Dkt. No. 133) is GRANTED IN PART.

### 1. Extension of Deadlines

SRC moves to extend the deadline for fact discovery by five months because SRC asserts that it "cannot reasonably conduct [its] third-party discovery before the current deadline of May 2, 2022." Dkt. No. 117 at 1. SRC argues that Xilinx's delay in producing information regarding its customers, many of which are located outside of the United States, has prevented it from seeking

1

discovery that is necessary to its case.  Specifically, SRC seeks information regarding which, if any, of Xilinx's customers use Xilinx's products in an infringing manner.

Earlier in this case, SRC moved to compel Xilinx to produce certain information regarding its customers, including a spreadsheet listing customers who had purchased certain products from Xilinx that can be adapted to infringe the asserted patent.  *See generally* Dkt. No. 107.  After a discovery teleconference, Xilinx provided such a spreadsheet to SRC, but did not provide sufficient information for SRC to understand the contents of the spreadsheet.  Dkt. No. 109 at 1.  I then ordered Xilinx to provide SRC information sufficient to convey "full knowledge of the meaning of terms and abbreviations used in the spreadsheet."  Dkt. No. 111 at 1.  The parties then agreed to resolve the dispute, and I entered an order memorializing the parties' agreement on February 25, 2022.  Dkt. No. 113.

SRC asserts that Xilinx's delay in providing customer information has prevented SRC from conducting discovery with respect to those customers, in particular Xilinx's non-U.S. customers. Xilinx argues that the dispute regarding customer information "was crystallized in July 2021," and therefore any delay between July 2021 and February 2022 is attributable to SRC.  Dkt. No. 126 at 1 (emphasis omitted).

I find SRC's version of events to be more persuasive.  Although it is true that SRC might have brought this issue to the court in July 2021, SRC instead sought to conduct a Rule 30(b)(6) deposition of Xilinx regarding its "practices and policies related to record keeping" so as to determine how to obtain information regarding possible infringing activities by Xilinx's customers.  Dkt. No. 118, Exh. M, at 7–8.  SRC served Xilinx with notice of that deposition on September 1, 2021.  Xilinx, however, did not make that witness available until November 30, 2021, and the deposition was ultimately taken on December 14, 2021.  Dkt. No. 118, Exhs. P, R.

In that deposition, SRC learned that the "information sought by SRC could be readily obtained from Xilinx's databases in a couple of hours." Dkt. No. 117 at 11 (emphasis omitted). I found that fact to be persuasive when I ordered Xilinx to produce the spreadsheet of customer information to SRC. If SRC had approached the court prior to obtaining that information, it may not have been able to make as strong a case for obtaining Xilinx's customer list. I therefore find that SRC was sufficiently diligent in proceeding as it did in seeking that information.

Furthermore, I find that in certain respects Xilinx's conduct in discovery has been dilatory. For instance, Xilinx's failure to make a witness available for the 30(b)(6) deposition that SRC sought until almost three months after Xilinx was served with notice of that deposition contributed significantly to the delay in resolving the customer information issue between July 2021 and February 2022. And Xilinx's refusal to provide SRC with sufficient information to interpret its customer spreadsheet, which I ordered Xilinx to produce, impeded SRC's efforts to obtain the accessible information it sought regarding Xilinx's customer list. While Xilinx points out that it produced some documents earlier in the discovery process that identified many of the Xilinx customers that had purchased the accused products, Xilinx failed to produce a complete customer list, in a comprehensible form, until February 2022. For that reason, Xilinx's argument that SRC should have been more aggressive in pursuing the information that Xilinx was withholding is not persuasive.

With that said, I was disappointed to learn, from SRC's reply memorandum, that SRC has not even begun seeking discovery from foreign sources. SRC's excuse for its inactivity in that regard is that it did not begin foreign discovery because it did not believe it could complete all of the necessary foreign discovery by the current May 2, 2022, date for the close of fact discovery. Dkt. No. 132 at 4. That is, of course, no justification for SRC not at least beginning the foreign

3

discovery process. Notwithstanding SRC's failure to initiate foreign discovery, however, the course of the discovery in this case to date—and in particular the prospect that at least some foreign discovery will be required—justifies an extension of the period for fact discovery.

Accordingly, I will grant the five-month extension that SRC requests. That extension will require that the trial date currently set for March 20, 2023, be canceled. A revised scheduling order will be entered shortly. Any further extensions of the fact discovery deadline will be entertained only upon a robust showing of diligence by the party seeking the extension.

