# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ASTELLAS PHARMA INC., et al., | ) )  ) C.A. No. 20-1589-JFB-CJB ) |
| Plaintiffs, | ) (Consolidated) |
| v. | ) ) |
| SANDOZ INC., et al., | ) ) ) |
| Defendants. | ) ) |

**REPLY LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
FROM DANIEL M. SILVER, ESQ. REGARDING CROSS-PRODUCTION OF
DEFENDANTS' CONFIDENTIAL INFORMATION**

Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs Astellas Pharma Inc., Astellas Ireland Co., Ltd., and Astellas Pharma Global Development, Inc.*

Dear Judge Burke,

The Court should reject Defendants' improper attempts to limit Plaintiffs' infringement arguments at trial under the guise of alleged "confidentiality" concerns.[1] The Protective Order ("PO") is in place to restrict disclosure of confidential information ("CI") produced during discovery. It was never intended to limit Plaintiffs' ability to use that discovery in developing their infringement case for trial. D.I. 115, ¶ 16 ("nothing in this Protective Order shall prevent or limit any Party's ability to use the CONFIDENTIAL INFORMATION produced by another Party for any purpose in connection with this Litigation . . . ."). In fact, the express language of the PO allows such use: "Plaintiffs are permitted to include CONFIDENTIAL INFORMATION of one or more Defendant Group in any … filings…". *Id.*, ¶ 15. Plaintiffs complied with these provisions in providing their expert reports in this case, a point not disputed by Defendants.

Rather, Defendants' only complaint is that certain underlying Defendant CI documents have not been cross produced to all Defendants (albeit the substance of the CI was disclosed to all counsel in the expert reports). Of course, the only reason this has not occurred is because Defendants continue to withhold consent under the PO. And because they do, Defendants now complain that Plaintiffs have not disclosed those documents to each Defendant, allegedly prohibiting Plaintiffs' experts from relying on them under FRCP 26. D.I. 454 at 2. But Defendants fail to take responsibility for inserting this Catch-22 in the PO in the first place. Indeed, Defendants insisted that the PO prohibits cross-production of all documents between Defendants absent consent or a court order. But Defendants then unreasonably withheld consent, pointing to confidentiality concerns, which is the very reason the parties entered into the PO in the first place. This flawed logic should be rejected.

Defendants' attempt to hide this flawed logic by recasting it as "prejudice." But simply calling it "prejudice" does not make it so. Producing a limited number of documents to outside counsel in the same litigation is not "prejudice," particularly when they will still be covered by the PO.[2] In fact, outside counsel's role in safeguarding such confidential information is well-established. *See U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("In a particular case, *e.g.*, where in-house counsel are involved in competitive decision making, it may well be that a party seeking access should be forced to retain outside counsel or be denied the access recognized as needed."); *see also Verisign, Inc. v. XYZ.com, LLC*, No. 15-MC-175, 2015 WL 7960976, at *5 (D. Del. Dec. 4, 2015) ("To address defendants' concerns, [] production of the above categories [of CI] is ordered under the 'Attorney's Eyes Only' designation provided for in the protective order.").

Moreover, should the Court pressure-test Defendants' stated reason for withholding consent—that Defendants are direct competitors—that too fails in light of the express language of the PO, which prohibits using the protected information for "competitive business decisions." D.I. 115, ¶ 16. Furthermore, Defendants' reasoning also fails given Plaintiffs and Defendants are direct competitors too, yet all Defendants received the entirety of Plaintiffs' confidential information

---

[1] Defendants' assertion that Plaintiffs seek to "modify" the PO is simply incorrect. D.I. 454, at 3. The PO expressly permits Plaintiffs to use the information. All that is needed is a court order to provide the limited documents to all Defendants because they will not consent.

[2] Of the million+ pages collectively produced by Defendants, Plaintiffs only seek to provide a small subset (a few thousand pages total) to support their expert reports.

1

under the PO. Finally, Defendants half-heartedly argue that they would need additional time to "cure" any prejudice if they receive the documents. But this ignores the fact that they have known since at least August 19, 2022 that other Defendants' CI would be used against them, and they were all provided notice of every fact deposition in the case, but chose not to attend. D.I. 453, Ex. C; *see also* D.I. 291 through D.I. 301.

More importantly, any alleged prejudice will inure to Plaintiffs alone as they will be unable to have their experts rely on these CI documents at trial for certain arguments (e.g., "similarity" and definiteness), but those same CI documents will nonetheless be presented at trial against each individual Defendant as part of infringement. At bottom, Defendants cannot reconcile their concerns with the terms of the current PO, particularly in view of the expected disclosure at trial.

Sensing "prejudice" will not carry the day, Defendants attempt to blame Plaintiffs for failing to request consent earlier.[3] But, any delay was of Defendants' own making. They first raised this limited issue of cross production on October 20, 2022, well after service of opening reports. D.I. 453, Ex. E. Prior to that, Plaintiffs had no reason to believe Defendants had not already shared the identified CI with the only expert they disclosed under the PO, Dr. Chambliss. Only in mid-September did Defendants disclose any other expert, and Plaintiffs promptly offered to produce the CI once raised, which Defendants refused.[4] *See* D.I. 453, Ex. E. Defendants then dragged out the meet and confer process, wasting another month before Plaintiffs could seek relief. While they now complain they would need more time with their experts, that should be rejected as Defendants have caused the delay and have done nothing to mitigate the issue.

As a last resort, Defendants improperly turn to relevance. But they offer no authority that the Court should balance confidentiality concerns under a PO with relevance. While they argue that infringement must focus on the ANDA products they seek to commercially market (which Plaintiffs' infringement proofs certainly do), it is also well-established that "relevant" infringement evidence in the ANDA context includes other products that meet all of the claim limitations, which include all of the Defendants in the case. *See, e.g.*, *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1289 (Fed. Cir. 2010) ("[W]hen [another] commercial product meets all of the claim limitations, then a comparison to that product may support a finding of infringement."); *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 788 (Fed. Cir. 2019) (same). Such other product evidence is also relevant here for Plaintiffs' validity proofs. *See, e.g.*, *Cephalon, Inc. v. Slayback Pharma Ltd. Liab. Co.*, 456 F. Supp. 3d 594, 621 (D. Del. 2020) (In determining validity, the court may consider "any factual findings about [relevant] extrinsic evidence…."). Importantly, the Court need not reach this question here as Defendants concede that relevance is proper for a motion *in limine*, and not for a discovery dispute over consent to produce documents. Accordingly, Plaintiffs respectfully request the Court grant Plaintiffs' cross-production request.

---

[3] Defendants also argue that Plaintiffs should have requested consent prior to the close of fact discovery. But that would have required Plaintiffs to finalize infringement contentions before close of fact discovery or ask for wholesale consent to all productions, which Defendants had previously rejected. D.I. 454 at 1-2.

[4] It appears Defendants already cross-produced certain CI to their experts, including their joint expert Dr. Bentensky, who relied on a cherry-picked summary of CI "provided by counsel." *See* D.I. 453, Ex. G at ¶ 44 n.1.

Respectfully submitted,

*/s/* Daniel M. Silver

Daniel M. Silver (#4758)

cc: Counsel of Record (via E-Mail)