## 2. Protective Order

Xilinx moves for a protective order because, in its view, SRC is using subpoenas to harass its customers without a legitimate basis for doing so. More specifically, Xilinx asserts that SRC is conducting a "fishing expedition" in which it is looking for entities that have purchased Xilinx's products and may be using them in an infringing manner, even though SRC lacks a "plausible basis for believing that any of th[o]se customers use the functionality of the Asserted Patent." Dkt. No. 134 at 1–2. As a remedy, Xilinx requests that I order SRC to withdraw most of the subpoenas it has served on Xilinx's customers in this case.

To date, SRC has served 88 subpoenas on Xilinx's domestic customers. *See* Dkt. Nos. 115, 119, 120, 129, 130, 137. And although SRC has indicated that it does not intend to serve more subpoenas on Xilinx's domestic customers, it does intend to serve subpoenas on several of Xilinx's foreign customers. Dkt. No. 142, Exh. E, at ¶ 8. For the entities that are targeted by most of those subpoenas, SRC has not suggested that it has any reason to believe that Xilinx has induced them to use methods that would infringe the asserted patent or that the target entities actually practice the infringing methods. It appears that the sole predicate for the issuance of those

4

subpoenas is the fact that those entities are customers of Xilinx, and that they have purchased products from Xilinx that could be used in an infringing manner.

Xilinx argues that SRC's 88 subpoenas are intended primarily to "harass Xilinx's customers and disrupt Xilinx's business." Dkt. No. 134 at 1. The subpoenas, according to Xilinx, are designed not with the expectation that they will produce evidence of infringement by Xilinx, but principally to exert pressure on Xilinx to settle this case. *Id.* at 2. Xilinx reports that it has already received complaints from customers regarding the subpoenas and questions about why those customers have been targeted "despite never having heard of the accused functionality," and that the subpoenas will impose considerable legal expenses on Xilinx's subpoenaed customers. Dkt. No. 144 at 6. SRC responds that the subpoenas are part of a legitimate effort to identify customers of Xilinx that Xilinx has induced to infringe the asserted patent and that SRC has received responses to several of its subpoenas directly from the subpoenaed parties without the involvement of outside counsel. In its reply brief, however, Xilinx reports that at least 15 law firms have already been involved in responding to the various subpoenas directed to Xilinx's customers. *Id.* Collectively, Xilinx asserts, the burden on the subpoenaed third parties, and indirectly on Xilinx, is likely to be considerable.

Under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In this district, courts have identified four factors that govern the good-cause inquiry for this purpose: "relevance, need, confidentiality, and harm." *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. CV 17-1065, 2018 WL 2337133, at *1 (D. Del. May 23, 2018) (quoting *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002)).

### A. Relevance

The subpoenas, which are all quite similar, are broad in scope. And for many of the subpoenas, SRC has not provided a sufficient basis for believing that they are likely to produce evidence relevant to the current action. SRC has identified no evidence that Xilinx is inducing infringement by its customers generally, and for a large majority of the subpoenaed targets, SRC has identified no evidence that those customers practice the claimed invention.[1]

There are, however, a few customers for which broad subpoenas may be justified. For instance, Xilinx has identified a set of customers that it believes may use the accused functionality: Ericsson, Amazon, IBM, and Microsoft. Dkt. No. 134 at 4; Dkt. No. 107, Exh. 5, at 4. And SRC has identified two additional foreign customers for which it has articulated a basis to believe that they use the accused functionality: Nokia Oyj[2] and Napatech A/S. Dkt. No. 132 at 3–4. As to those customers, I find that SRC's discovery efforts are justified, as they are directed to information that may be relevant to this litigation. In addition, Xilinx acknowledges that SRC's subpoenas to Google and Qualcomm are supported by a sufficient showing to justify SRC's discovery efforts, and Xilinx therefore does not seek withdrawal of the subpoenas to those two companies. Dkt. No. 144 at 1. With respect to the remaining subpoenaed Xilinx customers,

---

[1] SRC suggests that because certain customers have spent large sums of money on Xilinx's products, those customers are likely to infringe. *See, e.g.*, Dkt. No. 132 at 3 (suggesting that because Nokia Oyj has "over \$[REDACTED] in purchases of Accused Products," it is likely "that at least some portion of those Accused Products are used in an infringing manner."). But without more, the fact that a customer has purchased more than a certain dollar amount of Xilinx's products does not establish, or even suggest, that the customer is likely to practice the asserted claims.

[2] To be clear, the subpoena to Nokia Oyj is justified because "Xilinx has produced documents evidencing that Nokia Oyj and/or its subsidiaries use [the accused] functionality." Dkt. No. 132 at 3. The sum of money that Nokia Oyj has spent on Xilinx's products is not relevant to that determination. *See supra* note 1.

however, SRC has not pointed to any basis for believing that a broad subpoena to any of those customers is likely to produce evidence relevant to SRC's claims against Xilinx.

I recognize that without the use of third-party subpoenas, SRC may not be able to determine which (if any) of Xilinx's customers use Xilinx's products to infringe the asserted claims.  In light of the liberal scope generally accorded to discovery, SRC is entitled to employ means to develop that information if it can be done without imposing undue burdens on third parties.  The problem is that SRC's current subpoenas seek large amounts of information, much of which does not directly address the question whether the targeted customers infringe.  For example, SRC's subpoenas generally request the following categories of documents:

"1.  Documents sufficient to show, on a quarterly or monthly basis, the total volume of Accused Products purchased by You during the period from October 2015 to present.

2.  Documents sufficient to show, on a quarterly or monthly basis, the total amounts paid by You to purchase Accused Products during the period from October 2015 to present.

3.  Documents sufficient to show each of Your products and/or services that currently incorporates or implements an Accused Product or that previously did so at any time during the period from October 2015 to present.

4.  Documents sufficient to show each of Your products and/or services that currently utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present.

5.  For each of Your products and/or services that utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present, Documents sufficient to identify where such product or service is or was made, used, offered for sale, and/or sold.

6.  For each of Your products and/or services that utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present, Documents sufficient to identify any code, software, development tools, platforms, or other resources provided by or obtained from Xilinx and utilized, incorporated, or implemented by or in Your product or service, including without limitation Documents sufficient to identify any Xilinx IP cores used for such product or service and what Vivado Design Suite, if any, was used in the development of the product or service.

7.  Documents sufficient to show all assistance and/or support provided by Xilinx to You related to the utilization of the Self-Refresh Functionality of any Accused Product by or for any of Your products and/or services. For clarity, such Documents include, but

7

are not limited to, (1) project descriptions, (2) support tickets, and (3) training and instruction.

       8.  All Documents exchanged between You and Xilinx related to any utilization of the Self-Refresh Functionality of any Accused Product by or for any of Your products and/or services.

       9.  All Documents exchanged between You and any third party, including but not limited to Xilinx, related to FG SRC, the Lawsuit, and/or the '311 patent."

*See, e.g.*, Dkt. No. 142, Exh. A at 4 (SRC's subpoena to Google).  Of those requests, the first three relate only to the Accused Products, i.e., Xilinx's products that, according to SRC, could be adapted to be used in an infringing manner.  Those requests do not address the question whether the targeted customer actually modifies the Accused Products in a manner that could infringe the asserted patent.  Requests 5 through 9 could be relevant to the current action, but only if there were a reasonable basis to believe that the targeted customer engages or has engaged in conduct that could infringe the asserted claims.

      In support of its contention that most of SRC's third-party subpoenas should be quashed in their entirety, Xilinx cites *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990).  In that case, the Federal Circuit held that a discovery request directed to a third party is not justified solely by virtue of the fact "[t]hat the discovery might uncover evidence showing that a plaintiff has a legitimate claim."  *Id.* at 1327.  The court in *Micro Motion* noted that the plaintiff sought discovery from a non-party based on a "suspicion of infringement" by the non-party.  *Id.*  The court added that "[a]n unfounded suspicion regarding [a third party's] infringement does not support discovery into that subject matter."  *Id.*  That case is distinguishable from this one, however, because in this case SRC is targeting customers who have purchased specific products from Xilinx that SRC alleges can be used to infringe the asserted claims.  That evidence, although insufficient by itself to prove infringement by the third parties or induced infringement by Xilinx,

nevertheless rises above the level of the "unfounded suspicion" that the court in *Micro Motion* addressed.  *See id.*

### b.  Need

With respect to need, it is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims.  Without evidence of direct infringement by a third party, SRC will be unable to establish inducement of infringement by Xilinx.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016).  And Xilinx has suggested at various points in this case that it is typically unaware of how specific customers use its products.  As a result, the information SRC seeks is likely to be "uniquely available" from the parties that SRC is targeting with its subpoenas.  *See AbbVie*, 2018 WL 2337133, at *2 (citation omitted).

### c.  Confidentiality

It is not clear whether the information SRC seeks will be confidential to the third parties that are targeted by the subpoenas.  I do not find that this factor weighs heavily in the analysis, however, because any confidential information of third parties can be protected, upon request of the third parties, using confidentiality designations consistent with the protective order already entered in this case.  *See* Dkt. No. 49, and April 8, 2021, order of court.

### d.  Harm

The potential harm to Xilinx's customers, and by extension to Xilinx itself, is significant.  As noted, SRC's requests are quite broad.  Each target of a subpoena will need to respond to it, and SRC acknowledges that many targets are likely to be cautious in responding, given that SRC is seeking evidence that those customers infringe the asserted patent.  Dkt. No. 134, Exh. C.  Because of the nature of the information sought, many of the subpoenaed parties may feel it

necessary to retain counsel before responding to the subpoenas, at significant cost.  Moreover, as Xilinx points out, the imposition of costs associated with responding to the subpoenas "directly harms [those] customers' willingness to continue doing business with Xilinx."  Dkt. No. 134 at 5.

It is true, as SRC suggests, that Xilinx has not provided "specific examples to substantiate any hypothetical harm to its customers."  Dkt. No. 142 at 4.  For example, Xilinx does not offer any evidence of communications between Xilinx and its customers regarding SRC's subpoenas. It does stand to reason, however, that the breadth of the subpoenas will require a significant commitment of resources from the targets of the subpoenas, and that customers may be less inclined to do business with Xilinx as a result.  I therefore conclude that there is some potential harm to both Xilinx and its customers from the subpoenas, but that the nature and degree of that harm has not been shown with specificity.

<div align="center">* * *</div>

Upon weighing the four relevant factors, I conclude that discovery directed to Xilinx's customers should proceed in an iterative manner and in a different fashion with regard to different groups of third parties.  With respect to the customers that Xilinx has identified as possibly using the accused functionality and the two additional foreign customers identified by SRC that are discussed above,[3] I conclude that there is a sound basis for concluding that those customers may have relevant information, and that SRC's need for that information outweighs the potential harm that may result from requests to those customers for the information sought in SRC's subpoenas. SRC therefore need not withdraw or limit the subpoenas it has issued to those customers or any similar subpoenas it may issue to those customers in the future.

---

[3]   For clarity, the customers identified by Xilinx are Ericsson, Amazon, IBM, and Microsoft.  The foreign customers identified by SRC are Nokia Oyj, and Napatech A/S.

Similarly, in light of Xilinx's concession with regard to the subpoenas to Google and Qualcomm, I will not require the subpoenas to those companies to be withdrawn or limited.

With respect to the remaining third-party domestic customers, however, the likelihood that those subpoenas will produce relevant information is entirely dependent on whether the targeted customer practices the accused functionality. If the targeted customer does use the accused functionality, the information SRC requests will likely be relevant to the action. But if the targeted customer does not use the accused functionality, the information SRC requests will likely have no relevance to this case. I find that at this point SRC has provided little reason to believe that any of the remaining third-party domestic customers are direct infringers of the '311 patent, or that Xilinx has induced any of those customers to infringe the patent. For that reason, the risk of harm to Xilinx and the potential burden on that group of customers outweighs the speculative possibility that the broad subpoenas to any of those customers may generate relevant evidence. *See Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) (concluding that third-party customers are "entitled to protection" absent "a specific need for evidence available only from third party customers"). I will therefore allow SRC to request only the documents listed in request number 4, identified above,[4] from any of Xilinx's other domestic customers. In that more limited form, the subpoenas will allow SRC to determine whether the targeted customer practices the accused functionality while minimizing the burden on Xilinx's customers, and by extension, Xilinx.

---

[4] Request number 4 seeks "Documents sufficient to show each of Your products and/or services that currently utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present." Dkt. No. 142, Exh. A at 4.

If further discovery reveals either (1) that Xilinx has engaged in conduct that could fairly be viewed as inducing particular customers to practice the methods claimed in the asserted patent, or (2) that particular Xilinx customers are in fact practicing the accused functionality, I will permit SRC to serve a supplemental subpoena of greater breadth directed to those customers as to which a showing of possible inducement by Xilinx, or possible direct infringement by the customers has been made.  For the present, however, a broad demand for information from 80 or more customers of Xilinx, based on no indication that those customers are direct infringers or that Xilinx has taken any steps that would constitute inducement for those customers to infringe, is not justified.  Before serving any such supplemental subpoena, as described in this paragraph, on any of the remaining third-party customers of Xilinx, SRC must seek leave of court.

In summary, and to be clear, SRC will be allowed to issue only limited subpoenas to any third-party domestic customers of Xilinx absent a showing either that Xilinx induced infringement by the customer being targeted or that the customer being targeted uses the accused functionality. A sufficient showing exists for Amazon, IBM, and Microsoft, and the subpoenas already served on those three customers may remain in effect.  Likewise, the subpoenas to Google and Qualcomm may remain in effect, and discovery directed to foreign customers Ericsson, Nokia Oyj, and Napatech A/S that is commensurate in scope with the subpoenas already served on the domestic customers will be permitted.  All other subpoenas must be withdrawn except to the extent that they request documents identified in request number 4 of SRC's subpoena to Google or to the extent that those subpoenas have already been responded to.  *See* Dkt. No. 142, Exh. A, at 4.  SRC is directed to inform the remaining Xilinx customers on which such subpoenas have been served that in light of this court's order, they are required at this time to respond only to paragraph 4 (or the equivalent paragraph) of the subpoena.  Xilinx will be permitted to confirm that instruction with

the targeted customers if it elects to do so.  No broader subpoenas directed to Xilinx's domestic customers may be issued by SRC without first seeking leave of court.

In an abundance of caution, this order has been filed under seal because some of the parties' initial briefs and exhibits regarding the present motions were filed under seal.  *See, e.g.*, Dkt. Nos. 118, 126, 132.  Within three days of the issuance of this order, the parties are directed to advise the court by letter whether they wish any portions of the order to remain under seal.  Any request that portions of the order should remain under seal must be supported by a particularized showing of need to limit public access to those portions of the order.

IT IS SO ORDERED.

SIGNED this 8th day of April, 2022.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ASTELLAS PHARMA INC., ASTELLAS IRELAND CO., LTD., and ASTELLAS PHARMA GLOBAL DEVELOPMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SANDOZ INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     C.A. No. 20-1589-JFB-CJB <br> )     (Consolidated) <br> ) <br> ) <br> ) <br> ) |

## [PROPOSED] ORDER REGARDING DISCOVERY DISPUTES

WHEREAS, the parties presented a dispute for court resolution, pursuant to this Court's discovery procedures, regarding amendment of the case schedule and Plaintiffs' request to move the trial date; and

WHEREAS, the Court having conducted a discovery teleconference on September 7, 2022, and having considered arguments made by the parties in their letter briefing and during the conference, and good cause having been shown,

**IT IS HEREBY ORDERED** this _____ day of _____, 2022 that:

1.      Plaintiffs' request to move the trial date to June ____, 2023 is **GRANTED**.

2.      In accordance with this Court's Order to move the trial date, Plaintiffs' proposed amended case schedule is **ADOPTED**.  The case schedule shall be amended as follows:

1

| Event | Current Deadline | Amended Deadline |
|---|---|---|
| Plaintiffs to provide supplements[1] to their final infringement contentions | N/A | October 3, 2022 |
| Opening Expert Reports | September 12, 2022 | October 17, 2022 |
| Rebuttal Expert Reports | September 16, 2022 | November 21, 2022 |
| Reply Expert Reports | October 14, 2022 | December 19, 2022 |
| Deadline to complete expert discovery | November 22, 2022 | February 22, 2023 |
| Expert status conference with the Court | December 2, 2022 | March 1, 2023 |
| Interim Status Report | September 9, 2022 | March 15, 2023 |
| Oral arguments on pending dispositive and Daubert motions | December 12, 2022 | April 3, 2023 |
| Joint Proposed Final Pretrial Order | January 13, 2023 | 7 days before Pretrial Conference |
| Pretrial conference | January 23, 2023 | [May , 2023] |
| Trial | Beginning February 6, 2023 | [June , 2023] |

_____
UNITED STATES MAGISTRATE JUDGE

---

[1] Plaintiffs may only supplement their final infringement contentions based on information or evidence received after August 15, 2022.

2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that true and correct copies of the foregoing documents were caused to be served on August 17, 2022 on the following counsel in the manner indicated:

### <u>VIA EMAIL:</u>

Dominick T. Gattuso
Aaron Nelson
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Tel.: (302) 472-7300
dgattuso@hegh.law
anelson@hegh.law

William A. Rakoczy
Deanne M. Mazzochi
Rachel Pernic Waldron
Kevin P. Burke
Greg Goldblatt
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60654
wrakoczy@rmmslegal.com
dmazzochi@rmmslegal.com
rpernicwaldron@rmmslegal.com
kburke@rmmslegal.com
ggoldblatt@rmmslegal.com

*Attorneys for Defendant Sandoz Inc.*

### <u>VIA EMAIL:</u>

John M. Seaman
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
Fax: (302) 573-3501
seaman@abramsbayliss.com

ME1 41966716v.1

Deepro R. Mukerjee
Lance A. Soderstrom
KATTEN MUCHIN ROSENMAN LLP
575 Madison  Avenue
New York, NY 10022-2585
(212) 940-8800
deepro.mukerjee@katten.com
lance.soderstrom@katten.com

Joseph M. Janusz
KATTEN MUCHIN ROSENMAN LLP
550 South Tryon Street, Suite 2900
Charlotte, NC 28202-4213
(704) 444-2000
joe.janusz@kattenlaw.com

Jillian M. Schurr
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661-3693
(312) 902-5200
jillian.schurr@katten.com

*Attorneys for Defendants Apotex Corp. and Apotex Inc.*

**<u>VIA EMAIL:</u>**

Dominick T. Gattuso
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Tel.: (302) 472-7300
dgattuso@hegh.law

Brian Sodikoff
Martin S. Masar III, Ph.D.
Matthew M. Holub
Catherine O'Brien
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, Illinois 60661
Tel: (312) 902-5200
brian.sodikoff@katten.com
martin.masar@katten.com
matthew.holub@katten.com
catherine.obrien@katten.com

*Attorneys for Defendants Sawai Pharmaceutical Co., Ltd., Sawai USA, Inc.*

## VIA EMAIL:

Kenneth L. Dorsney
Cortlan Hitch
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19899-2306
(302) 888- 6855
Fax: (302) 571-1750
kdorsney@morrisjames.com
chitch@morrisjames.com

Dennies Varughese
Sasha S. Rao
STERNE, KESSLER, GOLDSTEIN & FOX
1100 New York Ave.,
Washington, DC 20005
(202) 371-2600
dvarughese@sternekessler.com
srao@sternekessler.com

*Attorneys for Defendants Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc.,
and Aurolife Pharma LLC*

**VIA EMAIL:**

Stamatios Stamoulis
Richard Weinblatt
STAMOULIS & WEINBLATT LLC
800 N. West Street, 3rd Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

Shashank Upadhye
Yixin Tang
Brent Batzer
Lindsay Eastman
UPADHYE TANG LLP
135 S. LaSalle Street, Suite 1930
Chicago, IL 60603
(312) 327-3326
shashank@ipfdalaw.com
yixin@ipfdalaw.com
brent@ipfdalaw.com
lindsay@ipfdalaw.com

*Attorneys for Defendants Prinston Pharmaceutical Inc., Zhejiang Huahai Pharmaceutical Co.,
Ltd., Huahai US Inc., and Solco Healthcare US, LLC*

**VIA EMAIL:**

Pilar G. Kraman
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

ME1 41966716v.1

Michael J. Gaertner
David B. Abramowitz
Carolyn A. Blessing
Emily L. Savas
Jennifer M. Coronel
Smitha B. Uthaman
LOCKE LORD LLP
111 SouthWacker Drive
Chicago, IL 60606
(312) 443-0700
mgaertner@lockelord.com
dabramowitz@lockelord.com
cblessing@lockelord.com
esavas@lockelord.com
jennifer.coronel@lockelord.com
smitha.uthaman@lockelord.com

*Attorneys for Defendants Zydus Pharmaceuticals (USA) Inc. and Zydus Lifesciences Limited*

## VIA EMAIL:

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 N. Broom St
Wilmington, DE 19806
(302) 655-4200
jcp@pgmhlaw.com
mch@pgmhlaw.com

William R. Zimmerman
Andrea Cheek
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Ave. N.W., Ste. 900
Washington, D.C. 20006
(202) 640-6400
Bill.zimmerman@knobbe.com
Andrea.cheek@knobbe.com

-5-

Carol Pitzel Cruz
KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Avenue, Ste. 2500
Seattle, WA 98104
(206) 405-2000
Carol.pitzel.cruz@knobbe.com

*Attorneys for Lupin Ltd. and Lupin Pharmaceuticals, Inc.*

Dated: August 17, 2022

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)

-6-